**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO., LTD., | |
| Plaintiff, | |
| v. | Civil Action No: |
| KIDS II, INC., | 1:13-CV-1114-ELR |
| Defendant. | |

**DEFENDANT KIDS II, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF
THE ASSERTED CLAIMS OF U.S. PATENT NO. RE43,919**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................ 1

II.    FACTUAL BACKGROUND ............................................... 2

  A.   The Asserted Claims of the '919 Patent. .......................... 2

  B.   The Bidwell Patent. ........................................................ 3

The Bidwell Patent, entitled "Retaining Member for a Cot," issued on February 10, 2000, more than four years before the application that ultimately resulted in the '919 Patent was filed. (SUMF, ¶¶ 28-29).  Accordingly, there is no dispute that the Bidwell patent is therefore prior art to the '919 Patent. ............................................. 3

III.   ARGUMENT AND CITATION OF AUTHORITIES ................................... 3

  A.   The Legal Standard for Summary Judgment. .................................... 3

  B.   The Legal Standard for Anticipation. ............................................. 4

  C.   The Bidwell Patent Anticipates Each and Every Asserted Claim of the '919 Patent By Disclosing Every Element of the Claims. ................................. 5

     a.   Claim 15 ................................................................... 5

     b.   Claim 19 ................................................................. 14

     c.   Claim 20 ................................................................. 15

     d.   Claim 21 ................................................................. 22

     e.   Claim 27 ................................................................. 23

     f.   Claims 28 and 29. .................................................. 24

IV.   CONCLUSION ..................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Dayco Prods., Inc. v. Total Containment, Inc*., 329 F.3d 1358 (Fed. Cir. 2003) ........ 4

*General Elec. Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350 (Fed. Cir. 1999) ................. 5

*In re Bond*, 910 F.2d 831 (Fed. Cir. 1990) ................................................................. 4

*Telemac Cellular Corp. v. Topp Telecom,* 247 F.3d 1316 (Fed. Cir. 2001).............. 5

*Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325 (Fed. Cir. 2010) .......... 4

## Statutes

35 U.S.C. § 102 ............................................................................................................. 4

35 U.S.C. § 251 ............................................................................................................. 4

## I.   __INTRODUCTION__

A patent claim is anticipated if each and every limitation is found in a single prior art reference.  In the present case, the prior art Australian Patent No 715,883 to Bidwell ("the Bidwell") discloses each and every limitation of the Asserted Claims of U.S. Patent No. RE43,919 ("the '919 Patent").  Based on a review of the written description and figures of the Bidwell patent, as well as the testimony of Wonderland's expert, Mr. Jerry Drobinski, there can be no genuine dispute that the Bidwell patent anticipates each of the Asserted Claims of the '919 Patent.

The Asserted Claims of the '919 Patent are generally directed to a baby crib or playpen with the following features: upright tubes or support tubes; an enclosure member having fabric walls or side panels that are held in place by positioning posts that are lodged inside the upright tubes, or by an attachment structure that connects the fabric to the support tubes.  Further, the Asserted Claims require that the fabric walls or side panels be substantially out of contact with the outside surface of the outer walls of the upright tubes such that the outwardly facing surface of the upright tubes is exposed on the outside of the fabric enclosure.

The Bidwell patent discloses each and every one of these features.  Like the '919 Patent, the Bidwell patent is directed to a baby crib (commonly referred to as a "cot" in Australia) that has retaining members that are comprised of substantially

cylindrical, upright tubes, and an enclosure member having fabric walls that are held in place by corner posts that are fitted inside the retaining members.  As a result, the fabric walls are substantially out of contact with the outside surface of the retaining members, such that the outwardly facing surfaces of the retaining members are exposed on the outside of the fabric enclosure.

In addition, there is no genuine dispute that the retaining members in the Bidwell patent are upright tubes that, when in place, are part of the frame structure that provides support to the fabric walls by applying pressure to the fabric side walls to maintain them under tension.  Wonderland's expert has admitted as much, and nothing more is required by the Asserted Claims.

Accordingly, because there are no disputed issues of material fact as to whether the Bidwell patent discloses each and every limitation of the Asserted Claims, Kids II's Motion for Partial Summary Judgement that the Asserted Claims are anticipated by the Bidwell patent should be granted.

## II.    FACTUAL BACKGROUND

### A. The Asserted Claims of the '919 Patent.

Wonderland asserts that two models of Kids II's InGenuity™ Washable Playards (Model Nos. 7066 & 60072) infringe Claims 15, 19, 20, 21, 27, 28, and 29 of the '919 Patent ("the Asserted Claims"). (SUMF, ¶ 2).  Of the Asserted Claims,

Claims 15 and 20 are independent claims, and Claims 19, 21, 27, 28, and 29 are dependent claims. (SUMF, ¶ 10). The earliest priority date that the Asserted Claims may be entitled to is no earlier than January 2, 2004. (SUMF, ¶¶ 4-7).

