# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

WONDERLAND NURSERYGOODS CO., LTD.,

    Plaintiff,

    v.

KIDS II, Inc.,

    Defendant.

CIVIL ACTION NO.

1:13-cv-01114-ELR

# WONDERLAND'S MEMORANDUM IN OPPOSITION TO KIDS II'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF THE ASSERTED CLAIMS OF U.S. PATENT RE43,919

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1

II.     THE BIDWELL REFERENCE...............................................................1

III.    LEGAL STANDARD ..............................................................................2

      A.      Summary Judgment Generally ....................................................2

      B.      Presumption of Validity ...............................................................3

      C.      Summary Judgment Of No Anticipation.......................................4

IV.     ARGUMENT.............................................................................................5

      A.      Bidwell lacks "upright tubes" or "support tubes" .......................5

      B.      Bidwell does not have positioning posts......................................11

      C.      Bidwell does not have any "attachment structure." .....................13

      D.      Bidwell does not have upright tubes or support tubes that are
             curved. ........................................................................................15

V.      CONCLUSION........................................................................................16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999)..................4

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) ................................3

*C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998) ...................5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)...................................................3

*Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)...................................................4

*Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993).................3

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989)......4

*Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213

  (C.A. 5th., 1969) ...................................................................................................7

*Massey v. Del Labs.*, 118 F.3d 1568, 1573 (Fed. Cir. 1997) .....................................5

*Minn. Mining & Mfg. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002).......5

*National Presto Indus. v. West Bend Co*., 76 F.3d 1185, 1189 (Fed. Cir. 1996) ......4

*Pfizer, Inc. v. Apotex, Inc.,* 480 F.3d 1348, 1359 n. 5 (Fed. Cir. 2007)....................4

*Quality Edge, Inc. v. Rollex Corp.*, 2013 U.S. Dist. LEXIS 90773 at *28 (W.D. Mich., June 28, 2013) ..............................................................................5

*Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987) ............................7

*Schumer v. Laboratory Computer Systems, Inc.,* 308 F.3d 1304, 1316 (Fed. Cir. 2002) ...........................................................................................10

*Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991) ............................................................................................5

*Titanium Metals Corp. v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985) ...............16

**Statutes**

35 U.S.C.§ 103 ..........................................................................................16

35 U.S.C. § 102 .................................................................................... 4, 16

35 U.S.C. § 282 ............................................................................................3

**Rules**

FED. R. CIV. P. 56(a)..................................................................................3

## I.    INTRODUCTION

Wonderland Nurserygoods Co. Ltd. (Wonderland) respectfully submits this Brief in Opposition to Defendant Kids II's Motion for Partial Summary Judgment that the asserted patent claims (claims 15, 19, 20, 21, 27, 28, and 29) of United States Patent No. RE 43,919[1] (the '919 patent - Exhibit 1) are anticipated.

Kids II has moved for summary judgment that the '919 patent is invalid as anticipated by Australian Patent No. 715,883 to Bidwell ("Bidwell").  Bidwell, however, lacks *at least* one limitation of every asserted claim, and therefore does not anticipate.  Accordingly, not only should Defendant's motion be denied, summary judgment of no anticipation is appropriate.

Pursuant to LR 56.1.B(2)b, Wonderland has submitted a concise statement of additional facts (SAFs) in support of this Response.  That statement and the numbered paragraphs therein are referred to herein as "SAF ¶___".

## II.    THE BIDWELL REFERENCE

Figure 1 of Australian Patent AU 715,883 ("Bidwell" - Exhibit 5) is reproduced below.  Bidwell uses the term "cot", which is apparently the Australian word for what Americans call a "crib", and Bidwell discloses a somewhat

---

[1] The '919 patent was as Exhibit 1 of Kids II's Brief,  and the Bidwell Australian Patent AU 715,883 was Exhibit 5 of Kids II's Brief.  These are the only two exhibits mentioned in this Opposition Brief.

conventional crib, but adds a flexible "retaining member" 22 that fits over each "vertically extending corner post" 20.  The retaining member is held in place with a screw 34. (Ex. 5, Fig. 1, Abstract).  Bidwell's cot has a rigid frame structure that includes corner posts 20, feet 18, and top corners 16.  Ex. 5, p. 3, ll. 2-5.



