# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO., LTD., | CIVIL ACTION NO. |
| Plaintiff, | 1:13-cv-01114-ELR |
| v. | |
| KIDS II, Inc., | |
| Defendant. | |

**WONDERLAND NURSERYGOODS CO. LTD.'S
MEMORANDUM IN OPPOSITION TO KIDS II INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF THE
<u>ASSERTED CLAIMS OF U.S. PATENT RE 43,919 UNDER 35 U.S.C. § 251</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................1

II.   APPLICABLE LEGAL STANDARDS.......................................................5

    A.    Summary Judgment Generally ................................................5

    B.    Presumption of Validity .........................................................6

    C.    The "Original Patent Requirement" .......................................7

III.  ARGUMENT...............................................................................15

    A.    The Subject Matter of the Claims of the '919 Patent and the '957 Patent Is the Same ...........................................................15

    B.    The Section 251 Defense Violates the Parties' Stipulation................20

    C.    Kids II Does Not Address the Presumption of Validity....................23

    D.    If the invention the '919 is deemed not to clearly be for the same as the invention in the original '957 patent, then there is at least a dispute of fact that preludes summary judgment in Kids II's favor............................................................................23

IV.   CONCLUSION.............................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al-Site Corp. v. VSI Intern., Inc.*,
174 F.3d 1308 (Fed. Cir. 1999) ...........................................................................6

*In re Amos*,
953 F.2d 613 (Fed. Cir. 1991) ......................................................*passim*

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).............................................................................5, 6

*Antares Pharma, Inc. v. Medac Pharma Inc.*,
771 F.3d 1354 (Fed. Cir. 2014) ...................................................*passim*

*Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) .........................................................9, 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................5

*In re Clement*,
131 F.3d 1464 (Fed. Cir. 1997) ...............................................................8

*In re Edwards*,
568 F.2d 1349 (CCPA 1978) .................................................................10

*Hairston v. Gainesville Sun Pub. Co.*,
9 F.3d 913 (11th Cir. 1993) .....................................................................5

*Hester Industries., Inc. v. Stein, Inc.*,
142 F.3d 1472 (Fed. Cir. 1998) .........................................................9, 16

*In re Hounsfield*,
699 F.2d 1320 (Fed. Cir. 1983) ...............................................................9

*In re Kaslow*,
707 F.2d 1366 (Fed. Cir. 1983) .............................................................10

*Klein v. Russell*,
  86 U.S. 433 (U.S. 1874).....................................................................................23

*In re Mead*,
  581 F.2d 251 (C.C.P.A. 1978) ............................................................4, 10, 14, 24

*Nat'l Presto Indus. v. West Bend Co.*,
  76 F.3d 1185 (Fed. Cir. 1996) ......................................................................4, 6

*Pfizer, Inc. v. Apotex, Inc.*,
  480 F.3d 1348 (Fed. Cir. 2007) ...........................................................................6

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
  563 F.3d 1358 (Fed. Cir. 2009) .................................................................*passim*

*In re Rowand*,
  526 F.2d 558 (C.C.P.A. 1975) ...........................................................4, 10, 14, 24

*In re Weiler*,
  790 F.2d 1576 (Fed. Cir. 1986) ...............................................................*passim*

**Statutes**

35 U.S.C. § 112 .......................................................................................*passim*

35 U.S.C. § 251..........................................................................................*passim*

35 U.S.C. § 282.................................................................................................3, 6

**Other Authorities**

Fed. R. Civ. P. 56(a)..........................................................................................5

Local Rule 56.1.B(2)b.........................................................................................1

Local Patent Rule 7.1(b) ..................................................................................20

## I.    INTRODUCTION

Wonderland Nurserygoods Co. Ltd. ("Wonderland") respectfully submits this Brief in Opposition to Defendant Kids II's Motion for Partial Summary Judgment that the asserted United States Patent No. RE 43,919 (the "'919 patent"), is invalid under 35 U.S.C. § 251.  The '919 Patent is attached as Exhibit 1.[1]

Pursuant to LR 56.1.B(2)b, Wonderland has submitted a concise statement of additional facts (SAFs) in support of this Response.  That statement and the numbered paragraphs therein are referred to herein as "SAF ¶___".

Kids II has moved for summary judgment that the '919 reissue patent is invalid for failure to meet the "original patent requirement" of section 251.  The original patent requirement limits the scope of what can be claimed when a patent owner seeks to reissue a U.S. patent.  The original patent requires, in summary, that the claims of a reissue patent be directed to an invention disclosed in the original patent.  As explained below, the claims in the '919 patent are directed to an invention disclosed in the original patent, and thus Kids II's motion should be denied for that and other reasons.

