# Exhibit 11



# Supplemental Response Report - Validity of Selected Asserted Claims of U.S. Patent Numbers 6,954,949 & RE 43,919

Wonderland Nursery Goods, Co. Ltd. v.  Kids II Incorporated
Civil Action No. 1:13-CV-1114-TWT

REDACTED

**GLOBAL DEVELOPMENT AND SOURCING, INC.**
**TUCSON, ARIZONA 85739**

February 20, 2015
Authored by: Jerry Drobinski

Signed electronically:  *Jerry Drobinski*

# I.    INTRODUCTION

Global Development and Sourcing, Inc. (GDS), its principal and President, Jerome Drobinski were retained by Baker and McKenzie, LLP in January of 2013 through Thomson Reuters Expert Witness Services to render technical opinions relating to the infringement of the Kids II play yard product "Ingenuity" on U.S. Patents 6,954,949 and RE 43,919 (the "'949 and '919" patents respectively hereinafter), assigned to Wonderland Nursery Good, Ltd. (WL), and to render technical opinions on the validity of these patents. Specifically, after rendering an infringement opinion, we have been asked to respond to the Invalidity Expert Witness Report of Professor William Singhose dated August 26, 2014 relating to claim 1 of the 949 patent and claims 15, 19, 20, 21, 27, 28 and 29 of the '919 patent.

We come now to respond to Professor Singhose's Supplement to that report and comment on new information revealed in the Supplemental Discovery, specifically the depositions of Mr. Chen and Ms. Wang of December 18, 2014. This report is supplemental to the earlier report of October 6, 2014 and in no way is intended to replace all or part of that report.

Our charges for this service through Thompson Reuters are calculated by the time expended and expenses disbursed for this analysis.  The hourly rate for study and preparation of this report are included in Exhibit A of our original report as are the author's detailed qualifications and recent writings and deposition and trial testimony in the last four years.

In general, the author has been in the Juvenile Products industry for almost 30 years. In that time he has had responsibility for the full range of business and technical activities in the industry including, sales and general management. However, his primary focus has been the research, product development and manufacturing functions. He is a named inventor on a number of patents in the field, including patents on swings, sleep products, including play yards, strollers and amusement items. As Vice President of Product Development, he directed the activities of more than 30 individuals in research, design and startup of a wide variety of successful, patented, new and improved products. As an independent consultant he has been engaged by a number of

REDACTED

companies, primarily in the Juvenile Products industry (as well as others), both domestic and foreign, in the full range of design, engineering and manufacturing disciplines. He remains active in the safety and standards area, chairing or participating in various ASTM committees on Juvenile Products.

## II.     MATERIALS REVIEWED

A list of materials reviewed and relied on for this analysis is included as Exhibit A to this report.

## III.    GENERAL COMMENTS AND OUTLINE

The over-riding concept of validity as has been cited in previous reports and reviewed with me in detail is as follows:

A patent enjoys a presumption of validity, which can be overcome only through clear and convincing evidence. 35 B.SC. § 282. At all times, the burden is on the defendant (Kids II here) to establish by clear and convincing evidence that the patent is invalid. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Lite.*, 676 F.3d 1063, 1077-78 (Fed. Cir. 2012).

To overcome the presumption of validity, the challenging party must present *clear and convincing* evidence of invalidity. Schumer v. Lab. Computer Sys., Inc., 308 F.3d 1304, 1315 (Fed. Cir. 2002). Clear and convincing evidence is that "which produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions are highly probable" *Builder, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988).

[The Defendant, Kids II in this case, must prove invalidity by clear and convincing evidence. This is a higher standard than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid. (Excerpted from Apia's Model Patent Jury Instructions.)

Professor Singhose offered an original validity report to which my October 6, 2014 Report responded. This supplemental report has been submitted and it is my opinion that nothing in this supplement offers clear and convincing evidence of invalidity. This new supplement addresses or alludes to four distinct areas and other less expanded opinions.

REDACTED

1. **The "Original Patent  Requirement of 35 U.S.C § 251** – While Professor Singhose denies being  a patent attorney he, in fully 50% of his report, embarks on 39 paragraphs of quasi legal arguments in which he contends that the patent is invalid based on a statutory requirement totally undiscussed in earlier expert reports or attorney arguments. While I find this surprising, based on what I have been told is the normal patent defense legal process, I have responded to them in Section IV of this supplemental report. It is my opinion that this contention is unfounded, because the invention of the '919 patent is the same invention as is the subject of the claims of the '957 patent with only minor changes to the wording of the claims.

