## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

WONDERLAND   NURSERYGOODS
CO., LTD.,

      Plaintiff,

v.

KIDS II, INC.,

      Defendant.

Civil Action No:

1:13-CV-1114-ELR

## KIDS II'S BRIEF IN OPPOSITION TO
## WONDERLAND NURSERYGOODS CO.  LTD.'S
## MOTION FOR SUMMARY JUDGMENT
## OF NO ANTICIPATION OF U.S. PATENT NO. RE43,919

# TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................1

II.  FACTUAL BACKGROUND ........................................................................3

   A.   The Asserted Claims of the '919 Patent.........................................................3

III. LEGAL STANDARDS ....................................................................................3

   A.   The Legal Standard for Summary Judgment. ................................................3

   B.   The Legal Standard for Anticipation..............................................................4

   C.   There Is No "Enhanced" Burden of Proof When A Party Is Relying on
Cited Prior Art.................................................................................................4

IV. ARGUMENT AND CITATION OF AUTHORITIES .......................................5

   A.   Wonderland Has Failed to Properly Support its Statement of Undisputed
Material Facts with Record Citations. ...........................................................5

   B.   The Evidence Demonstrates that the Hammil Patent Discloses Each
Limitation of the Asserted Claims. ...............................................................6

     i.   The vertical uprights of the Hammil Patent are "tubes." ............................6

     ii.   The side panels of the Hammil Patent are "contiguously connected."......9

     iii.   The vertical uprights of the Hammil Patent are "curved."......................11

   D.   The Bidwell Patent Anticipates Each and Every Asserted Claim of the '919
Patent.............................................................................................................14

     i.   The Bidwell Patent discloses "upright tubes" and "support tubes" ...........15

     ii.   The Bidwell Patent discloses "positioning posts." .................................18

     iii.   The Bidwell Patent discloses an "attachment structure." .......................22

iv.     The Bidwell Patent discloses tubes that are "curved." ...........................23

v.   The USPTO has found a reasonable likelihood that at least Claims 15 – 19 are invalid as anticipated by the Bidwell Patent................................................24

V.  CONCLUSION ................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952 (Fed. Cir. 2014) ...................................4

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001)..22

*Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276 (Fed. Cir. 2005) ................5

*Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281 (Fed. Cir. 2000) ....12

*Sciele Pharma, Inc. v. Lupin Ltd.*, 684 F.3d 1253 (Fed. Cir. 2012) .........................5

*Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.*, 431 F.2d 539 (5th Cir. 1970) ...22

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996)...................11

## I.     INTRODUCTION

Wonderland's Motion for Summary Judgment of No Anticipation of U.S. Patent No. RE 43,919 ("the '919 Patent") ignores the evidence of record, including the testimony of both parties' experts, and adopts conflicting positions on the scope of the Asserted Claims (defined below).  The evidence of record demonstrates that both U.S. Patent No. 6,098,217 to Hammil ("the Hammil Patent") and Australian Patent No. 715,883 to Bidwell ("the Bidwell Patent") anticipate each of the Asserted Claims of the '919 Patent.  In fact, on August 4, 2015, the United States Patent and Trademark Office ("USPTO") rejected several of the same attorney-based arguments that Wonderland makes in its Motion regarding the Bidwell Patent in an *Inter Partes* Review, stating that "[Wonderland's] arguments are not persuasive."

Wonderland's assertion that the Hammil Patent does not anticipate the Asserted Claims is nothing more than unsupported attorney argument, which is improper at the summary judgment stage.  For example, Wonderland asserts in its Opening Brief that the side panels of the Hammil Patent are not "contiguously connected to one another," as required by Asserted Claims 15, 19, and 29.  Yet, the testimony of Wonderland's own expert directly refutes this assertion.  Its expert, Mr. Jerry Drobinski, testified that the side panels of the Hammil Patent meet the

1

definition of "contiguously connected" because they are "connected" by the vertical uprights of the Hammil Patent and "held near each other."

Wonderland's assertion that the uprights of the Hammil Patent are not "upright tubes" or "support tubes" is equally short on evidence and long on attorney rhetoric. Kids II's expert, Dr. William Singhose, testified that a person of ordinary skill in the art would not only understand that the vertical uprights of the Hammil Patent are tubular members, but would also consider the grooves in the vertical uprights to be tubes. Moreover, Wonderland's expert, Mr. Drobinski, expressly testified that a person of ordinary skill in the art at the time of the invention of the Hammil Patent would understand that the types of "suitable material" for uprights is either "predominantly steel or aluminum tubing."

