Exhibit 7

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY
Singhose, William                                      March 31, 2015

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WONDERLAND NURSERYGOODS    )
CO. LTD.,                  )
                           )
        Plaintiff,         )
                           ) Case: 13-cv-01114-TWT
    vs.                    )
                           )
KIDS II, INC.,             )
                           )
        Defendant.         )


*HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY*


VIDEOTAPED DEPOSITION OF

WILLIAM SINGHOSE

(Volume I)

(Taken by Plaintiff)

March 31, 2015

9:16 a.m.




Suite 1500
400 Interstate North Parkway, S.E.
Atlanta, Georgia


Reported by:  F. Renee Finkley, RPR, RMR, CRR, CLR,
CCR-B-2289

Henderson Legal Services, Inc.
202-220-4158                            www.hendersonlegalservices.com

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY
Singhose, William                                          March 31, 2015

```
                                                              2

1                    APPEARANCES OF COUNSEL

2

3    On behalf of the Plaintiff:

4         DAVID I. ROCHE, Esq.
          Baker & McKenzie
5         300 East Randolph Street
          Suite 5000
6         Chicago, Illinois  60601
          (312) 861-8005
7         david.roche@bakermckenzie.com

8              and

9         ROGER D. TAYLOR, Esq.
          Finnegan, Henderson, Farabow,
10           Garrett & Dunner, LLP
          3500 SunTrust Plaza
11        303 Peachtree Street, N.E.
          Atlanta, Georgia  30308-3263
12        (404) 653-6400
          roger.taylor@finnegan.com
13

14   On behalf of the Defendant and
     The witness William Singhose:
15
          SCOTT P. AMY, Esq.
16        Thomas Horstemeyer
          400 Interstate North Parkway, S.E.
17        Suite 1500
          Atlanta, Georgia  30339
18        (770) 933-9500
          scott.amy@thomashorstemeyer.com
19

20   Also Present:

21        JOSH COLEMAN, Videographer

22        JOSEPH STALEY, Esq.
          Kids II, Inc.
23

24

25
```

3

1                          CONTENTS

2    THE WITNESS:   WILLIAM SINGHOSE

3    EXAMINATION                                      Page

4        By Mr. Roche                                    4

5

6                     INDEX OF EXHIBITS

7    Singhose
     Exhibit         Description                      Page
8
     Exhibit D       Copy of page 215 of
9                    Mr. Singhose's Report              155

4

1    THE VIDEOGRAPHER:  My name is Josh
2    Coleman.  I am the video specialist for
3    Henderson Legal Services.  Today's date is March
4    31st, 2015.  The time is approximately 9:16 a.m.
5    This begins Videotape Number 1 in the deposition
6    of William Singhose.
7        You may now swear in the witness.
8                WILLIAM SINGHOSE,
9    having been first duly sworn, was examined and
10   testified as follows:
11                    EXAMINATION
12   BY MR. ROCHE:
13       Q.   Good morning.
14       **A.   Good morning.**
15       Q.   Would you state your name, please?
16       **A.   William Singhose.**
17       Q.   We've met, but my name is David Roche and
18   I represent Wonderland, and I'm here to take your
19   deposition, as you know.
20           One of the ground rules that I'd like to
21   establish and would ask you to agree to is that if
22   you answer a question without asking me to clarify
23   it, I'll assume that you understood the question as
24   asked; is that fair?
25       **A.   Yes.**

5

```
 1      Q.   And feel free at any time to ask me to
 2  clarify anything so that we're on the same page,
 3  okay?
 4      A.   Okay.
 5      Q.   Have you ever been deposed before?
 6      A.   Yes.
 7      Q.   How many times?
 8      A.   Approximately seven or eight times.
 9      Q.   Have you ever been deposed in a patent
10  case before?
11      A.   Yes.
12      Q.   When was that -- or how many times,
13  rather?
14      A.   I think I've been deposed in two patent
15  cases.
16      Q.   Approximately when was the last time you
17  were deposed?
18      A.   The last time was approximately one year
19  ago.
20      Q.   And what was the nature of that case?
21      A.   The nature of that case was patents
22  involving the control of a counterweight on a crane.
23      Q.   And the other time that you were deposed
24  in a patent case was what?
25      A.   The other time was the early to mid-2000s,
```

133

1  upper corner component be two snap-together

2  components as it is in Huang?

3  **A.    Yes.  A portion of the second corner**

4  **component would have those two sleeves.**

5     Q.    Would it be two components that snap

6  together; that's the question?

7  **A.    I mean, it certainly could be.  I think**

8  **one of ordinary skill in the art, if they bring that**

9  **over, they have the choice to more permanently attach**

10 **it if they want; that's not a significant change.**

11    Q.    If the court were to rule that the term

12 corner component, as it was construed, requires a

13 single piece, as Mr. Drobinski has opined and as I

14 think you heard, then it would have to be a single

15 corner piece, right, and so a -- two pieces snapped

16 together wouldn't meet the claim?

