Exhibit 8

```
              IN THE UNITED STATES DISTRICT COURT

          FOR THE NORTHERN DISTRICT OF GEORGIA

                    ATLANTA DIVISION

              No. 1:13-CV-1114-TWT


WONDERLAND NURSERYGOODS CO., LTD.,)
                                  )
                                  )
                                  )
          Plaintiffs,             )
                                  )
vs.                               )
                                  )
KIDS II, INC.,                    )
                                  )
          Defendant.              )


          VIDEOTAPE DEPOSITION OF JERRY DROBINSKI

                    March 26, 2015

                    Tucson, Arizona

. . . . . . . . . . . . . . . . . . . . . . . . .




          Transcript Prepared by Nancy P. Richmond

              Certified Reporter No. 50864
```

```
 1                  A P P E A R A N C E S

 2                      * * * * *

 3   For the Plaintiff:

 4        Baker & McKenzie LLP

 5        300 East Randolph Street

 6        Suite 5000

 7        Chicago, IL  60601

 8        By David I. Roche, Esq.

 9        (312) 861-8608

10        david.roche@bakermckenzie.com

11

12   For the Plaintiff:

13        Finnegan, Henderson, Farabow, Garrett & Dunner,

14        LLP

15        303 Peachtree Street, NE

16        Atlanta, GA  30308-3263

17        By Roger D. Taylor, Esq.

18        (404) 653-6400

19        roger.taylor@finnegan.com

20

21

22

23

24

25
```

```
 1   For the Defendant:

 2        Thomas Horstemeyer

 3        400 Interstate North Parkway SE

 4        Suite 1500

 5        Atlanta, GA  30339

 6        By Scott P. Amy, Esq., and Jason M. Padilla,

 7        Esq.

 8        (770) 933-9500

 9        scott.amy@thomashorstemeyer.com

10

11   For the Defendant:

12        Kids II

13        3333 Piedmont Road

14        Suite 1800

15        Atlanta, Georgia 30305

16        By Joseph W. Staley, Esq.

17        (770) 751-0442

18        joe.staley@kidsii.com

19

20   Also Present:

21        William Singhose

22

23

24

25
```

1            BE IT REMEMBERED that pursuant to notice,

2    the deposition of JERRY DROBINSKI was taken at the

3    Omni Tucson Resort in the City of Tucson, County of

4    Pima, State of Arizona, before Nancy P. Richmond, a

5    Certified Court Reporter, in and for the State of

6    Arizona, on the 26th day of March, 2015, commencing

7    at the hour of 9:06 a.m. on said day, in a certain

8    cause now pending before the U.S. District Court,

9    District of Georgia, Atlanta Division.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        I N D E X

 2   Examinations                       Page     Line

 3   JERRY DROBINSKI

 4   By Mr. Amy                          8        4

 5

 6

 7                    E X H I B I T S

 8

 9   Exhibit       Description          Page     Line

10

11   Exhibit 1   Drobinski CV and Testimony    9      19

12               Experience

13   Exhibit 2   Drobinski CV and Testimony   10       7

14               Experience

15   Exhibit 3   8/26/14 Roy letter to Amy    55       7

16   Exhibit 4   U.S. Reissued                91       4

17               Patent RE43,919E

18   Exhibit 5   U.S. Patent 4,376,318       101      12

19   Exhibit 6   U.S. Patent 6,954,949 B1    121       9

20   Exhibit 7   Response Report             140      16

21   Exhibit 8   Supplemental Response       142       8

22               Report

23   Exhibit 9   U.S. Design Patent          151      14

24               D708,354 S

25   Exhibit 10  Summer Playard literature   153       1
```

WONDERLAND NURSEYGOODS CO., LTD. vs. KIDS II, INC.
Jerry Drobinski on 03/26/2015                                    Page 6