On May 20, 2014, the Court entered a claim construction Opinion and Order that construed the disputed claim terms of the asserted claims in this case. (Dkt. No. 58). The only term of the '919 Patent construed by the Court in this case is the term "attachment structure," which is found in Claim 20. (SUMF, ¶ 13). Pursuant to the Court's Opinion and Order, an "attachment structure" is a "device that connects fabric to the support tubes." (SUMF, ¶ 14).

### B. The Bidwell Patent.

The Bidwell Patent, entitled "Retaining Member for a Cot," issued on February 10, 2000, more than four years before the application that ultimately resulted in the '919 Patent was filed. (SUMF, ¶¶ 28-29). Accordingly, there is no dispute that the Bidwell patent is therefore prior art to the '919 Patent.

## III.   ARGUMENT AND CITATION OF AUTHORITIES

### A. The Legal Standard for Summary Judgment.

Kids II incorporates the legal standard for summary judgment set forth in its Memorandum of Law in Support of Its Motion for Summary Judgment of Invalidity

of the Asserted Claims of U.S. Patent No. RE43,919 under 35 U.S.C. § 251, filed

concurrently herewith, as if set forth fully herein.

### B. The Legal Standard for Anticipation.

Under the version of 35 U.S.C. § 102 applicable in this case, [1] a patent is

invalid for anticipation where "the invention was patented or described in a printed

publication . . . more than one year prior to the date of the application for patent." 35

U.S.C. § 102 (2000).  A prior art reference is anticipatory if it discloses the

substance of each and every limitation of the claimed invention, though the language

need not be identical.  *In re Bond*, 910 F.2d 831, 832-33 (Fed. Cir. 1990) (the

elements need not satisfy "an ipsissimis verbis test" to be expressly anticipating).

Thus, for a claim to be anticipated under § 102, and thus invalid, "each claim

element must be disclosed, either expressly or inherently, in a single prior art

reference, and the claimed arrangement or combination of those elements must also

be disclosed, either expressly or inherently, in that same prior art reference."

*Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332-33 (Fed. Cir.

2010); *see also Dayco Prods., Inc. v. Total Containment, Inc*., 329 F.3d 1358, 1368-

69 (Fed. Cir. 2003) ("the dispositive question regarding anticipation [i]s whether one

---

[1]  The question of invalidity in this case is examined under Section 102(b) as it
existed prior to enactment of the AIA on September 16, 2011, because all of the
asserted claims have effective filing dates prior to March 15, 2013.

skilled in the art would reasonably understand or infer from the [prior art reference's] teaching that every claim element was disclosed in that single reference") (internal quotations omitted).  "[A]nticipation is a question of fact, [that] may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Telemac Cellular Corp. v. Topp Telecom,*  247 F.3d 1316, 1327 (Fed. Cir. 2001) (citing *General Elec. Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350, 1353 (Fed. Cir. 1999)).

### C. The Bidwell Patent Anticipates Each and Every Asserted Claim of the '919 Patent By Disclosing Every Element of the Claims.

As discussed in detail on a claim-by-claim basis below, the Bidwell patent discloses each claim limitation of the Asserted Claims of the '919 Patent.  In other words, a person of ordinary skill in the art would reasonably understand that every claim limitation of Claims 15, 19-21, and 27-29 is disclosed in the written description and figures shown in the Bidwell patent.

a.  Claim 15

Claim 15 of the '919 patent reads as follows:

A *baby crib* comprising:

a *plurality of upright tubes* defining corners of the baby crib, wherein each of the upright tubes has an outer wall that defines an outer contour shape of the upright tube; and

an *enclosure member* including a plurality of side panels contiguously connected to one another along edge portions and surrounding an

5

enclosed space adapted for receiving a baby therein; and

a ***plurality of positioning posts*** provided on the enclosure member at locations corresponding to the edge portions of the enclosure member, wherein the positioning posts are lodged inside the upright tubes, the side panels extending between the upright tubes substantially out of contact with the outside surfaces of outer walls of the upright tubes, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member.

(SUMF, ¶ 11) (emphasis added).

> (1)   The Bidwell patent discloses "a baby crib."

As set forth in the Summary of the Invention of the '919 Patent, the invention of the '919 Patent generally relates to a baby crib or playpen. (SUMF, ¶ 9).  The Bidwell patent also discloses a baby crib or playpen, as the reference to a "cot" in the Bidwell patent is a common Australian term for a baby crib or playpen. (SUMF, ¶¶ 30-33).  Thus, there is no dispute that the Bidwell patent discloses a baby crib as claimed in Claim 15 of the '919 Patent.  (SUMF, ¶ 34).