Ex. 5, Figure 1.

## III.   LEGAL STANDARD

### A.   Summary Judgment Generally

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).  In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

The court may not weigh conflicting evidence or weigh the credibility of the parties.  *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment.  *Id.*  On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B.    Presumption of Validity

Issued patents have a strong presumption of validity in infringement proceedings. *See* 35 U.S.C. § 282.  Accordingly, an accused infringer bears the burden of proving invalidity by clear and convincing evidence.  *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999) ("The presumption of validity under 35 U.S.C. § 282 carries with it a presumption that the Examiner did his duty and knew what claims he was allowing."). *Id., citing Intervet Am., Inc. v.*

-3-

*Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989). "Although an exact definition is elusive, 'clear and convincing evidence' has been described as evidence that 'place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable.'" *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 n. 5 (Fed. Cir. 2007), (*quoting Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial on the merits. *Anderson*, 477 U.S. at 255.  *See also National Presto Indus. v. West Bend Co*., 76 F.3d 1185, 1189 (Fed. Cir. 1996) *citing Anderson*, 477 U.S. at 254 (heightened standard of clear and convincing evidence, which would be party's burden at trial, is to be considered when evaluating sufficiency of evidence on motion for summary judgment).

### C.    Summary Judgment Of No Anticipation

Lack of Anticipation is a question of fact that may be decided on summary judgment when there are no genuine disputes as to whether the limitations of the claimed invention are disclosed by the prior art reference(s). *Minn. Mining & Mfg. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002).  To invalidate a patent under 35 U.S.C. § 102 (anticipation), every single claim element must be found in a single prior art reference. *Scripps Clinic & Research Found. v. Genentech, Inc.*,

-4-

927 F.2d 1565, 1576 (Fed. Cir. 1991). ("There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention."). If even a single claim element is absent from a prior art reference, there can be no anticipation. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998).

Despite the inferences and burdens applicable to motions for summary judgment, patent validity is different from many other issues: because patents are *presumed* to be valid, "a patentee has no burden to present factual evidence affirmatively establishing the validity of its patent even in support of its own motion for summary judgment of validity." *Quality Edge, Inc. v. Rollex Corp.*, 2013 U.S. Dist. LEXIS 90773 at *28 (W.D. Mich., June 28, 2013), *citing Massey v. Del Labs.*, 118 F.3d 1568, 1573 (Fed. Cir. 1997) ("to prevail on [a] motion for summary judgment of validity, [a patentee] need not have presented any factual evidence.")).

## IV.   ARGUMENT

### A.   Bidwell lacks "upright tubes" or "support tubes"

Claim 15, and also claims 19, and 29 (through dependency) of the '919 patent all require "a plurality of upright tubes defining the corners of the baby crib." Ex. 1 ('919 patent), at col. 5, lines 7-8 ("5:7-8"). Claim 20, and also its dependent claims 21, 27 and 28 all require "*a frame structure* including a plurality

-5-

of support tubes." Ex. 1, 5:38.   Quite notably, Kids II never even alleges in its statements of fact that Bidwell discloses a frame structure including a plurality of support tubes--that argument is made solely in Kids II's Brief.  SAF 70.  For this reason alone, Kids II's motion as to claims 20, 21, 27 and 28 must be denied.

Kids II alleges that the flexible retaining member 22 of Bidwell is an "upright tube" or "support tube".  Kids II Brief, Dkt. 158 (henceforth, "Br.") at 6, 16.  However, there is much more support to infer from Bidwell that the rigid corner posts 20 are upright tubes or support tubes, and Kids II nearly admits as much in its SUMF 49: "Each corner post 20 of the Bidwell patent is a 'vertical upright' or 'post'."  The purported facts asserted by Kids II regarding the retaining member 22 only tend to suggest that it is tubular and is described in the patent as "being adapted to be placed over and to at least partially surround the corner post and the fabric sidewall."  SUMF 43.  These assertions, even if taken as true, do not establish Kids II's right to summary judgment as a matter of law, because they do not establish that the retaining member is an upright tube defining the corners of a baby crib.