_____

[1] The '919 patent is Exhibit 1 to the attached Declaration of David I. Roche.  The other exhibits mentioned in this Memorandum are also attached to that Declaration.

First, the claims of the '919 patent *are* directed to subject matter (a playpen with exposed legs) that is the same as what was shown and claimed in the original patent, (*i.e.*, U.S. patent 6,859,957 (the "'957 patent"). A copy of the '957 patent is attached as <u>Exhibit 2</u>. The Federal Circuit has made it clear that "the whole purpose of the [reissue] statute, so far as claims are concerned, is to permit limitations to be added to claims that are too broad or to be taken from claims that are too narrow." *In re Weiler*, 790 F.2d 1576, 1580 (Fed. Cir. 1986), *citing In re Handel*, 312 F.2d 943, 948 (CCPA 1963). Both the '957 patent and the '919 patent are directed to a "baby crib", sometimes called a playard or playpen.  In accordance with the purpose of the reissue statute, some limitations in the '957 patent claims were removed during the reissue process  because those claims were too narrow.

Second, by raising this new and never-pleaded invalidity defense Kids II is in direct violation of a stipulation (Dkt. #141), which the parties jointly drafted and filed with the Court in connection with scheduling of additional discovery ordered by Judge Thrash in December, 2014 (the "Stipulation"). SAF at ¶ 2-3; Jan. 13, 2015 Stip. attached as <u>Exhibit 3</u>.  Pursuant to that Stipulation the parties undertook an obligation not to raise new arguments or issues in any supplementary expert reports, unless they related to the supplemental discovery ordered by Judge Thrash. SAF at  ¶ 3; Ex. 3 at ¶ 1 ("Any such supplementation [of expert reports] shall be related only to information contained in the Supplemental Discovery.").

The reason for the Stipulation, as emphasized by Kids II counsel, was to prevent the supplementation of expert reports from becoming "a 'do over.'"  SAF ¶ 4;  January 9, 2015 Email from S. Amy, attached as <u>Exhibit 4</u>.  Yet, in violation of the stipulation, Kids II's raised this section 251 defense for the first time in this litigation in its experts supplementary expert report.  The defense had not been pled in the past, nor had any discovery been take on this defense in the regular or supplementary discovery phase.  Kids II raising this defense now is an attempted "do over" because it does not relate, at all, to the supplemental discovery.  Indeed, Kids II makes no effort in its Motion to establish its right to raise this new invalidity defense.  Kids II never alleged invalidity under section 251 in its initial or rebuttal expert reports (on invalidity), and never pled this defense in its Answer. SAF at ¶¶ 5-7; Dkt. #14.

Third, Kids II fails to acknowledge or address the high burden of proof attached to the issue underlying its Motion.  In granting of the '919 patent, the Patent Office is presumed to have considered whether the claims meet the statutory requirements of Section 251.  This means that the '919 patent can only be invalidated by "clear and convincing" evidence. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc*., 563 F.3d 1358, 1366 (Fed. Cir. 2009) ("Under 35 U.S.C. § 282, an issued patent is presumed valid. Thus, Revolution bears the burden to prove invalidity by clear and convincing evidence.").   Indeed, the fact that many of the

-3-

cases cited by both parties are styled as ex parte "*In re*" cases, which are appeals from Patent Office decisions on patentability issues, demonstrates that compliance with the original patent requirement of 35 U.S.C. § 251 is an issue that USPTO considers when granting all reissue patents.

Finally, under Federal Circuit law compliance with the original patent requirement of Section 251 is "essentially factual inquiry".  In re Amos, 953 F.2d 613, 618 (Fed. Cir. 1991), *In re Rowand*, 526 F.2d 558, 560; See also *In re Mead*, 581 F.2d 251, 256 (C.C.P.A. 1978).  The parties' experts have directly opposing views on whether the invention of claims 15 and 20 of the '919 patent is directed to the invention that is disclosed in the original '957 patent.  This genuine dispute of fact precludes summary judgment.

Importantly, when evaluating a motion for summary judgment, courts are required to view the evidence through the prism of the evidentiary standard of proof that would pertain at trial on the merits.  *Nat'l Presto Indus. v. West Bend Co*., 76 F.3d 1185, 1189 (Fed. Cir. 1996), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986) (heightened standard of clear and convincing evidence, which would be party's burden at trial, is to be considered when evaluating sufficiency of evidence on motion for summary judgment). Kids II does not address, nor meet, its burden with this motion.

-4-

Accordingly, the Court should deny Kids II's Motion for Partial Summary Judgment of Invalidity Under Section 251.

## II.   APPLICABLE LEGAL STANDARDS

### A.   Summary Judgment Generally

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson,* 477 U.S. at 247-48.   In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Id.* at 255.