REDACTED

REDACTED

REDACTED

Supplemental Response Report  - Validity
Wonderland v. Kids II
February 20, 2014

REDACTED

# SECTION IV - THE ORIGINAL PATENT REQUIREMENT OF 35 U.S.C § 251

## A.    SIMILARITY OF CLAIMED INVENTION IN THE '957 AND '919 PATENTS

My understanding of the legal requirement known as the "original patent requirement" for reissue patents, such as the '919 patent is that:

> "the essential inquiry under the 'original patent' clause of § 251 . . . is whether one skilled in the art, reading the specification, would identify the subject matter of the new claims as invented and disclosed by the patentees."

*Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1361 (Fed. Cir. 2014), citing *Hester Industries., Inc. v. Stein, Inc.,* 142 F.3d 1472, 1484 (Fed. Cir. 1998)(quoting *In re Amos*, 953 F.2d 613, 618 (Fed. Cir. 1991)).

I also understand that when a patentee makes changes to the claims in a reissue patent such that they are "significantly different" from the claims of the original patent upon which the reissue is based, the new invention must be disclose as a separate invention. *Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1362 (Fed. Cir. 2014)

In the *Antares* case upon which Prof. Singhose relies,  the Court noted that: "The original claims are **significantly different** in scope and coverage than the asserted claims. Claims 1-22 [or the original patent] are focused on jet injectors, and every one of those claims contains the "jet injection" limitation. The asserted claims [of the reissue patent] are focused on particular safety features and do not contain the jet injection limitation."  *Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1362 (Fed. Cir. 2014)(emphasis added).  This level of difference is not present in the changes made to the claims of the '919 patent, as compared to the claims of the '957 patent.

In the case of the '919 reissue patent and the original '957 patent, the claims are both directed to essentially the same invention, a baby crib with upright tubes and an enclosure that supported in a way that leaves the upright tubes exposed.  I recognize

CONTAINS CONFIDENTIAL
OUTSIDE COUNSEL ONLY
INFORMATION - SUBJECT TO
PROTECTIVE ORDER

Page 4

Supplemental Response Report  - Validity
Wonderland v. Kids II
February 20, 2014

that there are some differences in the wording of the claims.  For example, the term "clamped" is used in claim 1 of the '957 patent to describe the way in which the fabric is held by the upright tubes, while in claim 15, positioning posts are provided on the enclosure member and those posts are described as being "lodged" inside the upright tubes.

| Claim 1 of US 6,859,957 | Claim 15 of US RE 43,919 |
| --- | --- |
| 1. A baby crib comprising:<br><br>a bed frame structure including a plurality of upright tubes, each of which has a tube wall defining a receiving hole and having a slit that extends along the length of said tube wall and that is in spatial communication with said receiving hole;<br><br>a fabric member mounted on said bed frame structure to define a surrounding wall around said bed frame structure; and<br><br>a plurality of positioning posts mounted on said fabric member and inserted respectively into said receiving holes in said upright tubes,<br><br>said fabric member being clamped between each of said upright tubes and a corresponding one of said positioning posts and extending outward through said slit in each of said upright tubes. | 15. A baby crib comprising:<br><br>a plurality of upright tubes defining corners of the baby crib, wherein each of the upright tubes has an outer wall that defines an outer contour shape of the upright tube; and<br><br>an enclosure member including a plurality of side panels contiguously connected to one another along edge portions and surrounding an enclosed space adapted for receiving a baby therein; and<br><br>a plurality of positioning posts provided on the enclosure member at locations corresponding to the edge portions of the enclosure member, wherein the positioning posts are lodged inside the upright tubes, the side panels extending between the upright tubes substantially out of contact with the outside surfaces of outer walls of the upright tubes, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member. |

Claim 1 of the '957 patent calls for positioning posts and a slit, but in claim 20, the connection is somewhat more broadly described as "an attachment structure configured to mount and secure the edge portions of the enclosure member along the support tubes".

REDACTED

Supplemental Response Report  - Validity
Wonderland v. Kids II
February 20, 2014

| Claim 1 of US 6,859,957 | Claim 20 of US RE 43,919 |
|---|---|
| 1. A baby crib comprising: | 20. A baby crib comprising: |
| a bed frame structure including a plurality of upright tubes, each of which has a tube wall defining a receiving hole and having a slit that extends along the length of said tube wall and that is in spatial communication with said receiving hole; | a frame structure including a plurality of support tubes, wherein each of the support tubes has an outer wall that defines an outer contour shape of the upright tube; |
| a fabric member mounted on said bed frame structure to define a surrounding wall around said bed frame structure; and | an enclosure member including a plurality of side panels having edge portions; and |
| a plurality of positioning posts mounted on said fabric member and inserted respectively into said receiving holes in said upright tubes, | an attachment structure configured to mount and secure the edge portions of the enclosure member along the support tubes, |
| said fabric member being clamped between each of said upright tubes and a corresponding one of said positioning posts and extending outward through said slit in each of said upright tubes. | whereby the side panels surround an enclosed space, and each of the side panels extends generally between two of the support tubes substantially out of contact with outwardly facing surfaces of the outer walls thereof, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member. |

It is my view that a person of ordinary skill would understand that the same invention (with somewhat different wording) is being claimed in both claim 1 of '957 patent and in claims 15 and 20 of the '919 patent, and that the subject matter of claims 15 and 20 of the '919 patent is fully disclosed in and supported by the specification of the '957 patent, which is substantially the same as the specification of the '919 patent (with only minor editing proposed by the Examiner).