Wonderland's assertions regarding the Bidwell Patent are also nothing more than unsupported attorney argument. Both parties' experts are in agreement that the retaining members of the Bidwell Patent are "upright tubes" that, when in place, provide support to the fabric walls by applying pressure to the fabric side walls to maintain them under tension. Further, Wonderland's assertion that the Bidwell Patent does not disclose "positioning posts" is contradicted by the undisputed evidence of record, as the Bidwell Patent specifically states that "[t]he fabric sidewall 14 passes over the corner post 20," and Mr. Drobinksi testified that

2

the mesh side panel is secured to the corner post in the playpen disclosed in the Bidwell Patent.  Notably, Wonderland's newly-crafted assertion that the corner posts of the Bidwell Patent are not "provided on" the enclosure member is tenuous, at best, as it would require Wonderland to adopt an interpretation of the Asserted Claims that would gut its theory of infringement.

Accordingly, for the reasons set forth herein and in Kids II's Motion for Partial Summary Judgment of Invalidity of the'919 Patent (Dkt. No. 158), Wonderland's Motion should be denied, and Kids II Motion should be granted.

## II.    FACTUAL BACKGROUND

### A. The Asserted Claims of the '919 Patent.

In its Infringement Contentions, Wonderland asserted that two models of Kids II's InGenuity™ Washable Playards (Model Nos. 7066 & 60072) infringe Claims 15, 19, 20, 21, 27, 28, and 29 of the '919 Patent ("the Asserted Claims"). (SAMF, ¶ 1).  Of the Asserted Claims, Claims 15 and 20 are independent claims, and Claims 19, 21, 27, 28, and 29 are dependent claims. (SAMF, ¶ 2).

## III.   LEGAL STANDARDS

### A. The Legal Standard for Summary Judgment.

Kids II incorporates the legal standard for summary judgment set forth in its Memorandum of Law in Support of Its Motion for Partial Summary Judgment of

Invalidity of the Asserted Claims of the '919 Patent under 35 U.S.C. § 251, as if set forth fully herein. (*See* Dkt. No. 157-2,[1] pp. 14-15).

### B. The Legal Standard for Anticipation.

Kids II incorporates the legal standard for anticipation set forth in its Memorandum of Law in Support of Its Motion for Partial Summary Judgment of Invalidity of the Asserted Claims of the '919 Patent, as if set forth fully herein. (*See* Dkt. No. 158, pp. 7-8).

### C. There Is No "Enhanced" Burden of Proof When A Party Is Relying on Cited Prior Art.

Wonderland's ongoing attempt to convince the Court that there is an "enhanced burden" or "higher burden of proof" that applies to prior art references that were previously considered by the USPTO, such as the Hammil Patent, is misleading and contrary to law.  The Federal Circuit has unequivocally held that: "[w]hether a reference was previously considered by the PTO, ***the burden of proof is the same***: clear and convincing evidence of invalidity." *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 (Fed. Cir. 2014) (emphasis added).  "The burden does not suddenly change to something higher – 'extremely clear and convincing evidence' or 'crystal clear and convincing evidence' – simply because the prior art references

---

[1] Cites to this Court's docket include cites to the page numbers placed by the Court's CM/ECF system in the upper-right hand corner.

were considered by the PTO.  In short, ***there is no heightened or added burden***

***that applies*** to invalidity defenses that are based upon references that were before

the Patent Office." *Sciele Pharma, Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed.

Cir. 2012) (emphasis added). Thus, the Court should reject Wonderland's attempt

to impose an "enhanced burden" on Kids II with respect to prior art references that

were previously considered by the USPTO.

## IV.    ARGUMENT AND CITATION OF AUTHORITIES

### A. Wonderland Has Failed to Properly Support its Statement of Undisputed Material Facts with Record Citations.

Wonderland has failed to properly support its factual statements with

citations to record evidence.  Rather, almost all of its purported "Statements of

Undisputed Material Facts" are nothing more than unsupported attorney argument

characterizing the '919 Patent, the Hammil Patent, or the Bidwell Patent *without*

*any supporting record citation*.  Because Wonderland's "Statement of Undisputed

Material Facts" is in violation of Local Rule 56.1, and attorney argument is

inappropriate at the summary judgment stage, Wonderland's Motion should be

denied on this ground alone. *See Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d

1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence.").

**B. The Evidence Demonstrates that the Hammil Patent Discloses Each Limitation of the Asserted Claims.**

In its attempt to argue that the Hammil Patent does not anticipate one or more of the Asserted Claims, Wonderland asserts that the following three limitations are missing from the Hammil Patent: (1) the Hammil Patent's uprights are not "tubes" (Dkt. No. 150-2, pp. 15-16) (all Asserted Claims); (2) the Hammil Patent does not have side panels that are "contiguously connected to one another" (*Id.*, p. 17) (Claims 15, 19, and 29); and (3) the Hammil Patent does not have "curved tubes" (*Id.*, pp. 18-19) (Claims 28 and 29).  As discussed in detail below, the evidence of record clearly demonstrates that each of the above limitations is disclosed in the Hammil Patent.  Wonderland's Motion should be denied.