17           MR. AMY:  Object to form.

18    Q.    (By Mr. Roche)  Is that right?

19           MR. AMY:  To the extent it

20      mischaracterizes Drobinski's testimony.

21           THE WITNESS:  I have reviewed

22      Mr. Drobinski's testimony in his reports and

23      then I was there for his deposition, and I felt

24      that I really understood his position when I

25      read his reports, but after the deposition, as I

1      sit here today, not having reviewed and studied
2      the deposition transcript, I'm kind of at a loss
3      about what his position on that is.
4           Q.   (By Mr. Roche)  Take a look at a section
5  of your report that discusses the Hammil patent,
6  H-A-M-M-I-L, that begins on page 192.
7           Now, as I understand your opinion,
8  Dr. Singhose, you believe that the corner posts of
9  Hammil are tubes; is that right?
10          **A.   Yes.  The claim requires that the uprights**
11 **be tubes.**
12          Q.   And I realize that's what the claim
13 requires, but my question is, what about Hammil leads
14 you to believe that the uprights there are tubes?
15          **A.   Can I -- I'd like to examine a full copy**
16 **of the patent.**
17          Q.   I think I may be able to accommodate you
18 on that.  Take a look at what we've marked as
19 Singhose 36.  Do you have the question in mind or --
20          **A.   Yes, I have the question in mind.  What**
21 **leads me to believe those corner -- what did you call**
22 **them, corner columns?  How did you refer to those?**
23          Q.   Whatever they are, they're reference
24 numeral 20.
25          **A.   Okay.  What leads me to believe that 20**

1  are tubes is the detailed description of the
2  invention combined with Figure 2 and Figure 4.
3      Q.   What about Figure 2 suggests the tubular
4  structure for item 20?
5      A.   Like I said, it's the combination of all
6  that stuff, so in the detail description of the
7  invention, it says, each upright 20; so they're
8  calling it an upright.
9      Q.   Where are you reading?
10     A.   I'm sorry.  Column 3, line, looks like,
11 49.  And what it says there is, each upright 20 is a
12 round post comprised of plastic rather suitable
13 material approximately two feet high.  Each upright
14 20 has a slot or groove running along its length.
15          So that description kind of stands on its
16 own, but when combined with Figures 2 and 4 tells me
17 that that is a tube.
18     Q.   Is there anything else?
19     A.   Certainly there's other pictures of those
20 upright tubes in Figure 6, which is kind of just
21 redundant with the information, also Figure 3, all
22 those figures that show the tubular nature of those
23 uprights.
24     Q.   What's the tubular nature?  What makes
25 something a tube versus a post?

136

1    A.    Well, we talked about this before where
2    posts would generally be considered something
3    upright, and a tube doesn't have that connotation, so
4    that's one of the differences.  A tube is generally
5    considered to be a long member, that is, it's long --
6    longer in one direction than it is in the height
7    direction, and it needs to be hollow to some degree.
8         Q.    And what leads you to believe that the
9    item 20 is hollow?
10        A.    All those figures and the description.
11        Q.    None of them show the inside of it, do
12   they?
13        A.    Well, for example, if we look at Figure 2,
14   we can see there's four notches that are hollowed
15   out.
16        Q.    I see.  So it's the grooves that make it a
17   tube?
18        A.    Yeah, those hollow -- those hollow
19   volumes.
20        Q.    So the grooves cut into what would
21   otherwise be a solid structure are what make it a
22   tube?
23              MR. AMY:  Object to form to the extent
24       you're mischaracterizing.
25              THE WITNESS:  I don't know that those

137

1    uprights are solid.  That's not spelled out
2    here.  What's clearly spelled out is they do
3    have regions of being hollow.
4         Q.    (By Mr. Roche)  Are you serious?
5         **A.    Yes.**
6         Q.    That that's what makes it a tube, the
7    grooves in the side?
8         **A.    At least those grooves.  There could be**
9    **more.  There could be a larger hollow region right**
10   **down the middle that's not specified, but I can**
11   **clearly see that it's been hollowed out.  That's what**
12   **that's called; you hollow something out.**
13        Q.    Okay.  Is the part of the sidewall in
14   Hammil that fits into the groove 21, grooves, plural,
15   21, as depicted in Figure 3 as element 30, do you
16   believe that that's a fabric?
17        **A.    I believe it can be a fabric, yes.**
18        Q.    And still stay in the groove?
19        **A.    Oh, it cannot -- it cannot just be a**
20   **fabric.  It needs a positioning post along the edge**
21   **of it.**
22        Q.    Can the positioning post be made of
23   fabric?
24        **A.    Well, positioning post has to be secured**
25   **or lodged in there, so it has to be able to withstand**