```
 1               E X H I B I T S

 2

 3   Exhibit        Description              Page    Line

 4

 5   Exhibit 11   Brand Juvenile Play yard    155     8

 6   Exhibit 12   11/11/03 Liao e-mail to     168     15

 7                Chen with attachments

 8   Exhibit 13   U.S. Patent 6,859,957 B1    171      3

 9   Exhibit 14   Infringement Analysis re    184     25

10                Patents RE43,919 and

11                6,954,949

12   Exhibit 15   Reply to Kids II's Response 185      5

13                to Infringement Analysis

14   Exhibit 16   Supplemental Response       185      5

15                Report

16   Exhibit 17   U.S. Patent Application No. 201      7

17                US 2012/0216346 A1

18   Exhibit 18   Drawing                     226     17

19   Exhibit 19   U.S. Patent Des. 365,932    235      7

20   Exhibit 20   Drawing                     252     20

21   Exhibit 21   Drawing                     253      3

22   Exhibit 22   Drawing                     254      5

23   Exhibit 23   Claims Construction Order   262     23

24

25
```

1              THE VIDEOGRAPHER:  This is the

2    beginning of media number one in the deposition of

3    Jerry Drobinski in the matter of Wonderland Nursery

4    Goods Company, Limited, versus Kids II, Inc., case

5    number 1:13-CV-1114-TWT.  My name is John

6    Maniscalco.  I am the videographer.  The court

7    reporter is Nancy Richmond.  We are here with Huseby

8    Global Litigation.  Today's date is March 26, 2015.

9    The time is 9:06.

10           Will the attorneys please introduce

11   themselves?

12            MR. AMY:  Scott Amy with Thomas

13   Horstemeyer, here on behalf of Kids II.  Also with

14   me is Jason Perilla with Thomas Horstemeyer and Joe

15   Staley, vice president of legal for Kids II, and

16   Bill Singhose.

17            MR. ROCHE:  David Roche, Baker

18   McKenzie, representing Wonderland, and with me is

19   Roger Taylor, from the Finnegan Henderson firm.

20            THE VIDEOGRAPHER:  Will the court

21   reporter please swear in the witness and we can

22   proceed?

23

24            JERRY DROBINSKI,

25   having been first duly sworn by the Certified

 1   Reporter to tell the truth, the whole truth, and

 2   nothing but the truth, testified as follows:

 3

 4                         EXAMINATION

 5   BY MR. AMY:

 6        Q.   Good morning, Mr. Drobinski.

 7        A.   Good morning.

 8        Q.   Will you please spell your full name and

 9   state your address for the record?

10        A.   Jerome John Drobinski, D-R-O-B-I-N-S-K-I,

11   37999 South Spoon, S-P-O-O-N, Drive, Tucson, Arizona

12   85739.

13        Q.   As you just heard, my name is Scott Amy.

14   I represent Kids II in a patent infringement lawsuit

15   that's been filed by Wonderland Nursery Goods Co.,

16   Ltd., against Kids II in Atlanta, Georgia, and today

17   I'll be asking you some questions on behalf of Kids

18   II.  Okay?

19        A.   That's fine.

20        Q.   Before we get started, is there

21   anything -- well, let me back up.  You've offered a

22   number of expert opinions in this case, correct?

23        A.   Yes.

24        Q.   And one of the opinions you've offered is

25   on infringement; is that correct?

1  wall.  It turns into an inner wall like this, so

2  that something can be nested in it, and it's the

3  outer surface that is visible.

4       Q.   Just hold up what is marked as Exhibit 18

5  so I can see it one more time, just so we make sure

6  we're clear on this.

7       A.   (Complying.)

8       Q.   A portion -- just keep it up on camera.

9  The portion that you've highlighted in green in

10 Exhibit 18, do you consider that to be the inner

11 wall of the upright tube or the outer wall?

12      A.   I consider it to be part of the outer wall

13 of the upright tube.  The entire tube has an outer

14 wall but, in this configuration, because it is bent

15 in, it is actually inner.  It's inside.  It's bent

16 in.  It's concave.

17      Q.   So is it part of the outer wall and the

18 inner wall at the same time?

19      A.   Sure.

20      Q.   Okay.  Looking at the language of claim

21 fifteen, is there any requirement that the upright

22 tubes in that claim be structural?

23      A.   It specifically does not say that, but

24 without structural integrity there's no product.

25      Q.   But there's no requirement in the claim --

1      A.    No.

2      Q.    -- that there be structure?  Let's look at

3  the portion of claim fifteen that you've labeled as

4  segment D, and the portion of claim fifteen that

5  you've labeled as segment D requires, "an enclosure

6  member, including a plurality of side panels

7  contiguously connected to one another along edge

8  portions and surrounding an enclosed space adapted

9  for receiving the baby therein."  Do you see that?

10     A.    Yes.

11     Q.    Is it your opinion that each of the

12  accused products has side panels contiguously

13  connected to one another?

14     A.    Yes.

15     Q.    What do you believe claim fifteen means by

16  the term, "contiguously connected"?

17     A.    In contact with each other.

18     Q.    So is it your opinion that the side

19  walls -- or I should say the side panels of the

20  invention described in claim fifteen have to

21  directly touch to be contiguously connected?

22     A.    They either have to touch or be connected

23  by something that makes it obviously -- obvious that