> (2)   The Bidwell patent discloses the "upright tubes" of Claim 15 of the '919 Patent.

With respect to the first discrete limitation of Claim 15 – "a plurality of upright tubes defining corners of the baby crib, wherein each of the upright tubes has an outer wall that defines an outer contour shape of the upright tube" – the Bidwell patent discloses this claim limitation.  Specifically, the Abstract of the Bidwell patent discloses a "retaining member [22] comprising an elongate, substantially

6

cylindrical **tube** having a **tube wall** [24] and a substantially cylindrical hollow interior [26]" at the corner of the crib. (SUMF, ¶ 35) (emphasis added); *see also* SUMF, ¶ 50 ("a retaining member 22 which is a generally cylindrical tube.  The retaining member 22 has a tube wall 24 and a substantially cylindrical hollow interior 26.").  Moreover, the tubular retaining members are described in an "upright" configuration, as the written description of the Bidwell patent states that "[t]he retaining member 22 extends for the full height of the corner post 20 from the foot 18 to the corner member 16." (SUMF, ¶ 61).  The upright, tubular retaining members 22 of the Bidwell patent are clearly shown at the outer corner of the crib in Figure 1 of the Bidwell patent below, and thus "define" the corners of the crib:

| Bidwell patent | '919 patent – Claim 15 |
|---|---|
| "the retaining member comprising an ***elongate, substantially cylindrical tube*** having a ***tube wall***" "Adapted to pass over the corner post 20 is a retaining member 22 which is a generally cylindrical ***tube***." | "a plurality of upright tubes defining corners of the baby crib, wherein each of the ***upright tubes*** has an ***outer wall*** that defines an outer contour shape of the upright tube" |



| Figure 1 of the Bidwell Patent | Figure 4 of the '919 Patent |

Notably, Wonderland's expert agrees that the retaining members of the Bidwell patent are tubes, (SUMF, ¶ 63), and there can be no genuine dispute that they are described and shown as defining the corners of the crib in the Bidwell patent.  In fact, as discussed in detail in Section III.C.c.2, *infra,* the retaining members are described in the Bidwell patent as structural members of the crib that provide support to the fabric sidewalls by forcing the fabric sidewalls around the corner posts, and by maintaining the sidewalls under tension and holding them tightly in relation to the corner posts. (SUMF, ¶¶ 56-60, 66-67).  Thus, the Bidwell patent discloses the "upright tubes" limitation of Claim 15 of the '919 Patent.

> (3)   The Bidwell patent discloses the "enclosure member" of Claim 15 of the '919 patent.

The second discrete limitation of Claim15 of the '919 Patent is "an enclosure

8

member including a plurality of side panels contiguously connected to one another along edge portions and surrounding an enclosed space adapted for receiving a baby therein." (SUMF, ¶ 11). In Figures 4 and 5 of the '919 Patent, an example of a fabric enclosure member is shown in reference numeral 2. In the context of Figure 5, the specification of the '919 Patent describes a "fabric member 2 [that] can extend outside the upright tube 11 generally in two directions of two other upright tubes . . . ." (SUMF, ¶ 25).

There is no dispute that the Bidwell patent discloses this limitation of Claim 15. Specifically, the Bidwell patent describes "a *fabric sidewall* 14 secured over both the upper frame 10 and lower frame 12 and extending therebetween . . . .The fabric sidewall 14 passes over the corner post 20." (SUMF, ¶¶ 38-39, 44). Figure 1 of the Bidwell patent (reproduced and annotated for ease of reference below) shows an enclosure member 14, including two panels of the fabric enclosure (left and right) on either side of the corner of the crib. (SUMF, ¶¶ 38-39, 42, 44).

| Bidwell patent | '919 patent – Claim 15 |
|---|---|
| "a substantially vertically extending corner post over which a *fabric sidewall extends*"<br><br>"a *fabric sidewall* 14 secured over both the upper frame 10 and lower frame 12 and *extending therebetween*." | "an *enclosure* member including a *plurality of side panels* contiguously connected to one another along edge portions and *surrounding an enclosed space* adapted for receiving a baby therein" |

9



Figure 1 of the Bidwell Patent

Further, as shown in Figure 2 of the Bidwell patent (reproduced in Section a.4 below), the fabric sidewall 14 is most certainly contiguously connected as it reaches a corner from one side, passes around the corner post 20, and leaves the corner towards the next corner post – thus extending generally in two directions of each of the adjacent corners of the crib. (SUMF, ¶¶ 39, 41-42, 48).  There can be no dispute that the enclosed space created by the sidewalls disclosed in the Bidwell patent is therefore adapted for receiving a baby therein.  Indeed, Wonderland's expert, Mr. Drobinski, agreed that the fabric sidewalls of the Bidwell patent were contiguously connected, (SUMF, ¶ 62), and did not otherwise contest that the "enclosure member" limitation of Claim 15 is shown in the Bidwell patent. (SUMF, ¶¶ 46-47).  Thus, there is no dispute that the Bidwell patent discloses the "enclosure member"

10

limitation of Claim 15 of the '919 patent.