Indeed, the retaining members are *not* upright tubes that define the corners of a baby crib, but are simply accessories that snap on to the corner posts, which are the *actual* frame members of the Bidwell crib.  That fact makes summary judgment *of invalidity* improper here, and instead makes summary judgment of no

invalidity proper.  *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (C.A. 5th., 1969)("Summary judgment may be improper even though the basic facts are undisputed if the parties disagree regarding the material factual inferences that properly may be drawn from these facts.").  Indeed, any *possible* inference that Bidwell's retaining member 22 is itself an upright tube or support tube having the characteristics required in the claims should be rejected by the Court here, since it favors the movant rather than Wonderland.  *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir. 1987)(The trial court "must consider all the evidence in the light most favorable to the non-moving party.").

Regarding asserted claim 15, and its dependent claims 19 and 29, Kids II argues without any support that Bidwell discloses "a plurality of upright tubes *defining corners* of the baby crib," which is required in the claims.  Br. at 6.

Kids II concentrates, as it must, on whether Bidwell arguably discloses "tubes", but then utterly fails to explain how the retaining members (the purported "tubes") of Bidwell "define" the corners of a crib, or how they are part of the "frame structure."  The flexible, "snap fit" retaining members of Bidwell do not *define* the corners of a baby crib any more than a coat of paint defines a wall or the corners of a room.  Kids II first alleges that the flexible, non-structural "retaining members" of Bidwell are tubes and that, when Bidwell is assembled, the retaining members are in an upright position.  Br. at 6-7.  However, Kids II noticeably fails

to cite to or provide any statement of fact or evidence that the retaining members *define* the corners of a baby crib, which they do not.  Instead, Kids II relies solely on attorney argument, stating that "there can be no genuine dispute that [the retaining members] are described and shown as defining the corners of the crib." Br. at 8.  If the Bidwell patent did in fact describe the retaining members as "defining the corners of the crib", Kids II would have cited, and probably quoted, the very language in Bidwell that did so.  But Bidwell does not, so Kids II *could* not.

As to claims 20, 21, 27 and 28 (which all require a "frame structure"), Kids II makes the assertion that "the Bidwell patent repeatedly describes the tubular, retaining members as *part of the frame structure* of the crib that provides support to the fabric sidewalls and the corner posts of the crib." Br. at 17.  This statement is remarkable for two reasons.  First, <u>nowhere</u> in Bidwell are the retaining members described as being "part of the frame structure of the crib" (SAF 71), and indeed, Kids II does not cite to any part of Bidwell in support.  Second, there is simply no requirement in these claims that the support tubes provide support *to the fabric sidewalls or the corner posts* of a crib. SAF 72.  (Indeed, the "corner posts" of Bidwell are analogous to the claimed support tubes themselves).  That statement was made by Kids II to pave the way for its attorney argument that because the retaining members cover the fabric of Bidwell where it wraps around the corner

-8-

posts 20, the retaining members *are* somehow structural frame members.  Br., p. 18.

Indeed, Kids II quotes numerous statements from Bidwell regarding how the retaining member holds the fabric member against the corner posts (*Id.*), but none of the quotes support the argument that the retaining members are *themselves* structural, parts of a frame, or define the corners of a baby crib.  Kids II also quotes some vague, general testimony of Wonderland's expert Mr. Drobinski to try to bolster its position.  Kids II is no doubt encouraged that in his testimony.  Mr. Drobinski repeated the word "support" from the question posed.  However, none of the quoted testimony is even applicable to Bidwell, which was not once referred to.  Kids II would apparently ask the Court to find the following testimony to be clear and convincing evidence that Bidwell's retaining members are structural support tubes:

> Q.  If you maintain *something* under tension, are you providing support?
>
> A.  Could be, yes.