The court may not weigh conflicting evidence or weigh the credibility of the parties.  *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment.  *Id.*  On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

-5-

## B.     Presumption of Validity

Issued patents have a strong presumption of validity in infringement proceedings. *See* 35 U.S.C. § 282.  Accordingly, an accused infringer bears the burden of proving invalidity by clear and convincing evidence.  *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999) ("The presumption of validity under 35 U.S.C. § 282 carries with it a presumption that the Examiner did his duty and knew what claims he was allowing."), *citing Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989). "Although an exact definition is elusive, 'clear and convincing evidence' has been described as evidence that 'place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable.'" *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 n. 5 (Fed. Cir. 2007), quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial on the merits. *Anderson*, 477 U.S. at 255; *see also Nat'l Presto*, 76 F.3d at 1189, *citing Anderson*, 477 U.S. at 254 (heightened standard of clear and convincing evidence, which would be party's burden at trial, is to be considered when evaluating sufficiency of evidence on motion for summary judgment).

### C.    The "Original Patent Requirement"

The statutory provision upon which Kids II's Motion is based, section 251, provides:

> (a) In General.— Whenever any patent is, through error, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.
>
> *                *                *
>
> (d) Reissue Patent Enlarging Scope of Claims.— No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.

35 U.S.C. § 251 − Reissue of Defective Patents.

The reissue statute, enacted in 1952, revised the prior law to expressly allow patent holders to file "broadening reissue" applications, (*i.e.*, when the patentee has claimed "less than he had a right to claim").  A broadening reissue is possible, provided that: (1) the application is filed within two years of the issue date of the patent; and (2) no new matter is added.  Here, the '919 patent was filed well-within the two-year time limit, which Kids II does not dispute.  The Issue Date of the original patent was March 1, 2005 and the reissue application was filed on October

26, 2006. SAF at ¶¶ 8-9.  In addition, Kids II does not allege that new matter was added during the reissue application that resulted in the '919 patent.

Courts construe 35 U.S.C. § 251 liberally, as it is "based on fundamental principles of equity and fairness . . . ." *Weiler*, 790 F.2d at 1579.  Moreover, whether the statutory requirements of section 251 have been met is a question of law, which may involve underlying factual questions. *See In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997).

There are two kinds of reissues.  The first, which applies here, is when a patent holder seeks to broaden the claims in its original patent but still claims the subject matter of the invention claimed in the original patent.  The second is when the patent holder seeks to add claims directed to subject matter that is different from what was originally claimed.  When the patent holder seeks a reissue in the first scenario, courts undertake an analysis that is analogous to that of the written description requirement of section 112, Par. 1, i.e., asking whether there is support in the specification for the new claims, i.e., this is the "written description" requirement of 35 U.S.C. § 112, ¶1.  The second scenario requires an additional inquiry, which is whether the newly claimed subject matter was described separately as a separate invention in the specification of the original patent.

Generally, the "original patent requirement restricts a reissue patent to 'the invention disclosed in the original patent.'"  *Antares Pharma, Inc. v. Medac*

-8-

*Pharma Inc.*, 771 F.3d 1354, 1358-1359 (Fed. Cir. 2014). It is based on the portion of section 251 that states: "the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for ***the invention disclosed in the original patent*.**" 35 U.S.C. § 251 (emphasis supplied). This seldom used challenge to patents that have been reissued has been the subject of a limited number of decisions by the Federal Circuit. *Antares*, 771 F.3d at 1358-1359; *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc*., 563 F.3d 1358, 1366 (Fed. Cir. 2009); *Hester Industries., Inc. v. Stein, Inc*., 142 F.3d 1472 (Fed. Cir. 1998); *In re Weiler*, 790 F.2d 1576; *In re Amos*, 953 F.2d 613 (Fed. Cir. 1991); and *In re Hounsfield*, 699 F.2d 1320 (Fed. Cir. 1983).

In the cases in which the Federal Circuit has discussed the original patent requirement of 35 U.S.C. § 251, it has made the point repeatedly that the original patent requirement is analogous to the "written description requirement" of 35 U.S.C. § 112, Par. 1. *Amos*, 935 F.2d at __. The "written description requirement" requires that a patent "clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed." *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010).