**B.    MR. CHEN'S TESTIMONY**

I am informed that that the determination of whether the "original patent requirement" has been met is made based on the specification and claims of the original patent, as compared to the reissued claims.  This was explained in the *Antares* case:  "[O]ur cases explained that the *Industrial Chemicals* standard is analogous to the written description requirement, which, as our en banc decision in *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) made clear, requires that the patent description 'clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed.' Id. at 1351 (citation and alterations omitted). See *Hester Indus.*, 142

REDACTED

F.3d at 1484; Amos, 953 F.2d at 618; see also *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1367 (Fed. Cir. 2009) (describing the original patent requirement as 'analogous' to the written description requirement)." *Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1362 (Fed. Cir. 2014).

I understand that the Courts have explained that: "A fairly uniform standard  for determining compliance with the "written description" requirement has been maintained throughout: 'Although [the applicant] does not have to describe exactly the subject matter claimed, . . . the description must clearly allow persons of ordinary skill in the art to recognize that [he or she] invented what is claimed.'" *Vas-Cath Inc. v. Sakharam D. Mahurkar*, 935 F.2d 1555, 1562-1563 (Fed. Cir. 1991) citing *In re Gosteli*, 872 F.2d 1008, 1012, 10 U.S.P.Q.2d (BNA) 1614, 1618 (Fed. Cir. 1989) (citations omitted).

It is my understanding that the "original patent requirement", by analogy to the written description requirement, is based entirely on a comparison of: 1) what is disclosed and claimed in the specification and claims of the original patent, and 2) what is claimed in the reissued claims.

My understanding is that the Courts do not rely upon, or even allow, inventor testimony on questions such as this, and this is explained as follows:

> A more limited range of evidence should be considered in evaluating
> validity as opposed to patentability under either portion of 35 U.S.C.
> section 112, paragraph 2, because the language of issued claims is
> generally fixed (subject to the limited possibilities of reissue and
> reexamination), the claims are no longer construed as broadly as is
> reasonably possible, and what the patentee subjectively intended his
> claims to mean is largely irrelevant to the claim's objective meaning and
> scope, see *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985-86,
> 34 U.S.P.Q.2D (BNA) 1321, 1334-35 (Fed. Cir. 1995) (en banc), aff'd, 517
> U.S. 370, 38 U.S.P.Q.2D (BNA) 1461, 134 L. Ed. 2d 577, 116 S. Ct. 1384
> (1996).

REDACTED

Supplemental Response Report  - Validity
Wonderland v. Kids II
February 20, 2014

…

We reasoned that an inventor is not competent to construe patent claims for the following reasons: Commonly the claims are drafted by the inventor's patent solicitor and they may even be drafted by the patent examiner in an examiner's amendment (subject to the approval of the inventor's solicitor). While presumably the inventor has approved any changes to the claim scope that have occurred via amendment during the prosecution process, it is not unusual for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO. Markman, 52 F.3d at 985, 34 U.S.P.Q.2D (BNA) at 1335 (citation omitted). We find this analysis equally compelling in the present context, as the determination whether a claim complies with 35 U.S.C. section 112, paragraph 2, is "drawn from the court's performance of its duty as the construer of patent claims." *Personalized Media*, 161 F.3d at 705, 48 U.S.P.Q.2D (BNA) 1888. Although we recognize that "which the applicant regards as his invention" is subjective language, see Donner, supra, ch. 9.VIII, at 933, once the patent issues, the claims and written description must be viewed objectively, from the standpoint of a person of skill in the art, see *Markman*, 52 F.3d at 986, 34 U.S.P.Q.2D (BNA) at 1335.

For the foregoing reasons, we conclude that inventor testimony, obtained in the context of litigation, should not be used to invalidate issued claims under 35 U.S.C. section 112, paragraph 2. Accordingly, we agree with Solomon that the district court erred in using her deposition testimony to invalidate the claims of the '381 patent under that provision of the statute. We have carefully considered Kimberly-Clark's remaining arguments, but find them unpersuasive.

*Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379-80 (Fed. Cir. 2000)

Thus, based on the applicable legal standard, I see no relevance to Mr. Chen's deposition testimony.

REDACTED