**i.   The vertical uprights of the Hammil Patent are "tubes."**

Wonderland first asserts that the vertical uprights (shown as element 20 in Figure 4 below) disclosed in the Hammil Patent are not "tubes," as required by all of the Asserted Claims of the '919 Patent. (Dkt. No. 150-2, pp. 15-16).  In doing so, Wonderland offers absolutely no evidentiary support for its assertion that the vertical uprights are "solid posts" rather than "tubes."  Rather, Wonderland offers only attorney argument mischaracterizing the disclosure of the Hammil Patent, which is improper at the summary judgment stage. (*See, e.g.*, Dkt. No. 150-3, ¶ 5 (stating that "[t]he Hammil patent does not disclose any Figures in which uprights

6

(20) that [sic] are hollow tubes" and citing, without additional evidentiary support, to every figure in the Hammil Patent.)) .[2]

In stark contrast, the evidence of record, including the disclosure of the Hammil Patent and the testimony of both parties' experts, demonstrates that the vertical uprights of the Hammil Patent are tubes.  For instance, in reviewing the figures and specification of the Hammil Patent, Kids II's expert, Dr. William Singhose, testified that a person of ordinary skill in the art would understand that "[e]ach of these vertical uprights 20 comprises a tubular member having an outer wall" and that "the outer walls of the vertical uprights 20 define an outer contour shape." (SAMF, ¶ 10).  Dr. Singhose further testified that one of ordinary skill in the art would also recognize that the elongate grooves (shown as element 21 in Figure 4 below) in the vertical uprights 20 are also tubes, providing yet another basis for finding that the Hammil Patent discloses the "tubes" limitation of the Asserted Claims. (SAMF, ¶ 11).  In particular, Dr. Singhose noted that the elongate

_____

[2] Wonderland also makes a confusing – and factually unsupported – argument that if the vertical uprights were tubes, the "groove would be converted into mere slits, and this would weaken the posts and render them structurally unsound." (Dkt. No. 150-2, pp. 15-16).  Beyond providing absolutely no evidentiary basis for this argument, this argument is utter nonsense.  As Wonderland is well-aware, its own '919 Patent discloses tubes with a slit that is, presumably, structurally sound. *See* Dkt. No. 150-5, '919 Patent, Abstract ("The fabric member is clamped between each upright tube and a corresponding positioning post, and extends outward through the slit in each upright tube.").

grooves 21 are "hollowed out" and function as a tube in the vertical uprights 20 of the Hammil Patent. (*Id.*).

A cursory review of Figure 4 of the Hammil Patent (reproduced below), demonstrates that the vertical uprights 20 are hollow in the



center, rather than solid, as Wonderland incorrectly asserts in its Opening Brief. (SAMF, ¶ 50).  In fact, Wonderland readily admits in its Opening Brief that the Hammil Patent teaches that the vertical uprights are made of "plastic or other suitable material," (*see* Dkt. No. 150-2, p. 15), and Wonderland's expert, Mr. Drobinski, testified that a person of ordinary skill in the art would know that the types of "suitable material" for constructing uprights at the time of the Hammil Patent were "predominantly steel or aluminum tubing." (SAMF, ¶ 51).

Tellingly, when describing the vertical uprights of the Hammil Patent in its briefing, even Wonderland *twice* refers to the uprights as tubes. (SAMF, ¶ 9 ("In order to maintain the modularity and interchangeability discussed in the specification, all the **tubes** in Hammil are shown as being straight." & "In order to maintain the modularity and interchangeability discussed in the specification, all

8

the **tubes** in Hammil are shown as being straight, as they must be.") (emphasis added)).  This only further demonstrates the contrived nature of Wonderland's unsupported argument, as even Wonderland cannot avoid acknowledging that the natural reading of the vertical uprights of the Hammil Patent as tubes.

Because the evidence of record clearly demonstrates that both the vertical uprights and the elongate grooves of the Hammil Patent meet the "tubes" limitation of the Asserted Claims, Wonderland's Motion should be denied.

> ### ii.  The side panels of the Hammil Patent are "contiguously connected."

Wonderland next asserts that the side panels of the Hammil Patent are not "contiguously connected to one another," as required by Claims 15, 19, and 29 of the '919 Patent. (Dkt. No. 150-2, p. 17).  Wonderland's strained assertion is not only lacking in evidentiary support, but also, quite surprisingly, directly conflicts with the deposition testimony of its own expert.