138

1    mechanical forces that would pull it out of orbital
2    operation.  So if you chose to make it all out of
3    fabric, you would have to probably fold the end of
4    that fabric over many times and stitch it up or even
5    melt it, but definitely has to be a -- it has to be
6    able to stop that fabric from being pulled out
7    because it's stuck in there.
8         Q.    What does the word contiguously mean?
9         A.    Contiguously or contiguously connected?
10        Q.    Let's just start with contiguous.
11        A.    Contiguous means that -- describes the
12   sort of a relationship between two objects where they
13   are actually touching along the edge or very close to
14   each other along the edge.
15        Q.    What does contiguously connected mean?
16        A.    Contiguously connected would mean that
17   there would be two, two things, like I'm showing with
18   my hands.  They are contiguous and then they are
19   connected.
20        Q.    Take a look at paragraph 369 of your
21   Singhose 1 report on page 199.  And, actually, if you
22   could look at 368, the paragraph before -- well,
23   actually, I'm sorry.
24              The section of the Hammil patent that you
25   reference in paragraph 367 at the end, that section

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY
Singhose, William                                     March 31, 2015

192

1      A.    I think that's close to what I said, yes.
2      Q.    And all of that information was fully
3  available to you when you first got involved in this
4  case, was it not?
5      A.    Yeah.  I think all you're suggesting is
6  that all I needed was the patent as currently as the
7  reissue and the original -- I forget the number of
8  the original one.  And you're saying, if I just had
9  those two things, I could have done this analysis?
10     Q.    I guess that's -- that seems to me to be
11 the case, but I wanted you to tell me if that's not.
12     A.    Okay.  I think I would need those things,
13 plus I would need a legal understanding of how to do
14 that analysis, which I didn't have at the beginning
15 of this case.
16          MR. ROCHE:  Why don't we call it a day and
17     we'll pick this up at 9:00 tomorrow.
18          MR. AMY:  Sounds good.
19          THE VIDEOGRAPHER:  We are now going off
20     the video record.  The time is currently 5:27
21     p.m.  This is the end of Tape Number 5.
22          (Deposition adjourned at 5:27 p.m.)
23
24
25

193

1                     D I S C L O S U R E

2

3

    STATE OF GEORGIA     )      DEPOSITION OF
4
    CLAYTON COUNTY       )      WILLIAM SINGHOSE
5

6

         Pursuant to Article 10.B of the Rules and
7   Regulations of the Board of Court Reporting of the
    Judicial Council of Georgia, I make the following
8   disclosure:

9        I am a Georgia Certified Court Reporter.  I am
    here as a representative of Henderson Legal Services,
10  Inc.

11       Henderson Legal Services, Inc. was contacted by
    the offices of Finnegan, Henderson to provide court
12  reporting services for this deposition.  Henderson
    Legal Services, Inc. will not be taking this
13  deposition under any contract that is prohibited by
    O.C.G.A. 9-11-28 (c).
14
         Henderson Legal Services, Inc. has no contract
15  or agreement to provide court reporting services with
    any party to the case, or any reporter or reporting
16  agency from whom a referral might have been made to
    cover the deposition.
17
         Henderson Legal Services, Inc. will charge its
18  usual and customary rates to all parties in the case,
    and a financial discount will not be given to any
19  party in this litigation.

20

21

22

23              F. Renee Finkley, RPR, RMR, CRR, CLR
                Georgia CCR-B-2289
24

25

194

```
 1                  C E R T I F I C A T E

 2     STATE OF GEORGIA:
       COUNTY OF CLAYTON:
 3

 4            I, F. Renee Finkley, a Certified Court
       Reporter in and for the State of Georgia, do hereby
 5     Certify:

 6            That prior to being examined, the witness
       named in the foregoing deposition was by me duly
 7     sworn to testify to the truth, the whole truth, and
       nothing but the truth.
 8            That said deposition was taken before me
       at the time and place set forth and was taken down by
 9     me in shorthand and thereafter reduced to
       computerized transcription under my direction and
10     supervision, and I hereby certify the foregoing
       deposition is a full, true and correct transcript of
11     my shorthand notes so taken.
              I further certify that I am not of kin or
12     counsel to the parties in the case, and I am not in
       the regular employ of counsel for any of the said
13     parties, nor am I in any way financially interested
       in the result of said case.
14            IN WITNESS WHEREOF, I have hereunto
       subscribed my name this 31st day of March, 2015.
15

16

17

18

19            _____  ____
                F. Renee Finkley, RPR, RMR, CRR, CLR
20              Georgia CCR-B-2289

21

22

23

24

25
```