24  they're touching, or that they're connected, I

25  should say.

1      Q.   So it's possible that there could be

2   another structure between them and they could still

3   be connected, as long as they're, for example, near

4   each other?

5      A.   That's correct.

6

7           (Exhibit 19 marked for identification.)

8

9      Q.   Mr. Drobinski, you've just been handed a

10  copy of what we've marked as Exhibit 19.  This is a

11  copy of design patent 365,932?  I just want to --

12           MR. ROCHE:  I notice there's no Bates

13  number on this.  Has this been produced in the case?

14           MR. AMY:  I don't know.  I think it's

15  one of the patents that was cited in an expert

16  report, David.

17     Q.   Mr. Drobinski, I just have one question

18  about this document.  Looking at the playpen that's

19  shown on the front page of Exhibit 19, would you

20  consider the side panels of this playpen to be

21  connected?

22     A.   No.

23     Q.   Why not?

24     A.   Because there's a very substantial corner

25  post that's between them.

1    A.    It holds it from -- well, again, if you go

2  back to the wording, it holds it firmly in place

3  along the -- this is fifteen, okay.  Let me read it

4  again, please.

5    Q.    Sure.

6    A.    Okay.  Go ahead.

7    Q.    Sure.  So my question is, are the

8  positioning posts of claim fifteen simply posts that

9  hold the fabric of the enclosure?

10    A.    They are a structural part of the unit

11  that holds the fabric and forms the enclosure.

12    Q.    Can they be flexible?

13    A.    Positioning posts?

14    Q.    Hm-hmm.

15    A.    Depending on the representation of the

16  product, the design of the product they could be.

17    Q.    There's no requirement that they be rigid

18  in claim fifteen, correct?

19    A.    No.

20    Q.    All right.  Let's move to what you've

21  identified as segment E of claim fifteen, which

22  starts on page seven of your opening report.

23  Another portion -- we talked about the beginning

24  portion of segment E, but the next portion states,

25  "wherein the positioning posts are lodged inside the

 1  upright tubes."  Do you see that?

 2      A.   Yes.

 3      Q.   Why do you believe that the positioning

 4  posts or what you've identified are the positioning

 5  posts in the accused products are lodged inside the

 6  upright tubes?

 7      A.   There is an annular space in the upright

 8  tube.  The positioning post fits into that space.

 9  It's not an annular space.  It's basically a cavity,

10  and it's lodged in there and held in place by the

11  rivet that is in the lower foot, if you will.  And

12  the upper part is held in place by the latch

13  mechanism, the red -- in this case it's a red latch

14  mechanism that fits into the upper corner.

15      Q.   Is it -- okay.  Is it your opinion that

16  the retention tubes in the accused products are

17  entirely inside the upright tube?

18      A.   No.  They're lodged into.

19      Q.   So if I understand you correctly, you

20  don't believe that claim fifteen requires that the

21  entire positioning post be inside the upright tube,

22  do you?

23      A.   No.

24      Q.   And, in fact, on page eight of your

25  report, you state -- and if you want to turn to it,

1  we can look at it together.

2        A.   I have it.

3        Q.   Okay.  So that first paragraph under the

4  two photographs, you state, "Thus, in my view, if

5  the positioning post is lodged partially inside the

6  upright tube, it meets the requirement to be lodged

7  inside the upright tube."  Do you see that?

8        A.   Oh, it's the second.  I'm looking at the

9  first sentence, not the second, okay.

10       Q.   Sure.

11       A.   Yes.

12       Q.   Is that an accurate statement?

13       A.   That is.

14       Q.   The claim language doesn't say that the

15  positioning posts are lodged partially inside the

16  upright tube, does it?

17       A.   No, but it does not say fully, either.

18       Q.   It says that the positioning post is

19  lodged inside, correct?

20       A.   Yes.

21       Q.   You've read the specification in the '919

22  patent, right?

23       A.   Hm-hmm.

24       Q.   Is there any support in the specification

25  for a positioning post that's lodged partially

1  inside the upright tube?

2      A.   No, but I don't believe there's anything

3  that says fully, either.

4      Q.   Well, we've talked about figure five this

5  morning.  In figure five are they fully inside?

6      A.   You might say that, but, again, that's

7  only one representation.  That's not the claim.

8      Q.   And, in fact, in all of the

9  representations in the specification, they're

10 showing it's fully inside, correct?

11     A.    In figure four it shows -- yes, it shows

12 it in this -- in this configuration, but I think you

13 might be -- are you sorting things or -- oh.

14         There's a difference -- there's a

15 difference between the distance between the front

16 wall and the back wall on figure four.  I don't know

17 that it's necessarily saying that it is lodged

18 inside, because if column eleven -- or, excuse me,

19 the vertical column eleven were, in fact, shaped

20 like the Kids II unit, maybe to more extreme, again,

21 these figures are representative.  They're not the

22 claim.

23     Q.   You understand that what's shown in figure

24 five is actually a cross-section of what's shown in

25 figure four?