>　　(4)　The Bidwell patent discloses the "positioning posts" of
>　　　　　Claim 15 of the '919 patent.

The third, and last, discrete limitation of Claim 15 of the '919 Patent requires "a plurality of positioning posts provided on the enclosure member at locations corresponding to the edge portions of the enclosure member, wherein the positioning posts are lodged inside the upright tubes, the side panels extending between the upright tubes substantially out of contact with the outside surfaces of outer walls of the upright tubes, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member." (SUMF, ¶ 11). In Figure 5 of the '919 Patent (reproduced and annotated in color for ease of reference below), an example of positioning posts are shown in reference numeral 22. (SUMF, ¶¶ 21-22). In the context of Figure 5, the specification of the '919 Patent clearly states that "the fabric member 2 is clamped between each of the upright tubes 11 and a corresponding one of the positioning posts 22" and "lie[s] substantially out of contact with the outwardly facing surface of the outer tube wall . . . ." (SUMF, ¶¶ 21, 23, 26).

The Bidwell patent discloses the "positioning posts" limitation of Claim 15 of the '919 Patent. The Bidwell patent states that: "Extending between the corner fitting 16 and foot 18 and securely attached to each of them is a corner post 20. The

11

fabric sidewall 14 passes over the corner post 20 . . . . The corner post 20 is generally somewhat cylindrical and is normally hollow." (SUMF, ¶ 48; *see also* SUMF, ¶ 38 ("the present invention provides a retaining member for a cot, the cot having a substantially vertical extending corner post over which a fabric sidewall extends"). The corner post 20, including the fabric 14 passing over the posts, is shown below in Figure 2 of the Bidwell patent.

The Bidwell patent also states that the retaining member "***engages over*** the corner post 20 as is clear from Figure 2. This is similar to a snap fit."[2]  (SUMF, ¶ 56) (emphasis added).  Moreover, the retaining member is repeatedly described as being "adapted to be placed over and to at least partially surround the corner post and the fabric sidewall thereover so as to apply pressure to the fabric sidewall to maintain it under tension." (SUMF, ¶ 43; *see also* SUMF, ¶ 58 (describing "the edges of the tube wall 24 [of the retaining member as applying] pressure to the fabric sidewall 14 immediately adjacent to the corner post 20"); ¶ 59 ("the retaining member 22 forces the fabric sidewall 14 around the corner post 20 and thus holds it tightly in relation to the corner post 20.")).  Thus, as shown below in Figure 2 of the Bidwell patent,

---

[2]  "A snap-fit is a mechanical joint system where part-to-part attachment is accomplished with locating and locking features (constraint features) that are homogenous with one or the other of the components being joined."  Bonenberger, Paul R. *The First Snap-Fit Handbook: Creating and Managing Attachments for Plastic Parts*, Hanser Publications; 2nd Ed, (2005), at p. 6.

both the fabric sidewall 14 and the corner posts 20 of the Bidwell patent are

mechanically retained in the "substantially cylindrical tube . . . and substantially

hollow interior" of  the retaining members. (SUMF, ¶ 35).  As such, there can be no

dispute that the corner posts of the Bidwell patent are "lodged inside" the upright,

tubular retaining members.

| Bidwell patent | '919 patent – Claim 15 |
|---|---|
| "Extending between the corner fitting 16 and foot 18 and securely attached to each of them is a ***corner post 20***. The fabric sidewall 14 passes over the corner post 20. . . . The corner post 20 is generally somewhat cylindrical and is normally hollow."<br><br>"[the retaining member] then engages over the corner post as is clear in Fig. 2. This is similar to a snap fit." | "a plurality of ***positioning posts*** provided on the enclosure member at locations corresponding to the edge portions of the enclosure member, wherein the positioning posts are lodged inside the upright tubes, the side panels extending between the upright tubes substantially out of contact with the outside surfaces of outer walls of the upright tubes, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member." |
| <br>Figure 2 of the Budwell Patent | <br>Figure 5 of the '919 Patent |

The result, as shown in Figures 1 and 2 of the Bidwell patent, is that the fabric

sidewalls 14 are "substantially out of contact with" the outer tube wall 24 of the

retaining members 22, when the retaining members are engaged over the corner

posts 20 and the fabric sidewalls 14. (SUMF, ¶¶ 26).  Indeed, Wonderland's expert,

Mr. Drobinski, conceded that there was no contact between the fabric sidewalls 14

and the retaining member 22 of the Bidwell patent when the crib shown in the

Bidwell patent is fully assembled. (SUMF, ¶ 68).

Accordingly, the Bidwell patent discloses the "positioning posts" limitation of

the '919 Patent in every regard.  Because there are no genuine issues of fact

remaining for trial as to whether the Bidwell patent discloses all three limitations of

Claim 15 of the '919 Patent, Kids II is entitled to summary judgment that Claim 15

is anticipated by Bidwell and invalid as a matter of law.

b. Claim 19

Claim 19 of the '919 patent reads as follows:

The baby crib according to claim 15, wherein the enclosure member is
made of a ***fabric material***.

(SUMF, ¶ 12) (emphasis added).  As discussed above, the Bidwell patent discloses

each limitation of Claim 15.  Claim 19 of the '919 Patent discloses one additional

limitation – namely, that the "enclosure member" be made of "a fabric material."

(SUMF, ¶¶ 11-12).

The Bidwell patent specifically describes the sidewalls of the crib as fabric:

14

"the present invention provides a retaining member for a cot, the cot having a substantially vertically extending corner post over which *a fabric sidewall* extends." (SUMF, ¶ 38).  Moreover, Wonderland does not dispute, nor could it, that the Bidwell patent discloses a fabric enclosure. (SUMF, ¶ ¶38, 43-45, 62). Thus, because Claim 19 adds only this one additional limitation to Claim 15, Kids II is entitled to summary judgment that Claim 19 is anticipated by the Bidwell patent and invalid as a matter of law.

c.  Claim 20

Claim 20 of the '919 patent reads as follows:

A *baby crib* comprising:

*a frame structure including* a plurality of *support tubes*, wherein each of the support tubes has an outer wall that defines an outer contour shape of the upright tube;

an *enclosure member* including a plurality of side panels having edge portions; and

an *attachment structure* configured to mount and secure the edge portions of the enclosure member along the support tubes, whereby the side panels surround an enclosed space, and each of the side panels extends generally between two of the support tubes substantially out of contact with outwardly facing surfaces of the outer walls thereof, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member.

(SUMF, ¶ 13).

(1)    The Bidwell patent discloses "a baby crib."

As previously discussed with reference to Claim 15, there is no dispute that

the Bidwell patent generally discloses a baby crib. *See* Section III.C.a.1, *supra*.

      (2)    The Bidwell patent discloses the "support tubes" of Claim 20 of the '919 patent.

The first discrete limitation of Claim 20 of the '919 patent is "a frame structure including a plurality of support tubes, wherein each of the support tubes has an outer wall that defines an outer contour shape of the upright tube." (SUMF, ¶ 13). The Bidwell patent expressly discloses this limitation.

As previously discussed with reference to the "upright tubes" limitation of Claim 15, *see* Section III.C.a.2, *supra,* there is no dispute that the retention members of the Bidwell patent are tubes. The Bidwell patent expressly discloses a "retaining member (22) comprising an elongate, substantially cylindrical ***tube*** having a ***tube wall*** (24) and a substantially cylindrical hollow interior (26)" at the corner of the crib. (SUMF, ¶ 35) (emphasis added); *see also* SUMF, ¶ 50 ("a retaining member 22 which is a generally cylindrical tube. The retaining member 22 has a tube wall 24 and a substantially cylindrical hollow interior 26."). In fact, Wonderland's expert, Mr. Drobinski, has conceded that the retaining members of the Bidwell patent are tubes. (SUMF, ¶ 63). And, as described in the written description and shown in the figures of the Bidwell patent, there can be no dispute that the outer walls of the tubular, retaining members have a curved, outer contour shape. (SUMF, ¶¶ 35, 39, 48, 50-51).

| Bidwell patent | '919 patent – Claim 20 |
|---|---|
| "an upper peripheral frame 10, a lower peripheral frame 12, and a fabric sidewall 14 secured over both the upper frame 10 and lower frame 12 and extending therebetween."<br><br>"the ***retaining member*** is of a length substantially equal to the length of the corner post between an upper peripheral frame and a lower foot"<br><br>"the ***retaining member*** 22 comprising an elongate, substantially ***cylindrical*** tube having a ***tube wall*** 24"<br><br><br>Figure 1 of the Bidwell Patent | "a frame structure including a ***plurality of support tubes***, wherein each of the support tubes has an ***outer wall*** that defines an ***outer contour shape*** of the upright tube"<br><br><br>Figure 5 of the '919 Patent |

Moreover, the Bidwell patent repeatedly describes the tubular, retaining members as part of the frame structure of the crib that provides support to the fabric sidewalls and the corner posts of the crib. Specifically, the Bidwell patent expressly states that the tubular, retaining members are "adapted to be placed over and to at least partially surround the corner post and the fabric sidewall . . . *so as to apply pressure to the fabric sidewall to maintain it under tension.*" (SUMF, ¶ 43)

17

(emphasis added); *see also* SUMF, ¶¶ 56, 58 (stating that the tubular, retaining member "***engages over the corner post 20 . . . similar to a snap fit,***" and "causes the edges of the tube wall 24 [of the retaining member] ***to apply pressure to the fabric sidewall immediately adjacent to the corner post 20.***"); ¶ 59 ("the retaining member 22 forces the fabric sidewall 14 around the corner post 20 and thus ***holds it tightly in relation to the corner post 20.***"); ¶ 60 ("***by the action of the tube wall 24*** on either side of the slot 28 on the fabric sidewall 14 ***the fabric sidewall 14 is held under tension*** to thus assist in retaining a tight fitting sidewall for the cot.").  In fact, when asked in the context of discussing the retaining members whether maintaining under tension was the equivalent of providing support, Wonderland's expert, Mr. Drobinski, said "Yes." (SUMF, ¶ 67). In that same context, he also conceded that "you can provide support by holding something tightly." (SUMF, ¶ 66).

Thus, there is no genuine dispute that the Bidwell patent discloses tubular, retaining members that act as support tubes for the frame structure of the crib. Nor is there any genuine dispute that the tubular retaining members have outer walls with a defined contour shape.  Accordingly, the Bidwell patent discloses the "support tubes" limitation of Claim 20 of the '919 Patent.

> (3) The Bidwell patent discloses the "enclosure member" of Claim 20 of the '919 patent.

Similar to the second limitation of Claim 15, *see* Section III.C.a.3, *supra*, the

second discrete limitation of Claim 20 of the '919 patent is "an enclosure member including a plurality of side panels having edge portions." (SUMF, ¶ 12).  In Figure 4 and 5 of the '919 Patent, an example of a fabric enclosure member is shown in reference numeral 2.  In the context of Figure 5, an edge portion of an example fabric enclosure member of the '919 Patent is shown at each positioning post 22. (SUMF, ¶ 39).

There is no dispute that the Bidwell patent discloses this limitation of Claim 20.  Specifically, the Bidwell patent describes "a ***fabric sidewall*** 14 secured over both the upper frame 10 and lower frame 12 and extending therebetween . . . .The fabric sidewall 14 passes over the corner post 20." (SUMF, ¶ 44).  Figure 1 of the Bidwell patent (reproduced and annotated for ease of reference in Section III.C.a.3, *supra*), clearly depicts an "edge portion" of the fabric at the junction of two sidewall panels at each corner post 20. (SUMF, ¶¶ 39, 41-42).

| Bidwell patent | '919 patent – Claim 20 |
|---|---|
| "a ***fabric sidewall*** 14 secured over both the upper frame 10 and lower frame 12 and ***extending therebetween***." | "an ***enclosure member*** including a ***plurality of side panels*** having ***edge portions***" |

Wonderland's expert, Mr. Drobinski, did not contest that the "enclosure member" limitation is shown in the Bidwell patent. (SUMF, ¶ 46).  Thus, there is no dispute that the Bidwell patent discloses the "enclosure member" limitation of Claim

20 of the '919 patent.

     (4) <u>The Bidwell patent discloses the "attachment structure" of</u>
        <u>Claim 20 of the '919 patent.</u>

  The third, and final, discrete limitation of Claim 20 of the '919 patent is "an

attachment structure configured to mount and secure the edge portions of the

enclosure member along the support tubes, whereby the side panels surround an

enclosed space, and each of the side panels extends generally between two of the

support tubes substantially out of contact with outwardly facing surfaces of the outer

walls thereof, such that the outwardly facing surface of each of the upright tubes is

exposed on an outside of the enclosure member." (SUMF, ¶ 13).  The Court has

defined "attachment structure" to mean a "device that connects fabric to the support

tubes." (SUMF, ¶ 14).

  The Bidwell patent expressly discloses this limitation.  Specifically, the

Bidwell patent states that: "Extending between the corner fitting 16 and foot 18 and

securely attached to each of them is a corner post 20.  The fabric sidewall 14 passes

over the corner post 20. (SUMF, ¶ 48; *see also* SUMF, ¶ 38 ("the cot having a

substantially vertically extending corner post over which a fabric sidewall extends . .

. the retaining member being adapted to be placed over and to at least partially

surround the corner post and the fabric sidewall thereover")).  The Bidwell patent

further states that the tubular, retaining member "***engages over*** the corner post 20 as

20

is clear from Figure 2. This is similar to a snap fit."  (SUMF, ¶ 56) (emphasis added).

| Bidwell patent | '919 patent – Claim 20 |
|---|---|
| "vertically extending **corner post** over which a fabric sidewall extends"<br><br>"the retaining member being adapted to be **placed over** and to at least partially **surround the corner post and the fabric sidewall** thereover so as to **apply pressure to the fabric sidewall to maintain it under tension**"<br><br>"This is similar to a snap fit." | "an **attachment structure** configured to **mount and secure the edge portions** of the enclosure member along the support tubes." |

In this context, the "attachment structure" called for in this limitation of Claim 20 of the '919 patent is formed by the retaining member 22 of the Bidwell patent engaging the fabric-covered corner post 20 in a "snap fit" configuration.  This "attachment structure" mounts and secures the edge portions of the fabric sidewalls of the Bidwell patent along the tubular, retaining members, thereby expressly satisfying this limitation of Claim 20. (*See* SUMF, ¶ 58 (describing "the edges of the tube wall 24 [of the retaining member as applying] pressure to the fabric sidewall 14 immediately adjacent to the corner post 20"); ¶ 59 ("the retaining member 22 forces the fabric sidewall 14 around the corner post 20 and thus holds it tightly in relation to the corner post 20.")).

The result, as shown in Figure 1 and 2 of the Bidwell patent, is that the fabric sidewalls 14 are "substantially out of contact with" the outer tube wall 24 of the retaining members 22, when the retaining members are engaged over the corner posts 20 and the fabric sidewalls 14. (SUMF, ¶ 26).  Indeed, Wonderland's expert, Mr. Drobinski, conceded that there was no contact between the fabric sidewalls 14 and the retaining member 22 of the Bidwell patent when the crib shown in the Bidwell patent is fully assembled. (SUMF, ¶ 68).

Thus, the Bidwell patent discloses this and the other limitations of Claim 20 of the '919 Patent in every regard. Because there are no genuine issues of fact remaining for trial as to whether the Bidwell patent discloses all three limitations of Claim 20 of the '919 Patent, Kids II is entitled to summary judgment that Claim 20 is anticipated by the Bidwell patent and invalid as a matter of law.

### d. Claim 21

Claim 21 of the '919 patent reads as follows:

The baby crib according to claim 20, wherein the attachment structure clamps the edge portions of the enclosure member inside the support tubes.

(SUMF, ¶ 15).

#### (1)  The Bidwell patent discloses each of the limitations of Claim 20.

As discussed above, the Bidwell patent discloses each limitation of Claim 20.

22

Claim 21 of the '919 patent discloses one additional limitation – namely, that the attachment structure "clamps the edge portions of the enclosure member inside the support tubes."  (SUMF, ¶¶ 13, 15).

> (2)     The Bidwell patent discloses the "clamping" of the edge
>          portions of the enclosure member inside the support tubes.

In the preferred embodiment shown in the specification, the '919 Patent states: "[t]he fabric member is clamped between each of the upright tubes and a corresponding one of the positioning posts." (SUMF, ¶ 23).  The Bidwell patent expressly discloses this limitation, as the tubular retaining member 22 is described and shown in Figure 2 (described in the Bidwell specification as "a horizontal cross section of the corner post with the retaining member fitted") as engaging the fabric-covered corner post 20 in a "snap fit" configuration. (SUMF, ¶ 56; *see also* SUMF, ¶ 58 (describing "the edges of the tube wall 24 [of the retaining member as applying] pressure to the fabric sidewall 14 immediately adjacent to the corner post 20"); ¶ 59 ("the retaining member 22 forces the fabric sidewall 14 around the corner post 20 and thus holds it tightly in relation to the corner post 20.")).  Thus, the "attachment structure" disclosed in the Bidwell patent clamps the edge portions of the fabric sidewalls inside the tubular, retaining members.  Claim 21 of the '919 Patent is therefore anticipated by the Bidwell patent and invalid as a matter of law.

> e.   Claim 27

Claim 27 of the '919 patent reads as follows:

> The baby crib according to claim 20, wherein the enclosure member is made of a fabric material.

(SUMF, ¶ 16).  Like Claim 19, Claim 27 of the '919 Patent discloses one additional limitation – namely, that the "enclosure member" be made of fabric material. (SUMF, ¶¶ 12, 16).  As discussed in Section III.C.b, *supra*, there is no dispute that the Bidwell patent discloses a fabric enclosure.  Thus, because Claim 27 adds only this one additional limitation to Claim 20, Kids II is entitled to summary judgment that Claim 27 is anticipated by the Bidwell patent and invalid as a matter of law.

      f.  <u>Claims 28 and 29.</u>

Claim 28 of the '919 Patent reads as follows: "The baby crib according to claim 20, wherein the upright tubes are curved." (SUMF, ¶ 17).  Similarly, Claim 29 of the '919 Patent reads as follows: "The baby crib according to claim 15, wherein the upright tubes are curved." (SUMF, ¶ 18).  Thus, the only additional limitation added to each of these claims over their respective independent Claims 15 and 20 (shown above to be anticipated by the Bidwell patent) is curved upright tubes.

There is no genuine issue of fact that the tubular, retaining members of the Bidwell Patent are curved.  The patent states:

> The retaining member 22 has a tube wall 24 and a substantially cylindrical hollow interior 26.  The hollow interior 26 has a bore wall 28, the radius of ***curvature*** of which is no greater than the radius of the outer surface of the corner post 20."

24

(SUMF, ¶ 51).  Because the Bidwell patent describes that its retaining members 22 include a "cylindrical interior" and "radius of curvature," the retaining members 22 are indisputably "curved."  In fact, they are curved in more than one respect.  First, the retaining member 22 includes a tube wall 24 and, therefore, has a curvature about a vertical axis. (SUMF, ¶¶ 39, 50-51, 54).  Second, Bidwell Figure 2 (reproduced in Section III.C.a.2, *supra*) also shows the retaining member 22 as being curved away from the corner post 20, which gives it a curvature about a horizontal axis.  Thus, the Bidwell patent expressly satisfies these claim limitations in more than one respect.  Because the Bidwell patent discloses all of the limitations of Claims 28 and 29 of the '919 patent, Kids II is entitled to summary judgment that Claims 28 and 29 are anticipated by the Bidwell patent and invalid.

## IV.   <u>CONCLUSION</u>

For the reasons set forth herein, there are no genuine issues of fact remaining for trial as to whether the Bidwell patent discloses all elements of each Asserted Claim in Wonderland's later-filed '919 Patent.  Accordingly, the Court should enter Partial Summary Judgment that the Asserted Claims of the '919 Patent are each invalid as a matter of law.

Respectfully submitted this 16th day of July, 2015.

25

*/s/ Eric G. Maurer*

N. Andrew Crain
Georgia Bar No. 193081
Dan R. Gresham
Georgia Bar No. 310280
Eric Maurer
Georgia Bar No. 478199
Scott P. Amy
Georgia Bar No. 141416
Jason Perilla
Georgia Bar No. 676557
THOMAS | HORSTEMEYER LLP
400 Interstate North Parkway SE
Suite 1500
Atlanta, Georgia 30339
Phone: (770) 933-9500
Fax: (770) 951-0933
andrew.crain@thomashorstemeyer.com
eric.maurer@thomashorstemeyer.com
scott.amy@thomashorstemeyer.com
jason.perilla@thomashorstemeyer.com

Joseph W. Staley
Georgia Bar No. 142571
KIDS II, INC.
3333 Piedmont Road NE #1800
Atlanta, GA 30305
Phone: (770) 751-0442
Fax: (770) 751-0543
joe.staley@kidsii.com

*Attorneys for Defendant Kids II, Inc.*

26

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

WONDERLAND
NURSERYGOODS CO., LTD.

      Plaintiff,

v.

KIDS II, INC.

      Defendant.

CIVIL ACTION NO:

1:13-CV-1114-ELR

## LOCAL RULE 7.1D CERTIFICATION

The undersigned hereby certifies that the foregoing DEFENDANT KIDS II, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF THE ASSERTED CLAIMS OF U.S. PATENT NO. RE43,919 was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

Dated this 16th day of July, 2015.

           */s/ Eric G. Maurer*

           Eric G. Maurer
           *Attorney for Defendant Kids II, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

WONDERLAND
NURSERYGOODS CO., LTD.

     Plaintiff,

v.

KIDS II, INC.

     Defendant.

CIVIL ACTION NO:

1:13-CV-1114-ELR

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing

DEFENDANT KIDS II, INC.'S MEMORANDUM OF LAW IN SUPPORT OF

ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF

THE ASSERTED CLAIMS OF U.S. PATENT NO. RE43,919 with the Clerk of

Court using the CM/ECF system, which will automatically send email notification

of such filing to all attorneys of record.

Dated this 16th day of July, 2015.

*/s/ Eric G. Maurer*

Eric G. Maurer
*Attorney for Defendant Kids II, Inc.*

28