Kids II's SUMF 67 (emphasis added).  This is not testimony of what <u>Bidwell</u> would teach one of skill in the art, as required, nor is it clear, specific evidence of the kind required to render a patent invalid.  *Schumer v. Laboratory Computer Systems, Inc.,* 308 F.3d 1304, 1316 (Fed. Cir. 2002) ("Indeed, to accept confusing or generalized testimony as evidence of invalidity is improper.").

As with the limitation in claim 15, Kids II states that "there is no genuine dispute that the Bidwell patent discloses tubular, retaining members that act as support tubes for the frame structure of the crib." Br., p. 18.  Kids II is mistaken.  A person of ordinary skill in the art would not consider the retaining members of Bidwell to be "support tubes" that are part of a baby crib's "frame structure." SAF 73-75.  Instead, the retaining members are simply snapped onto the existing "corner posts 20" of Bidwell.  SAF 74-75.  Indeed, Bidwell states that the retaining members are "releasably retained around the corner post[s] 20 unless deliberately removed."  SAF 75.  Thus, the retaining members, rather than *defining* the corners of the crib, or being part of a frame structure of the crib, are explicitly described as being *removable from the corners,* which are in reality defined by the rigid corner posts 20.  SAF 75.  A component that is "releasably retained" on a frame member cannot be part of the frame.

Significantly, Kids II has offered *no* evidence or testimony of an expert (either its own or Wonderland's) that a person of ordinary skill in the art would understand Bidwell's retaining members to be upright tubes that define the corners of a baby crib, or that they are support tubes that are part of a baby crib's frame structure.  Without such evidence, Kids II's Motion must fail.  *See, e.g., Schumer* 308 F.3d at 1316 (Fed. Cir. 2002).  As the Federal Circuit stated in *Schumer*, the clear and convincing evidence needed to invalidate a patent is "[t]ypically . . .

-10-

testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference." *Id.* Regarding not just the presence of upright tubes, but the additional requirement that they define the corners of a baby crib or form its frame structure, Kids II has not only failed to offer the "typical" expert testimony, it has failed to state or cite to *any* evidence in support of its position. Br., pp. 8, 18 (unsupported attorney statements that "there can be no genuine dispute" that Bidwell's retaining members define the corners or are part of the frame structure of a crib.).

> **B.      Bidwell does not have positioning posts.**

Claims 15, 19, and 29 of the '919 Patent require "positioning posts" that are "provided on the enclosure member." Ex. 1 to Motion at 5:16-17. The claims also require that the positioning posts are "lodged inside the upright tubes." *Id.* at 5:18-19. In its motion and statements of fact, Kids II has not cited any evidence that a person of ordinary skill in the art would understand that the rigid, structural corner posts of Bidwell are "positioning posts" [that] are lodged inside the upright tubes" of a baby crib. Instead, Kids II provides some evidence that Bidwell's corner posts and retaining members are hollow tubes, and tries to bridge the gap regarding the characteristics of these tubes with attorney argument.

Specifically, in the following statement from Defendant's Brief, the bold language is unsupported attorney argument, while only the non-emphasized language is referred to in the cited statement of fact, no. 35:   "**Thus, as shown below in Figure 2 of the Bidwell patent, both the fabric sidewall 14 and the corner posts 20 of the Bidwell patent are mechanically retained in the** 'substantially cylindrical tube . . . and substantially hollow interior' **of the retaining members.**"  Br. at 13.  The key here is whether the corner posts are in fact "mechanically retained" in the retaining members (they are not), or whether the corner posts themselves are analogous to the patent's upright tubes onto which the retaining members snap.

According to the above statement, being "mechanically retained" must be defendant's implicit construction of "lodged inside."  The defendant probably <u>could not</u> provide expert testimony in support of its position in this regard because it is unlikely that an expert would consider *structural* frame components like Bidwell's corner posts to be "mechanically retained" by a flexible trim piece that simply snaps onto them.  As stated, the issue of whether a corner post is "lodged inside" a retaining member is necessary to any finding of anticipation, but that is yet another issue Kids II failed to support with anything but attorney argument.

Rather than address that important issue, Kids II concentrated heavily on whether Bidwell's corner posts are "tubes" or "posts" (Br. at 12: "The corner post

-12-

20 is generally somewhat cylindrical and is normally hollow") and whether sidewalls are "substantially out of contact" with the retaining members. Br. at 14. Defendant also concentrates on how the retaining members of Bidwell "engage[] over the corner posts."  However, all these points are irrelevant to the issue of whether the *corner* posts are themselves *positioning* posts, and whether they are "lodged inside" upright tubes.

Bidwell's corner posts are not "lodged inside the upright tubes."  Assuming *arguendo* that Bidwell's retaining members are "upright tubes," the corner posts are not lodged inside them.  Instead, as discussed above, the retaining members are flexible members that simply snap over the corner posts.  To say that the corner posts are "lodged inside" the retaining members requires the structure and function of both these elements to be reversed.  For these reasons, Bidwell does not anticipate claims 15, 19, or 29.

### C.    Bidwell does not have any "attachment structure."

Claims 20, 21, 27 and 28 all require "an attachment structure configured to mount and secure the edge portions of the enclosure member along the support tubes.  This Court has construed "attachment structure" to mean a "device that connects fabric to the support tubes." Dkt. No. 58, p. 20.  Under Kids II's incorrect theory that the flexible "retaining members" of Bidwell are "support tubes," Bidwell does not disclose any attachment structure that secures an enclosure

member to a support tube.  Instead, in Bidwell the fabric sidewall 14 has sleeves that fit over the structural corner posts (which Kids II alleges are not support tubes, but "positioning posts"), after which the retaining members 22 are simply snapped onto the corner posts and then secured to them with screws 34 as shown below. Ex. 1 ('919 patent) at Fig. 1.  Again, Kids II's theory is exactly backwards, since the retaining member is a non-structural element that is attached to a corner post. It is not an attachment structure that mounts and secures an enclosure member *to* a frame.  Indeed, Bidwell describes the fabric sidewall 14 as being secured between upper peripheral frame 10, lower peripheral frame 12, and fitting over corner posts 20.  SAF 76 & 77; Ex. 1 at 2:25- 3:5.  In other words, the fabric sidewall 12 is already secured to the corner posts 20, as shown below in Fig. 1 (illustrating the fabric sidewall and the frame prior to retaining member 22 being finally snapped into place.).



-14-

To this assembly, the retaining member 22 is attached with screw 34 to protect the fabric sidewall.  *Id.* at 3:16-28.  For these reasons and the other reasons stated herein, Bidwell does not anticipate claims 20, 21, 27 and 28.

>  **D.**   **Bidwell does not have upright tubes or support tubes that are curved.**

Bidwell also fails to disclose tubes that are curved along their length, which is required by claims 28 and 29.  See, e.g., claim 28: "The baby crib according to claim 20, wherein the upright tubes are curved."  Ex. 1, 6:38-39.  Kids II's theory regarding this limitation is simply ridiculous: because the retaining members 22 of Bidwell have a "radius of curvature" (Br. at 24) perpendicular to their length, they are "curved" as required by the claims.  This argument is akin to saying that all arrows are curved because their cross-sections are round.  But everyone knows what the term "straight as an arrow" means.  Bidwell only discloses corner posts and retaining members that are straight tubes.  SAF 78; Ex. 5 (Bidwell patent), Figs. 1, 2.

Here, Kids II is simply ignoring the specification and drawings of the patent, which make clear that when the uprights are curved, they are curved along their length.  Ex. 1, 3:25-27: "In this embodiment, the aforementioned positioning posts 22 are flexible so as to follow the curved configuration of the upright tubes 11 upon insertion into the latter."  This description only makes sense where the upright tubes are curved along their length.

-15-

Bidwell does not disclose any alternative embodiments wherein either the corner post or the retaining member is curved along its length.   SAF  79.   Thus, in addition to the reasons above applicable to claims 15 and 20 (from which claims 28 and 29 depend), Bidwell does not anticipate claims 28 and 29.

## V.   CONCLUSION

In order for a piece of prior  art to anticipate a patent claim, the limitations of the claim must all be present in that piece of prior art, and must also be arranged in the same way as claimed, so that it shows exactly what is claimed.  *Titanium Metals Corp. v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985) ("Anticipation under § 102 can be found only when the reference discloses exactly what is claimed and that where there are differences between the reference disclosure and the claim, the rejection must be based on § 103 which takes differences into account.").  As can be readily seen from the illustration of Bidwell above, and for the specific reasons discussed here, Bidwell is ***not*** arranged exactly according to the asserted claims of the '919 Patent, nor does it even include all the elements of the claims, regardless of their arrangement.  Bidwell's tube/retainer design is the opposite of the claimed invention - the support tube being on the inside instead of the outside.  Therefore, Wonderland asks the Court to deny Kids II's Motion for Summary Judgment and instead grant Wonderland's Motion that the '919 Patent is *not* anticipated, for the following reasons.

-16-

Summary judgment of *no invalidity* is proper because Bidwell lacks multiple limitations of every asserted claim, and if *even one* limitation is missing for each claim, Bidwell does not anticipate.  If a single claim element is absent from an alleged prior art reference, there can be no anticipation. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998).  As discussed in detail above, Bidwell lacks at least two limitations of each of claims 15, 19, 20, 21, and 27 (the "support tubes" or "upright tubes" and "positioning posts" or "attachment structure"), and it also lacks at least three limitations of claims 28 and 29 (i.e., both the limitations lacking in claims 15 and 20, and also the "curved tubes" limitations).

Wonderland respectfully requests oral argument on this Motion.

August 17, 2015

/s/ David I. Roche
David I. Roche (admitted *pro hac vice*)
David.Roche@bakermckenzie.com
Shima S. Roy
shima.roy@bakermckenzie.com
Daniel A. Tallitsch (admitted *pro hac vice*)
Daniel.Tallitsch@bakermckenzie.com

Shattuck Ely
GA Bar No. 246944
tely@fellab.com
225 Peachtree Street, NE
Suite 2300, South Tower
Atlanta, Georgia 30303
Phone: (404) 586-9200
Fax: (404) 586-9201

Baker & McKenzie LLP
300 E. Randolph Street, Suite 5000
Chicago, IL 60601
Phone: (312) 861-8000
Fax: (312) 861-2899
*Attorneys for Plaintiff Wonderland*
*Nurserygoods Co., Ltd.*

<u>List of Exhibits Mentioned in this Opposition</u>
<u>(All are Kids II Exhibit - None added by Wonderland)</u>

Exhibit 1:    U.S. Patent No. RE 43,919 (patent-in-suit)

Exhibit 5:    Australian Patent AU 715,883 to Bidwell

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document (including exhibit(s), if any) was served via the Court's ECF System upon the following:

Norman Andrew Crain    Andrew.Crain@thomashorstemeyer.com
Scott P. Amy             scott.amy@thomashorstemeyer.com

          /s/ David I. Roche
          David I. Roche

## LOCAL RULE 7.1D CERTIFICATION

The undersigned hereby certifies that the above document was prepared in

Times New Roman 14 point, which is one of the font and point selections

approved by the Court under Local Rule 5.1B.

Date:  August 17, 2015          /s/ David I. Roche
                                David I. Roche (admitted *pro hac vice*)
                                David.Roche@bakermckenzie.com
                                Baker & McKenzie LLP
                                300 E. Randolph Street, Suite 5000
                                Chicago, IL 60601
                                Telephone:  312-861-8608
                                Facsimile:   312-698-2363

                                ATTORNEYS FOR PLAINTIFF,
                                WONDERLAND NURSERYGOODS CO., LTD.