The Court in *Amos* relied on two decisions of its predecessor court (the Court of Customs and Patent Appeals or "CCPA"), and explained that the inquiry

-9-

under the original patent requirement of 35 U.S.C. § 251  is "analogous to the analysis required by [35 U.S.C.]§ 112 para. 1," stating:

> Thus, the inquiry that must be undertaken to determine whether the new claims are "for the invention" originally disclosed, to paraphrase *Rowand* [*In re Rowand*, 526 F.2d 558, 559-60 (C.C.P.A. 1975)], is to examine the entirety of the original disclosure and decide whether, through the "objective eyes" of the hypothetical person having ordinary skill in the art, an inventor could fairly have claimed the newly submitted subject matter in the original application, given that the requisite error has been averred. We agree with, and, in any event, are bound by, the statement in *Mead* [*In re Mead*, 581 F.2d 251 (C.C.P.A. 1978)], quoted above, that the inquiry under § 251 as to whether the new claims are for the invention originally disclosed is analogous to the analysis required by § 112 para. 1.

*Amos*, 953 F.2d at 618

The Federal Circuit in *Amos* went on to explain the proper analysis under Section 112, Par. 1. Under that section, a court must ascertain whether "the disclosure originally filed [conveys] to those skilled in the art that applicant had invented the subject matter later claimed."  *Id.*, *citing In re Wilder*, 736 F.2d 1516, 1520, (Fed. Cir. 1984); *In re Kaslow*, 707 F.2d 1366, 1375 (Fed. Cir. 1983); *In re Edwards*, 568 F.2d 1349, 1351 (CCPA 1978) ("The function of the description requirement is to ensure that the inventor had possession, as of the filing date of the application relied on, of the specific subject matter later claimed by him.").

-10-

In *Revolution Eyewear*, the Federal Circuit held that the claim complied with section 251 and the original patent requirement because the claim complied with the written description requirement of 35 U.S.C. § 112, Par. 1. Citing its decision in *Amos*, the Federal Circuit held that:

> The essential inquiry for the 'original patent' requirement is 'whether one skilled in the art, reading the specification, would identify the subject matter of the new claims as invented and disclosed by the patentees.' *In re Amos*, 953 F.2d 613, 618 (Fed. Cir. 1991). This inquiry is analogous to the written description requirement under § 112, P 1. *Id.* at 617. Because we have held that the written description requirement is satisfied, we similarly hold that claim 22 complies with § 251."

*Revolution Eyewear*, 563 F.3d at 1367.

Finally, in *Antares*, the Federal Circuit also held that the standard for compliance with the original patent requirement of section 251 is analogous to that of the written description requirement of 35 U.S.C. § 112, Par. 1. *Antares*, 771 F.3d at 1351. In *Antares*, the court referred to the *en banc* decision in *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010), which requires that the patent description "clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed." *Antares*, 771 F.3d at 1351. Importantly, the patentee in *Antares* ***admitted*** that the claims it obtained by reissue were for a "different invention from what was originally claimed." *Id.* at

-11-

1866.  The court in *Antares* also noted that the claims of the original patent were directed to "a particular class of injectors" and that the reissue claims were on safety features "separate from the jet injector invention." *Id*. at 1871.

Kids II does not contend that the claims of the '919 patent fail to comply with the written description requirement of 35 U.S.C.§ 112, Par. 1. In other words, Kids II acknowledges that the specification of the '957 patent contains sufficient written description of the inventions claimed in the reissue.  Instead, Kids II distorts the holding in the *Antares* case and argues that "the same invention" or "original patent requirement" demands that the reissue claims must have the same scope as the detailed description of the preferred embodiment in the specification. See Kids II's Opening Brief at p. 2 (characterizing the '957 as being limited to a "one invention" based on the features set forth in the description of the preferred embodiment).    This is not what *Antares* says, and cannot be correct.  If Kids II's argument were to be accepted, all broadening reissues would fail to meet that test, because they all have at least some broader claims--that is, claims with fewer limitations.  Yet Kids II's motion relies almost entirely on the allegation that the reissue claims have fewer limitations than the original claims (which is the very purpose of a broadening reissue, in any event)

As set forth in the cases cited above, "[t]he *essential inquiry* for the 'original patent' requirement is 'whether one skilled in the art, reading the specification,

-12-

would identify the subject matter of the new claims as invented and disclosed by the patentees.'" *Revolution Eyeware*, 563 F.3d at 1367, *citing In re Amos*, 953 F.2d 613, 618 (Fed. Cir. 1991)(emphasis added).   Importantly, Kids II makes no assertion and adduces no evidence, whatsoever, in its brief or statements of fact that one skilled in the art would not identify the subject matter of the new claims as invented and disclosed by the patentee here.  Since this is "the essential inquiry," Kids II's motion should be rejected on this basis alone.

When the subject matter of the original patent claims and the reissue claims is the same, the original patent requirement coincides with and is analogous to the written description requirement of 35 U.S.C. § 112, Par. 1. *In re Amos*, 953 F.2d at 618 (Fed. Cir. 1991).

In *Amos*, the Federal Circuit relied on its predecessor Court, the CCPA, for the proper test under the "same invention" or "original patent" statutory arm, quoting the CCPA, as follows:

> Determining what protection appellants intended to secure by their original patent for the purposes of § 251 is an essentially factual inquiry confined to the *objective* intent manifested by the original patent.

*Amos* at 618, citing  *In re Rowand*, 526 F.2d at 560 (emphasis original).

In support of the foregoing, the Court in *Amos* said that "that the inquiry under § 251 as to whether the new claims are for the invention originally disclosed is analogous to the analysis required by § 112 para. 1",  and explained as follows:

-13-

Hence, the purpose of the rubric "intent to claim" is to ask the same question as to whether "new matter" has been "introduced into the application for reissue" thus, perforce, indicating that the new claims are not drawn to the same invention that was originally disclosed. That inquiry is but a restatement of the question whether that which is claimed in reissue could have been claimed on the basis of the original disclosure, given that the requisite inadvertent error has been demonstrated, as is the case here. Thus, the inquiry that must be undertaken to determine whether the new claims are "for the invention" originally disclosed, to paraphrase *Rowand*, is to examine the entirety of the original disclosure and decide whether, through the "objective eyes" of the hypothetical person having ordinary skill in the art, an inventor could fairly have claimed the newly submitted subject matter in the original application, given that the requisite error has been averred.

*Amos* at 618.

Thus, the original patent requirement is a "factual inquiry" analyzed through the "'objective eyes' of the hypothetical person having ordinary skill in the art." *Amos* at 618, *In re Rowand*, 526 F.2d at 560; See also *In re Mead*, 581 F.2d 251, 256 (C.C.P.A. 1978).

In cases where the subject matter of the reissue *differs* and is distinct from the subject matter claimed in of the original patent, checking for compliance with section 112 is only a first step. *In re Weiler*, 790 F.2d 1576 (Fed. Cir. 1986)(the "subject matter" of reissue "not claimed at all" in original patent).  The second step requires the court to determine whether the newly claimed subject matter was "described separately" from the original invention.  *Antares*, 771 F.3d at 1363

(original invention claimed a needle assisted jet injector, while the reissue sought claims to safety features never described separately).

Importantly, newly claimed subject matter does not preclude a reissue.  In *Amos*, the Federal Circuit held that the original patent requirement was satisfied even though the patentee sought to add claims that covered a new embodiment of the invention. *Amos*, 953 F.2d at 614; *see also Antares*, 771 F.3d at 1363 (distinguishing *Amos*).  The Federal Circuit allowed the reissue under section 251 because the exact, new, embodiment claimed on issue was expressly disclosed in the specification.  *Amos*, 953 F.2d at 617-19; *see also Antares*, 771 F.3d at 1363. In other words, the reissue was permitted based on the patentee's express disclosure of the new embodiment.

## III.   ARGUMENT

### A.   The Subject Matter of the Claims of the '919 Patent and the '957 Patent Is the Same

Exhibits 5 and 6 to this Opposition are side-by-side comparisons of the original independent claim (No. 1) of the '957 patent and asserted independent claims 15 and 20, respectively, of the '919 patent.  Exhibits 5 & 6.  In each instance there are five main limitations.  First, the preambles all call for a baby crib − these are identical.  The second limitation sets forth the basic structure of the crib − a plurality of tubes that form the corners of the crib.  The third limitation recites the enclosure or fabric member.  The fourth limitation describes the structure for

-15-

holding the enclosure or fabric to the upright tubes − positioning posts or attachment structure.  Finally, the last limitation describes the particular way in which fabric is supported by the upright tubes − leaving the outwardly facing parts of the tubes exposed.

There is simply no doubt that the subject matter of original claim 1 of the '957 patent is the same as the subject matter of the claims of the '919 patent.  In obtaining the reissue patent, Wonderland simply removed limiting terminology and replaced it with somewhat broader wording.  This is the purpose of reissue, as explained by the Federal Circuit in *Weiler*, where it held that:

> [T]he whole purpose of the [reissue] statute, so far as claims are concerned, is to permit limitations to be added to claims that are too broad or to be **taken from claims that are too narrow**.

*Weiler*, 790 F.2d at 1580 (emphasis added_.

There is no genuine dispute that Wonderland meets the "original patent requirement" standard set forth by the Federal Circuit.  The specification of the '957 patent contains a sufficient written description of the claims in the reissue. *Antares*, 771 F.3d at 1362; *Revolution Eyewear,* 563 F.3d at 1366; *Hester*, 142 F.3d at 1484;  *Amos*, 953 F.2d at 618;  SAF at ¶ 10.  And Kids II has not raised insufficient written description as a defense against the patent.

Kids II misapplies *Antares* to the facts of this case when it relies on *Antares* for the proposition that "the specification must clearly and unequivocally disclose

-16-

***the newly claimed*** invention as a separate invention."   Mot. at p. 14, quoting *Antares*, 771 F.3d at 1362 (emphasis supplied).   However, this portion of *Antares* refers to a "newly claimed invention." *Id.* at 1362. There is no "newly claimed invention" in the '919 patent.

The claims of the '919 patent are to the same invention that is disclosed in the '957 patent, and there is no genuine dispute about that. SAF at ¶ 11.   This fact is illustrated below by comparing claims 15 and 20 in the '919 (reissue) patent to Figures 3, 4 and 5 in the original '957 patent.   The inventions of claims 15 and 20 of the '919 reissue patent are disclosed in Figures 3, 4 and 5 of the original patent.[2] SAF at ¶ 14, 16, 18, 20, 22, 24-28.   Those Figures (3, 4, and 5) are on the right below and claims 15 and 20 of the '919 are on the left:

_____

[2]   There are only five figures in the '957 patent.   Figures 1 and 2 show prior art playards, while Figures 3, 4 and 5 show the invention of the '957 patent.

| RE 43,919 |
|---|
| **15. A baby crib comprising:** |
| a plurality of upright tubes defining corners of the baby crib, wherein each of the upright tubes has an outer wall that defines an outer contour shape of the upright tube; and |
| an enclosure member including a plurality of side panels contiguously connected to one another along edge portions and surrounding an enclosed space adapted for receiving a baby therein; and |
| a plurality of positioning posts provided on the enclosure member at locations corresponding to the edge portions of the enclosure member, wherein the positioning posts are lodged inside the upright tubes, |
| the side panels extending between the upright tubes substantially out of contact with the outside surfaces of outer walls of the upright tubes, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member. |



F I G. 4

F I G. 5

F I G. 3

====================================================

| RE 43,919 |
|---|
| **20. A baby crib comprising:** |
| a frame structure including a plurality of support tubes, wherein each of the support tubes has an outer wall that defines an outer contour shape of the upright tube; |
| an enclosure member including a plurality of side panels having edge portions; and |
| an attachment structure configured to mount and secure the edge portions of the enclosure member along the support tubes, |
| whereby the side panels surround an enclosed space, and each of the side panels extends generally between two of the support tubes substantially out of contact with outwardly facing surfaces of the outer walls thereof, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member |



F I G. 4

F I G. 5

F I G. 3

-18-

The illustrations above refute Kids II's suggestion that the additional matter covered by the '919 (reissue) patent was not disclosed in the original patent.  Kid II' Opening Brief. at p. 14 ("[I]t is well-settled that the original patent requirement is not met 'if the additional matter covered by the claims of the reissue is not disclosed in the original patent.'"), *citing Industrial Chemicals*, 315 U.S. at 675-76. As shown in those diagrams, the subject matter of claims 15 and 20 of the '919 reissue patent *is* fully disclosed in the '957 patent.

The Supreme Court's decision in *Industrial Chemicals* explained:

> The question is whether, in the light of the disclosures contained in the two patents, they are for the same invention. This court has said that **they are** … if the broader claims in the reissue are not merely suggested or indicated in the original specification but **constitute parts or portions of the invention** which were intended or sought to be covered or secured by the original patent.

*Industrial Chemicals*, 315 U.S. at 675-676 (emphasis supplied). By including fewer details in the reissue claims as compared to the original claims, but keeping the claims directed to a crib or playard of the type shown in Figures 3-5, Wonderland clearly complied with the original patent requirement, as set forth in *Industrial Chemicals*.

Wonderland does not dispute that claims 15 and 20 are broader in scope (at least in some respects) than original claim 1 of the '957 patent.  Indeed, certain terms (such as "clamped") were deleted.  However, there can be no genuine dispute

that claims 15 and 20 are for the same invention because they "constitute parts or portions of the invention" secured by the original '957 patent.  *Industrial Chemicals*, 315 U.S. at 676.

### B.    The Section 251 Defense Violates the Parties' Stipulation

As discovery was nearing completion in this case, Kids II filed a motion seeking additional deposition time with Wonderland's witnesses. Dkt. #95. Following oral argument on October 31, 2014, Judge Thrash granted-in-part and denied-in-part that Motion.   Dkt. #137.   At the time of the ruling allowing additional depositions, the parties' experts had completed their initial expert reports in accordance with Local Patent Rule 7.1(b) (completed on August 26, 2014), and rebuttal expert reports under 7.1(d) (completed October 16, 2014), but the experts had not yet been deposed.

In anticipation of the potential that supplemental discovery would necessitate supplementation of the expert reports, the parties entered into a Stipulation that was filed with the Court.  Ex. 4.  That Stipulation provided that experts *could* supplement their reports, but only to the extent that the supplemental opinions related to information contained in the Supplemental Discovery. Stipulation dated January 12, 2015 - Exhibit 3.

In negotiating the scope of the stipulation, Kids II's counsel insisted that no additional arguments or opinions should be raised unless they were based on

information obtained by the additional discovery, stating that "this is not a 'do over'":

> Based on our discussion, we understand that the parties are in agreement that ***any supplementation will be related only to the additional Wonderland depositions or Graco financials that were ordered by the Court. In other words, the parties are in agreement that this is not a "do over,"*** and neither party may supplement its reports if the supplemental information is not related to the Wonderland depositions that took place in December, or the Graco financial information that was produced in December.

Email of Kids II's Counsel, dated January 9, 2015 - Exhibit 5 (emphasis supplied).

Kids II's expert raised no issues of invalidity under section 251 in either his initial report on validity or his rebuttal report.  SAF at ¶ 5-6; Exhibits 7 & 8.  Kids II has never pleaded or sought to amend a pleading to add an invalidity defense under section 251, nor had it identified Section 251 as a defense in its invalidity contentions. SAF at ¶ 7.  Nothing in the supplemental discovery, which entailed additional depositions of Wonderland personnel and the production of certain financial information from Graco, was remotely related to a section 251 defense.  Yet, his Supplemental Report of February 6, 2015, Kids II's expert opines in great detail on a section 251 defense for the first time.  Exhibit 9.

As the Supreme Court unequivocally stated, a dispute about compliance with the original patent requirement must be resolved by a comparison of original patent

to the reissue patent.  "If that comparison leads to the conclusion that the reissue is not for the same invention as the original, the reissue is void as not within the terms of the statute."  *Industrial Chemicals*, 315 U.S. at 671.

Thus, Kids II's section 251 argument is ***not in any way*** based on the supplemental discovery allowed by Judge Thrash.  It is a defense that should have been raised at the beginning of this case, because it is based entirely on a comparison of the asserted '919 patent and its parent, the '957 patent, and nothing more.  The parties have taken no fact discovery on this defense.  It was sprung by Kids II very late in this case, i.e., after the close of fact discovery.  Kids II used the supplemental discovery period as a pretext for raising this defense.  However, that tactic violates Kids II's own admonition against "do overs" and the parties' Stipulation.

By improperly including the section 251 defense in its supplemental expert report, Kids II attempts to give the imprimatur of an expert opinion on this mixed issue of fact and law.  This prejudices Wonderland.    Had Kids II kept the promise it made in the Stipulation to not raise issues not addressed in the supplemental discovery, it would have had to: (1) seek leave to amend a pleading; and (2) prove this defense through other means.  Moreover, at this juncture in the case, if Kids II had not raised the issue through its expert, it would have no basis to file this Motion (as Kids II has not sought to amend any of its pleadings to add this

-22-

defense). Wonderland is thus further prejudiced by Kids II's improper actions. Adding the section 251 defense to its supplemental expert report is a clear violation of the parties' agreement to restrict supplementation of the expert reports to new facts only.

### C.    Kids II Does Not Address the Presumption of Validity

"It is not to be presumed that the patentee intended to embrace in the reissue what he had not invented or described in the original, and thus destroy his patent." *Klein v. Russell*, 86 U.S. 433 (U.S. 1874).

The file history of the '919 patent shows that the claims of the '919 reissue patent were considered by <u>three</u> Examiners.  The main Examiner, Mr.  Santos consulted with Peter M. Cuomo, a Supervisory Patent Examiner, and Heather C. Shackelford, a Supervisory Examiner in the USPTO's Office of Patent Quality Assurance.  <u>Exhibit 10</u>;  SAF at ¶ 12-13 .

Kids II does not even try to explain how or why the three USPTO Examiner could have overlooked or otherwise failed to reject the claims of the '919 reissue patent for alleged non-compliance with the original patent requirement.

### D.    If the invention the '919 is deemed not to clearly be for the same as the invention in the original '957 patent, then there is at least a dispute of fact that preludes summary judgment in Kids II's favor.

As noted above, the Federal Circuit has said the original patent requirement is a "factual inquiry" analyzed through the "'objective eyes' of the hypothetical

person having ordinary skill in the art." *Amos* at 618, *In re Rowand*, 526 F.2d at

560; See also *In re Mead*, 581 F.2d 251, 256 (C.C.P.A. 1978).

The parties have submitted expert reports that take diametrically opposite

views on the question of whether the original patent requirement has been met by

claim 15 and 20 of the '919 patent.  Wonderland expert, Mr. Jerry Drobinski, has

stated that: "…the invention of the '919 patent is the same invention as is the

subject of the claims of the '957 patent with only minor changes to the wording of

the claims."  Exhibit 11, p. 3.

Mr. Drobinski has also stated:

It is my view that a person of ordinary skill would understand that the
same invention (with somewhat different wording) is being claimed in
both claim 1 of '957 patent and in claims 15 and 20 of the '919 patent,
and that the subject matter of claims 15 and 20 of the '919 patent is
fully disclosed in and supported by the specification of the '957 patent,
which is substantially the same as the specification of the '919 patent
(with only minor editing proposed by the Examiner).

Supplemental Response Report - Validity by J. Drobinski, Exhibit 11, p. 6.

Thus, if the Court does not agree with the main contention as set forth

above, i.e., that the claims of the '919 patent clearly meet the original patent

requirement, and assuming that the Court allows Kids II to present the  defense

under Section 251, despite the Stipulation of January 13, 2015 (Exhibit 3), then

there is at least a question of fact on this issue, and the jury should be allowed to

decide the issue.

## IV.   CONCLUSION

For all the above reasons, Wonderland asks the Court deny Kids II's Motion for Summary Judgment that the '919 Patent Invalid under Section 251, because the claims of the '919 patent clearly meet the original patent requirement and/or because Kids II has failed to properly raise this defense until after fact discovery had closed and because Kids II violated the stipulation that any new invalidity arguments beyond those in their original expert report, must be based on the supplemental discovery allowed by Judge Thrash.

Wonderland respectfully requests oral argument on this Motion.

Date:  August 13, 2015                   Respectfully submitted,

                                         /s/ David I. Roche
Local Counsel:                           David I. Roche (admitted *pro hac vice*)
                                         David.Roche@bakermckenzie.com
Shattuck Ely, Esq.                       Shima S. Roy
Fellows LaBriola LLP                     shima.roy@bakermckenzie.com
225 Peachtree Street N.E.                Daniel A. Tallitsch (admitted pro hac vice)
Suite 2300, South Tower                  Daniel.Tallitsch@bakermckenzie.com
Atlanta, Georgia 30303
                                         Baker & McKenzie LLP
                                         300 E. Randolph Street, Suite 5000
                                         Chicago, IL 60601
                                         Telephone:  312-861-8608
                                         Facsimile:   312-698-2363

                                         ATTORNEYS FOR PLAINTIFF,
                                         WONDERLAND NURSERYGOODS CO., LTD.

-25-

## <u>Exhibit List</u>

Exhibit 1:    U.S. Patent No. RE 43,919 (patent-in-suit)
Exhibit 2:    US. Patent No. 6,859,957 (the original of the '919 reissue patent)
Exhibit 3:    Joint Stipulation dated January 13, 2015 (Dkt. 141)
Exhibit 4:    Email from Kids II's Counsel - January 9, 2014
Exhibit 5:    Comparison - Claim 1 of '957 to Claim 15 of the '919
Exhibit 6:    Comparison - Claim 1 of '957 to Claim 20 of the '919
Exhibit 7:    Table of Contents of Initial Expert Report of Kids II (August 26, 2014)
Exhibit 8:    Table of Contents of Rebuttal Expert Report of Kids II (Oct. 16, 2014)
Exhibit 9:    Table of Contents of Supplemental Initial Expert Report of Kids II (Feb. 6, 2015)
Exhibit 10:   Excerpts from the File History of the '919 patent
Exhibit 11:   Excerpts from Expert Report of Jerry Drobinski (Feb. 20, 2015)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document (including exhibit(s), if any) was served via the Court's ECF System upon the following:

Norman Andrew Crain Andrew.Crain@thomashorstemeyer.com
Scott P. Amy scott.amy@thomashorstemeyer.com

  /s/ David I. Roche
   David I. Roche

## LOCAL RULE 7.1D CERTIFICATION

The undersigned hereby certifies that the above document, i.e., WONDERLAND NURSERYGOODS CO. LTD.'S MEMORANDUM IN OPPOSITION TO KIDS II INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF THE ASSERTED CLAIMS OF U.S. PATENT RE 43,919 UNDER 35 U.S.C. § 251 was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

Date:  August 13, 2015          /s/ David I. Roche
                                David I. Roche (admitted *pro hac vice*)
                                David.Roche@bakermckenzie.com
                                Baker & McKenzie LLP
                                300 E. Randolph Street, Suite 5000
                                Chicago, IL 60601
                                Telephone:  312-861-8608
                                Facsimile:   312-698-2363

                                ATTORNEYS FOR PLAINTIFF,
                                WONDERLAND NURSERYGOODS CO., LTD.