Wonderland's expert, Mr. Drobinski, testified that, to be "contiguously connected," the side panels of Claim 15 of the '919 Patent have to be "connected" and "near each other." (SAMF, ¶ 52) (Q: So it's possible that there could be another structure between them and they could still be connected, as long as they're, for example, near each other? A. That's correct.").  When asked whether the side panels of the Hammil Patent met these two requirements, Mr. Drobinski

9

affirmatively testified that they did, stating as follows:

> Q: Would you agree that the side panels when they're connected to
> the upright, 20, are held near each other?
> A: Sure.
> Q: And would agree that the upright connects the side panels – two or
> more of the side panels?
> A: Yes.

(SAMF, ¶ 53; *see also* SAMF, ¶ 15).

Kids II's expert, Dr. Singhose, likewise testified that the side panels

disclosed in the Hammil Patent meet the "contiguously connected" limitation of

Claim 15. (SAMF, ¶ 14).  Specifically, Dr. Singhose states in his expert report that,

in reference to an annotated version of Figure 1of the Hammil Patent (reproduced

to the right), "[e]ach of the side panels

30 is contiguously connected to

another side panel 30 along an edge

that runs in the vertical direction. . . . .

In this close-up view, the contiguous

edge connection between two side

panels 30 is shaded in red." (SAMF,



¶ 14).[3]  Notably, when assembled, it is quite obvious from Figure 1 above, as well

---

[3] Dr. Singhose further states in his expert report that the contiguous connection
between the side panels of the Hammil Patent is also shown in Figure 4

as Figure 4 above, that the side panels 30 of the Hammil Patent meet the

"contiguously connected" limitation, as the only space between the side panels is

filled by the uprights 20 and the attachment provides a contiguous edge connection

among the side panels. (SAMF, ¶ 14).  Thus, because the Hammil Patent discloses

side panels that are "contiguously connected," Wonderland attempt to argue that

this limitation is not met by the Hammil Patent must be rejected by the Court.

### iii. The vertical uprights of the Hammil Patent are "curved."

Lastly, Wonderland asserts that the Hammil Patent does not disclose upright

tubes that are "curved," as required by dependent Claims 28 and 29.  Wonderland's

assertion, once again, is unsupported by the evidence of record.

The plain language of Claims 28 and 29 simply requires tubes that are

"curved." (Ex. 2, 6:36-37 (Claim 28) ("wherein the upright tubes are curved");

6:38-39 (Claim 29) ("wherein the upright tubes are curved").  Yet, true to form,

Wonderland attempts to read an additional limitation into these two claims in a

transparent effort to avoid invalidating prior art, which is improper under well-

settled Federal Circuit law. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d

1576, 1582 (Fed. Cir. 1996) ("we look to the words of the claims themselves . . . to

---

(reproduced above) because the "attachment mechanism formed by the grooves 21
and uprights 20 provide a contiguous edge connection among the side panels 30."
(SAMF, ¶ 14).

define the scope of the patented invention"); *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1290 (Fed. Cir. 2000) ("This court has repeatedly and clearly held that it will not read unstated limitations into claim language.").  In particular, to accept Wonderland's argument in its Opening Brief, the Court must read into the express language of these two claims an additional, unstated limitation that the word "curved" is specifically directed to the upright tubes being "curved along their lengths." (*See* Dkt. No. 150-2, p. 19).  Because there is no support for this unstated limitation in the claim language, Wonderland's reinterpretation of the claims should be rejected by the Court.

Moreover, while Kids II agrees that claim terms must also be read in light of the specification, the portion of the specification cited by Wonderland does not support Wonderland's narrow interpretation of these claims.  Specifically, the language of the specification cited by Wonderland states that: "to enhance the appearance of the baby crib of the present invention, each upright tube 11 is preferably **curved,** as best shown in FIG. 3." (Ex. 2, 2:24-26) (emphasis added). Notably, there is no reference to tubes "curved along their length" in this language.  Thus, it is just as likely that this language is referencing tubes that are curved in cross-section (*i.e.*, excluding tubes with a square cross-section) as it is that it is referencing tubes that are curved along their length.  Moreover, the reference to

Figure 3 of the '919 Patent provides no additional clarity, as Figure 3 (reproduced to the right) shows tubes that are curved in both cross-section and along their length. (SAMF, ¶ 54).



F I G. 3

Thus, the reference to the specification cited in Wonderland's Opening Brief provides no additional support for reading the unstated limitation that the term "curved," as used in Claims 28 and 29, is limited to tubes "curved along their length." [4]

With this in mind, the Hammil Patent clearly discloses upright tubes that are curved. As shown in Figures 1 and 4 (reproduced above), the vertical uprights 20 of the Hammil Patent are clearly curved in cross-section. Kids II's expert, Dr. Singhose, specifically states in his report that the curved cross-section of the upright tubes 20 meets the "wherein the tubes are curved" limitation of the '919 Patent when giving this limitation its plain and ordinary meaning. (SAMF, ¶ 13). Thus, because the Hammil Patent expressly discloses this limitation, Wonderland's Motion must be denied.

---

[4] In this section of the brief, Wonderland makes another nonsensical—and factually unsupported—argument that the phrase "straight as an arrow" somehow definitively demonstrates that the Hammil Patent cannot teach the "curved tube" limitation. However, idioms have no bearing on the issue of anticipation.

As discussed in detail above, Wonderland has offered little more than unsupported attorney argument that not only mischaracterizes the disclosure of the Hammil Patent, but also the Asserted Claims of the '919 Patent.  In contrast, Kids II has cited salient testimony from both its expert, as well as Wonderland's expert, that demonstrates that the Hammil Patent meets each of the limitations of the Asserted Claims.  Wonderland's Motion, as it relates to the Hammil Patent, should be denied by the Court.

### D. The Bidwell Patent Anticipates Each and Every Asserted Claim of the '919 Patent.

As discussed in more detail in Kids II's Motion for Partial Summary Judgment of Invalidity of the Asserted Claims of the '919 Patent, the Bidwell Patent discloses each and every limitation of the Asserted Claims. (*See* Dkt. No. 158).  Specifically, while Wonderland relies solely on unsupported attorney argument, the undisputed evidence of record, including testimony from both parties' experts, demonstrates that each of the limitations of the Asserted Claims are clearly met by the Bidwell Patent despite Wonderland's attorney-based argument.  In fact, the USPTO recently found in an *Inter Partes* Review that many of the same attorney-based arguments regarding the Bidwell Patent that Wonderland has advanced in its Opening Brief were "not persuasive." Accordingly, Wonderland's Motion should be denied, and Kids II's Motion for

14

Summary Judgment should be granted by the Court.

> **i.    The Bidwell Patent discloses "upright tubes" and "support tubes"**

Wonderland's assertion that the Bidwell Patent does not disclose "upright tubes" and "support tubes" is baseless.  The undisputed evidence of record clearly demonstrates that the Bidwell Patent discloses both the "upright tubes" and "support tubes" limitations of Claims 15 and 20, respectively.

The Bidwell Patent specifically discloses tubes with outer walls that define an outer contour shape of the upright tubes. (SAMF, ¶¶ 16, 21, 25, 27, 28, 30).  For example, the Abstract of the Bidwell Patent discloses a "retaining member [22] comprising an elongate, substantially cylindrical ***tube*** having a ***tube wall*** [24] and a substantially cylindrical hollow interior [26]" at the corner of the crib. (SAMF, ¶ 16) (emphasis added); *see also* (SAMF, ¶ 25 ("a retaining member 22 which is a generally cylindrical tube. The retaining member 22 has a tube wall 24 and a substantially cylindrical hollow interior 26.").  Indeed, even Wonderland's expert, Mr. Drobinski, has conceded that the retaining members 22 of the Bidwell Patent are tubes. (SAMF, ¶ 33).

In addition, there is no dispute that the tubular retaining members are described in an "upright" configuration, as the written description of the Bidwell Patent states that "[t]he retaining member 22 extends for the full height of the

corner post 20 from the foot 18 to the corner member 16." (SAMF, ¶ 31).  Further,

the upright, tubular retaining members 22 of the Bidwell Patent are clearly shown

at the outer corner of the crib in Figure 1 of the Bidwell Patent (reproduced below),

and thus "define" the corners of the crib.  (SAMF, ¶¶ 17, 39).

| Bidwell Patent | '919 Patent – Claim 15 |
|---|---|
| "the retaining member comprising an *elongate, substantially cylindrical tube* having a *tube wall*"<br>"Adapted to pass over the corner post 20 is a retaining member 22 which is a generally cylindrical *tube*." | "a plurality of upright tubes defining corners of the baby crib, wherein each of the *upright tubes* has an *outer wall* that defines an outer contour shape of the upright tube" |



| | |
|---|---|
| Figure 1 of the Bidwell Patent. | Figure 4 of the '919 Patent. |

Moreover, there can be no dispute that the Bidwell Patent repeatedly

describes the tubular retaining members 22 as part of the frame structure of the

playard that provides support to the fabric sidewalls and the corner posts of the

16

crib.  Specifically, the Bidwell Patent expressly states that the tubular retaining members are "adapted to be placed over and to at least partially surround the corner post and the fabric sidewall . . . so as to apply pressure to the fabric sidewall to maintain it under tension." (SAMF, ¶ 21).  The Bidwell Patent further states that the tubular retaining member "engages over the corner post 20 . . . similar to a snap fit" which "causes the edges of the tube wall 24 to apply pressure to the fabric sidewall 14 immediately adjacent to the corner post 20."  (SAMF, ¶ 28).  This pressure "forces the fabric sidewall 14 around the corner post 20 and thus holds it tightly in relation to the corner post 20."  (SAMF, ¶ 29).  In sum, "by action of the tube wall 24 on either side of the slot 28 on the fabric sidewall 14 the fabric sidewall 14 is held under tension to thus assist in retaining a tight fitting sidewall for the cot."  (SAMF, ¶ 30).  In fact, Wonderland's expert has conceded that holding something tightly and maintaining it under tension provides support. (SAMF, ¶¶ 34 ("you can provide support by holding something tightly.") & 35 ("Q.  If you maintain something under tension, are you providing support? A. Could be, yes.")).  Moreover, Kids II's expert agrees that the Bidwell Patent discloses support tubes. (SAMF, ¶ 40).

Accordingly, there is no genuine dispute that the Bidwell Patent discloses the "upright tubes" and "support tubes" limitations of Claims 15 and 20,

respectively.  Wonderland's motion should therefore be denied, and Kids II's Motion for Summary Judgment of invalidity should be granted.

### ii.  The Bidwell Patent discloses "positioning posts."

Wonderland next argues that the Bidwell Patent does not have positioning posts "provided on" an enclosure member or "lodged inside the upright tubes." (Dkt. No. 150-2 at 16-17).  Once again, the undisputed evidence demonstrates that the Bidwell Patent discloses both of these limitations.

First, the Bidwell Patent plainly discloses "positioning posts," identified as corner post 20, "provided on" an enclosure member, identified as the fabric sidewall 14.  Specifically, the Bidwell Patent state that: "Extending between the corner fitting 16 and foot 18 and securely attached to each of them is a corner post 20.  The fabric sidewall 14 passes over the corner post 20." (SAMF, ¶ 24; *see also* SAMF, ¶ 16 ("the cot having a substantially vertical extending corner post (20) over which a fabric sidewall (14) extends")).   Indeed, when reviewing this language, Kids II's expert, Dr. Singhose, also found that the Bidwell Patent discloses positioning posts provided on an enclosure member. (SAMF, ¶ 41).  The corner post 20 and the fabric sidewall 14 passing over the corner posts is shown and highlighted below in Figure 2 of the Bidwell Patent (SAMF, ¶ 18):

| The Bidwell Patent | '919 Patent – Claim 15 |
|---|---|
| "Extending between the corner fitting 16 and foot 18 and securely attached to each of them is a ***corner post 20***. The fabric sidewall 14 passes over the corner post 20. . . . The corner post 20 is generally somewhat cylindrical and is normally hollow." <br><br> "[the retaining member] then engages over the corner post as is clear in Fig. 2. This is similar to a snap fit." <br><br>  <br> Figure 2 of the Bidwell Patent. | "a plurality of ***positioning posts*** provided on the enclosure member at locations corresponding to the edge portions of the enclosure member, wherein the positioning posts are lodged inside the upright tubes, the side panels extending between the upright tubes substantially out of contact with the outside surfaces of outer walls of the upright tubes, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member." <br><br>  <br> Figure 5 of the '919 Patent. |

Second, the Bidwell Patent discloses positioning posts (corner post 20) "lodged inside" the upright tubes (retaining member 22).  The Bidwell Patent describes how the retaining member "***engages over*** the corner post 20 as is clear from Figure 2. This is similar to a snap fit." (SAMF, ¶ 28) (emphasis added).  Moreover, the retaining member is described as being "adapted to be placed over

19

and to at least partially surround the corner post and the fabric sidewall thereover so as to apply pressure to the fabric sidewall to maintain it under tension." (SAMF, ¶ 21; *see also* SAMF, ¶ 28 (describing "the edges of the tube wall 24 [of the retaining member as applying] pressure to the fabric sidewall 14 immediately adjacent to the corner post 20"); ¶ 29 ("the retaining member 22 forces the fabric sidewall 14 around the corner post 20 and thus holds it tightly in relation to the corner post 20.")).  Thus, as shown above in Figure 2 of the Bidwell Patent, both the fabric sidewall 14 and the corner posts 20 of the Bidwell Patent are mechanically retained in the "substantially cylindrical hollow interior" of the retaining member. (SAMF, ¶ 25).

Moreover, when reviewing the Bidwell Patent, Kids II's expert, Dr. Singhose, confirmed that the corner posts 20 are "lodged inside" the retaining member 22. (SAMF, ¶ 42).  Further, the structural relationship between the corner posts 20 and the retaining member 22 also meets Wonderland's expert's definition of "lodged inside," as Mr. Drobinski asserts that "lodged" only requires that the positioning posts be "fixed in a specified place" (SAMF, ¶ 36), and he further asserts that "inside" only requires 1% of the positioning post to be inside the upright tube. (SAMF, ¶ 37-38).  As such, there is no genuine factual dispute that the corner posts of the Bidwell Patent as assembled are "lodged inside" the upright,

20

tubular retaining members.

Ignoring the undisputed evidence of record, Wonderland relies solely on attorney argument to assert that, because the corner posts 20 of the Hammil Patent are part of the frame, the corner posts are not "provided on" the enclosure member. (Dkt. No. 150-2, p. 22).  Specifically, Wonderland asserts that, to practice the '919 Patent, the positioning posts must be "provided on the enclosure member like the position posts of the '919 Patent", *i.e.*, "mounted on the enclosure member." (Dkt. No. 150-2 at 17 (citing Dkt. No. 150-5, 2:39-41: "In [the preferred] embodiment, there are four positioning posts 22 mounted on the fabric member 2, and each of the positioning posts 22 is formed as a flexible tube.")).  Ironically, Wonderland's attempt to reinterpret the claim language in this manner to avoid the Bidwell Patent would completely gut Wonderland's theory of infringement.  Indeed, the Accused Products also have retaining tubes that are a rigid part of the frame, and would not meet Wonderland's narrow interpretation of this limitation.  (SAMF, ¶ 45).

Accordingly, if Wonderland's newly-crafted interpretation of this limitation is correct (which it is not), then Kids II respectfully submits that this is yet another basis for the Court to grant summary judgment of noninfringement of Claim 15 in favor of Kids II under Fed. R. Civ. P. 56(f).  It is well-settled that Wonderland cannot advance a narrow interpretation of a claim for the purposes of invalidity,

while at the same time advancing a broad interpretation of the same claim for the purposes of infringement.  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("Because the claims of a patent measure the invention at issue, the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses.  A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement.").  Only one can be true: either the Bidwell Patent discloses the "provided on" and "lodged inside" limitations, or the Accused Products do not infringe the '919 patent.

### iii. The Bidwell Patent discloses an "attachment structure."

Wonderland next asserts that the Bidwell Patent does not teach the "attachment structure" limitation of Claim 20 of the '919 Patent.  The Court has defined "attachment structure" to mean a "device that connects fabric to the support tubes." (SAMF, ¶ 5). The Bidwell Patent expressly discloses this limitation.  Specifically, the Bidwell Patent states that: "Extending between the corner fitting 16 and foot 18 and securely attached to each of them is a corner post 20.  The fabric sidewall 14 passes over the corner post 20." (SAMF, ¶ 24).  The Bidwell Patent also discloses "the cot having a substantially vertically extending corner post (20) over which a fabric sidewall (14) extends . . . the retaining

22

member (22) being adapted to be placed over and to at least partially surround the corner post (20) and the fabric sidewall (14) thereover." (SAMF, ¶ 16).  The Bidwell Patent further states that the tubular retaining member "***engages over*** the corner post 20 . … similar to a snap fit." (SAMF, ¶ 28) (emphasis added).

In this context, as assembled, the corner post 20 forms an attachment structure that mounts and secures the edge portion of the fabric sidewall along the tubular retaining members, thereby expressly satisfying this limitation of Claim 20. (SAMF, ¶ 43; *see also* SAMF, ¶¶ 28 (describing "the edges of the tube wall 24 [of the retaining member as applying] pressure to the fabric sidewall 14 immediately adjacent to the corner post 20"), 29 ("the retaining member 22 forces the fabric sidewall 14 around the corner post 20 and thus holds it tightly in relation to the corner post 20.")).  Thus, because there is no genuine disputed issue of fact as to whether the Bidwell Patent discloses this limitation, Kids II's Motion for Summary judgment should be granted by the Court.

### iv. The Bidwell Patent discloses tubes that are "curved."

Contrary to Wonderland's assertion, there can be no genuine issue of fact that the upright tubular retaining members of the Bidwell Patent are "curved."  The patent twice describes:

> the retaining member comprising an elongate, substantially
> cylindrical tube having a tube wall and a substantially

23

> cylindrical hollow interior of a ***radius of curvature*** no greater
> than the radius of curvature of the corner post …

(SAMF, ¶ 16, 21) (emphasis added).  In addition, Kids II's expert found that the Bidwell Patent discloses tubes that are curved about both a horizontal and vertical axis. (SAMF, ¶ 44).  Thus, the Bidwell Patent expressly satisfies the "curved" limitations found in Claims 28 and 29 of the '919 Patent.

Wonderland's only argument that this limitation is not met is that "Bidwell fails to disclose tubes that are ***curved along their length***." (Dkt. No. 150-2, p. 23) (emphasis added).  However, as discussed in Section IV.B.iii, *supra*, Wonderland's reading of the claims is unsupported by the record or the specification.  Moreover, even if Wonderland's reading of the claims was correct (which it is not), Wonderland's assertion is factually inaccurate, as the Bidwell Patent does disclose tubes that are curved along both a horizontal and vertical axis. (SAMF, ¶ 44).

### v.  The USPTO has found a reasonable likelihood that at least Claims 15 – 19 are invalid as anticipated by the Bidwell Patent.

On August 4, 2015, the USPTO instituted an *Inter Partes* Review of Claims 15-19 of the '919 Patent,[5] in part, as anticipated by the Bidwell Patent. (SAMF, ¶ 55, 49).  In doing so, the USPTO rejected several of the very same attorney-based arguments that Wonderland makes in its Motion regarding the Bidwell

---

[5] At present, the Petitioner Baby Trend Inc., has not specifically challenged other claims 20, 28, or 29 of the '919 Patent as anticipated by the Bidwell Patent.

Patent, stating that: "[Wonderland's arguments] are not persuasive because they are not commensurate with the scope of the claims." (SAMF, ¶ 47).

For example, in its preliminary response to the petition for *Inter Partes Review*, Wonderland argued that: (i) the retaining members 22 of the Bidwell Patent are not upright tubes because they are flexible, non-structural components that fit over corner posts 20 that are secured to a rigid frame; (ii) the corner posts 20 of the Bidwell Patent correspond to the claimed upright tubes and are not positioning posts. (SAMF, ¶ 46).  In response, the USPTO found that the "[c]orner posts 20 are provided on fabric sidewalls at edge portions as claimed." (SAMF, ¶ 48).  The USPTO concluded by stating that the "Petitioner has demonstrated a reasonable likelihood of prevailing with respect to its challenge of claims 15-19 as being anticipated by Bidwell." (SAMF, ¶ 49).  Thus, this lends additional credence to the argument that there is no genuine factual dispute that the Asserted Claims of the '919 Patent are anticipated by the Bidwell Patent.

V.   **CONCLUSION**

For the reasons set forth herein and in Kids II's Motion for Partial Summary Judgment of Invalidity of the '919 Patent (Dkt. No. 158), Wonderland's Motion should be denied, and Kids II Motion that the Asserted Claims are invalid as anticipated by the Bidwell Patent should be granted.

Respectfully submitted this 17th day of August, 2015.

/s/ Scott P. Amy

N. Andrew Crain
Georgia Bar No. 193081
Dan R. Gresham
Georgia Bar No. 310280
Eric Maurer
Georgia Bar No. 478199
Scott P. Amy
Georgia Bar No. 141416
Jason Perilla
Georgia Bar No. 676557
THOMAS | HORSTEMEYER LLP
400 Interstate North Parkway SE
Suite 1500
Atlanta, Georgia 30339
Phone: (770) 933-9500
Fax: (770) 951-0933
andrew.crain@thomashorstemeyer.com
eric.maurer@thomashorstemeyer.com
scott.amy@thomashorstemeyer.com
jason.perilla@thomashorstemeyer.com

Joseph W. Staley
Georgia Bar No. 142571
KIDS II, INC.
3333 Piedmont Road NE #1800
Atlanta, GA 30305
Phone: (770) 751-0442
Fax: (770) 751-0543
joe.staley@kidsii.com

*Attorneys for Defendant Kids II, Inc.*

26

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

WONDERLAND
NURSERYGOODS CO., LTD.

     Plaintiff,

v.

KIDS II, INC.

     Defendant.

CIVIL ACTION NO:

1:13-CV-1114-ELR

## LOCAL RULE 7.1D CERTIFICATION

The undersigned hereby certifies that the foregoing DEFENDANT KIDS II'S BRIEF IN OPPOSITION TO WONDERLAND NURSERYGOODS CO. LTD.'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION OF U.S. PATENT NO. RE43,919 was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

Dated this 17th day of August, 2015.

/s/ Scott P. Amy
Scott P. Amy

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

WONDERLAND
NURSERYGOODS CO., LTD.

     Plaintiff,

v.

KIDS II, INC.

     Defendant.

CIVIL ACTION NO:

1:13-CV-1114-ELR

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this day electronically filed the foregoing DEFENDANT KIDS II'S BRIEF IN OPPOSITION TO WONDERLAND NURSERYGOODS CO. LTD.'S MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION OF U.S. PATENT NO. RE43,919 with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Dated this 17th day of August, 2015.

                            */s/* Scott P. Amy
                            Scott P. Amy