```
 1       Q.   It's not completely inside in the accused

 2  products, is it?

 3       A.   It's certainly not completely outside

 4  either.

 5       Q.   What if in the accused products only a

 6  little bit of the retention tube was inside, say

 7  five percent, would you still believe it to be

 8  lodged inside?

 9       A.   Sure.

10       Q.   What if only one percent?

11       A.   It's still lodged inside until it's zero.

12

13            (Exhibit 20 marked for identification.)

14

15            MR. ROCHE:  Is this 20?

16       Q.   Mr. Drobinski, I represent to you that

17  I've handed you a representative cross-section of a

18  retention tube and an upright tube.  Would you say

19  the retention tube shown in Exhibit 20 is inside or

20  outside the upright tube?

21       A.   Outside.

22       Q.   Okay.  Would you check the box outside?

23            MR. ROCHE:  Will he be graded on this

24  later?

25            MR. AMY:  Maybe.  Depends on if he
```

1  exactly how that part went.  I believe it was

2  tapered, but I also believe it had a stop at the

3  bottom, and you would have to assume that the --

4  that the stop was at the -- at that location.

5       Q.   Okay.  So see if we can get on the same

6  page.  If, say, for example, at the top a

7  retention -- retention tube is located completely

8  outside the upright tube but at the bottom, based on

9  the shape of it, it was located 35 percent inside,

10 would that still infringe claim fifteen in your

11 opinion?

12      A.   Yes.

13      Q.   If I asked you to park a car in a garage,

14 would you park it only 35 percent of the car in the

15 garage?

16      A.   I have.

17      Q.   But if I asked you to park your car in the

18 garage, you'd only park 35 percent in the --

19      A.   No.  I said I have.  It doesn't have to

20 necessarily be a hundred percent in the garage.

21      Q.   I'm sure you have.  What would you

22 understand me to mean?

23      A.   I would understand you to mean that you'd

24 want the car in the garage.

25      Q.   The entire car?

 1       A.    Sure.

 2       Q.    The segment of -- or I should say the

 3   portion of segment E that we've been discussing also

 4   requires not only the inside, but it also requires

 5   that the positioning post be lodged inside the

 6   upright tube, correct?

 7       A.    Hm-hmm.  Yes.

 8       Q.    Based on your infringement reply, you've

 9   defined lodged to mean to come stuck or fixed in a

10   specified place.  Do you recall that definition?

11       A.    I recall, yes.  If you have it -- oh, here

12   it is.  Okay.

13       Q.    Do you still agree with the definition

14   that's on page four?

15       A.    Yes.

16       Q.    And then on page six and seven, it starts

17   on the bottom of page six and continues over to page

18   seven, you state that you don't believe that lodge

19   requires touching or frictionally holding the

20   retention tube; is that correct?

21       A.    "By direct contact with the surfaces of

22   the outer post," that's the rest of the sentence.

23       Q.    Sure.  Do you -- sorry.  Do you believe

24   that lodging requires the outer post to hold the

25   positioning post?

1                    C E R T I F I C A T I O N

2                         *   *   *   *   *

3

4           BE IT KNOWN that the foregoing deposition

5    was taken before me, Nancy P. Richmond, Certified

6    Court Reporter No. 50864 for the State of Arizona,

7    and by virtue thereof authorized to administer an

8    oath; that the witness, JERRY DROBINSKI, before

9    testifying was first duly sworn by me; that the

10   questions propounded by counsel and the answers of

11   the witness thereto were taken down by me in

12   shorthand and thereafter transcribed under my

13   direction; that a review of the transcript by the

14   witness was reserved; that the foregoing pages

15   contain a full, true, and accurate transcript of all

16   proceedings and testimony had, all to the best of my

17   skill and ability.

18           I FURTHER CERTIFY that I am not related to

19   nor employed by any of the parties hereto and have

20   no interest in the outcome thereof.

21           DATED at Tucson, Arizona, this 6th day of

22   April, 2015.

23

24   _____
                     NANCY P. RICHMOND

25              CERTIFIED COURT REPORTER NO. 50864

**WONDERLAND NURSEYGOODS CO., LTD. vs. KIDS II, INC.**
**Jerry Drobinski on 03/26/2015**                              **Page 268**

CHANGES AND SIGNATURE

WITNESS NAME:              Jerry Drobinski,        03/26/2015

PAGE     LINE     CHANGE              REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

      I, Jerry Drobinski, have read the foregoing

deposition and hereby affix my signature that same is

true and correct, except as noted above.


                  _____

                        Jerry Drobinski

Sworn to and Subscribed before me

_____, Notary Public.

This_____day of _____, 20____.

My Commission Expires: