Exhibit 11

Case 1:13-cv-01114-ELR   Document 170-14   Filed 08/17/15   Page 2 of 17

WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.
Jerry Drobinski on 03/27/2015                                    Page 1

```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF GEORGIA
                   ATLANTA DIVISION




WONDERLAND NURSERYGOODS CO.,     )
LTD.,                            )
                                 )
        Plaintiff,               )
                                 )
v.                               )   No. 1:13-CV-1114-TWT
                                 )
KIDS II, INC.,                   )
                                 )
        Defendant.               )
                                 )




     VIDEOTAPE DEPOSITION OF JERRY DROBINSKI, VOL. II

                   Tucson, Arizona
                   March 27, 2015
                     9:03 a.m.








REPORTED BY:
Thomas A. Woppert, RPR
AZ CCR No. 50476
```

Case 1:13-cv-01114-ELR   Document 170-14   Filed 08/17/15   Page 3 of 17

**WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.**
Jerry Drobinski on 03/27/2015                                           Page 2

```
 1              DEPOSITION OF JERRY DROBINSKI, VOL. II, taken on

 2   March 27, 2014, commencing at 9:03 a.m., at the OMNI TUCSON

 3   RESORT, 2727 West Club Drive, Tucson, Arizona, 85742, before

 4   THOMAS A. WOPPERT, RPR, a Certified Court Reporter in the

 5   State of Arizona.

 6

 7   COUNSEL APPEARING:

 8   On Behalf of the Plaintiff:
          BAKER & McKENZIE
 9        By Mr. David I. Roche
          300 East Randolph Street, Suite 5000
10        Chicago, Illinois  60601
          (312)861-8608
11        david.roche@bakermckenzie.com

12        FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
          By Mr. Roger D. Taylor
13        3500 Suntrust Plaza
          303 Peachtree Street, NE
14        Atlanta, Georgia  30308
          (404)653-6480
15        roger.taylor@finnegan.com

16   On Behalf of the Defendants
          THOMAS HORSTEMEYER
17        By Mr. Scott P. Amy -and -
          Mr. Jason M. Perilla
18        400 Interstate North Pkwy, Suite 1500
          Atlanta Georgia  30339
19        (770)933-9500
          scott.amy@thomashorstemeyer.com
20        jason.perilla@thomashorstemeyer.com
          KIDS 11
21        By Mr. Joseph W. Staley
          3333 Piedmont Road, Suite 1800
22        Atlanta, Georgia  30305
          (770)751-0442
23        joe.staley@kidsii.com

24   Also Present:
          Mr. William Singhose, Ph.D.
25        Mr. John Maniscalco, Videographer
```

Case 1:13-cv-01114-ELR   Document 170-14   Filed 08/17/15   Page 4 of 17

WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.
Jerry Drobinski on 03/27/2015                                    Page 3

1                        I N D E X

2

3   WITNESS                                                      PAGE

4   JERRY DROBINSKI

5   Examination by Mr. Amy (Cont'd)                                 4

6   Examination by Mr. Roche                                      110

7   Further Examination by Mr. Amy                                112

8

9                      E X H I B I T S

10

11  EXHIBITS      DESCRIPTION                                     PAGE

12  Exhibit 24    Opening claim construction brief                   5

13  Exhibit 25    Color photographs                                  9

14  Exhibit 26    Document Bates stamped KIDSW0035253               25

15  Exhibit 27    Patent No. 914309                                 70

16  Exhibit 28    Patent No. 5,722,477                              77

17  Exhibit 29    Patent No. 5,615,427                              84

18  Exhibit 30    Patent No. 2,899,693                              99

19  Exhibit 31    Patent No. 6,098,217                              99

20  Exhibit 32    Patent No. 715,883                               106

21

22

23

24

25

Case 1:13-cv-01114-ELR  Document 170-14  Filed 08/17/15  Page 5 of 17

WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.
Jerry Drobinski on 03/27/2015                                    Page 4

1      (Deposition Exhibits 24-25 marked for identification)

2              THE VIDEOGRAPHER:  This is the beginning of media

3   number one, volume two, in the continuation of the

4   deposition of Jerry Drobinski in the matter of Wonderland

5   Nurserygoods Company, Limited, versus Kids II, Inc., case

6   number 113-CV-01114-TWT.

7              Today's date is March 27th, 2015, and the time on

8   the monitor is 9:03.

9              My name is John Maniscalco and I am the

10  videographer.

11             The court reporter is Tom Woppert.

12             We are here with Huseby Global Litigation.

13             Counsel will be noted on the stenographic record.

14             You may proceed.

15

16             E X A M I N A T I O N (Cont'd)

17

18  BY MR. AMY:

19      Q.    Okay.  Mr. Drobinski, you understand that you're

20  still under oath today?

21      A.    Yes.

22      Q.    Okay.  Yesterday we discussed claim 21 of the 919

23  patent that includes the clamp limitation.

24             Do you recall that testimony?

25      A.    Yes.

Case 1:13-cv-01114-ELR   Document 170-14   Filed 08/17/15   Page 6 of 17

WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.
Jerry Drobinski on 03/27/2015
Page 101

```
 1      A.      There's something labeled in the center as 50,
 2   but, you know, it's -- it's not as clear.  It could be a
 3   floor.  I'd have to look back at the description.
 4      Q.      Okay.  Why don't you turn to column three, line
 5   44, please.
 6      A.      (Indicating).
 7      Q.      Read that and see if it refreshes your
 8   recollection as to whether this product has a floor.
 9      A.      Yes, it has floor pads.
10      Q.      Okay.
11      A.      It does.
12      Q.      All right.  Let's continue to work with figure 1
13   now.
14      A.      Okay.
15      Q.      Do you agree that in figure 1 there are uprights
16   shown at each corner?
17      A.      There are solid posts shown at each corner.
18   They're uprights, yes.
19      Q.      Is there any indication in the Hammil patent that
20   the vertical uprights are not hollow?
21      A.      Are not --
22      Q.      Are not hollow.
23      A.      They're not hollow.
24      Q.      How do you know that they're not hollow?
25      A.      Just very simply by looking at the -- they're not
```

Case 1:13-cv-01114-ELR Document 170-14 Filed 08/17/15 Page 7 of 17

WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.
Jerry Drobinski on 03/27/2015
Page 102

1  tubes just looking at the -- the cap on top.
2  Q.  Could a tube have a cap on top?
3  A.  Sure, it could.
4  Q.  So it's possible that they are tubes; correct?
5  A.  Yes.
6  Q.  Okay. And, in fact, you've reviewed this patent.
7  Is there any indication anywhere in the specification that
8  the uprights shown in Hammil are not tubes?
9  A.  There's nothing in here that shows that they
10 aren't tubes, but there's nothing in here that shows that
11 they are tubes either.
12 Q.  And you were working in the juvenile products
13 industry in 1999; correct?
14 A.  Sure.
15 Q.  At the time this patent was filed?
16 A.  Yes.
17 Q.  What were some of the types of materials that
18 were used for constructing uprights on play yards in 1999?
19 A.  Predominantly -- predominantly steel or aluminum
20 tubing.
21 Q.  In the 919 patent, do you think that the use of
22 steel tubing is a novel feature of the invention?
23        MR. ROCHE:  Objection to form.
24        THE WITNESS:  I suspect that 919 could have been
25 steel, it could have been aluminum.  I suspect also that to

Case 1:13-cv-01114-ELR  Document 170-14  Filed 08/17/15  Page 8 of 17

WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.
Jerry Drobinski on 03/27/2015
Page 103

1  achieve the shapes that are needed, it would likely have to
2  be -- as shown in the -- in the -- figure 5 of 919, it would
3  probably be aluminum because of the difficulty in forming
4  that tube.
5  BY MR. AMY:
6      Q.   But the use of a tube in the 919 patent, just a
7  tube itself for an upright, wasn't a novel concept, was it?
8      A.   Probably not.
9      Q.   And that would have been --
10     A.   If you look -- if you look at the prior art in
11 the 919, it shows a tube.
12     Q.   So persons of ordinary skill in the art when
13 designing playpens in 1999, for example, would know that one
14 of the options they had was to use a steel tube; correct?
15     A.   Sure.
16     Q.   Turn to figure 3 of Hammil, please.
17     A.   Uh-huh.  Yes.
18     Q.   What's shown in figure 3?
19     A.   It's a -- it's a -- it's a depiction, drawing, if
20 you will, of what they're calling -- I'm not sure what their
21 terminology is, whether they're corner posts or uprights,
22 vertical uprights, and a segment, it seems, of the side
23 panel that they have somehow installed in that corner.
24     Q.   Looking at the upright which is the part labeled
25 20, is the outwardly facing surface exposed?

Case 1:13-cv-01114-ELR  Document 170-14  Filed 08/17/15  Page 9 of 17

WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.
Jerry Drobinski on 03/27/2015
Page 104

 1    A.    Yes.
 2    Q.    Does the side panel make any contact with the
 3    outwardly facing surface?
 4    A.    No, except at the -- at the -- at the entrance
 5    point.  The side panels are not contiguous if that's of any
 6    help to you.
 7    Q.    Let's turn to figure 4 since you brought that up.
 8          Do you understand what's shown in figure 4?
 9    A.    It seems to be a plan view of two of the posts
10    with some sort of -- with a -- with a side panel, singular,
11    and a couple of segments of other side panels shown.
12    Q.    Would you agree that the side panels when they're
13    connected to the upright, 20, are held near each other?
14    A.    Sure.
15    Q.    And would you agree that the upright connects the
16    side panels -- two or more of the side panels?
17    A.    Yes.
18    Q.    Do you see in that same figure the recess that's
19    shown as 21?
20    A.    Yes.
21    Q.    Would you agree that recess is shaped sort of
22    like a T?
23    A.    Sort of.
24    Q.    Do you know what holds the side panel in the
25    recess in this product?

Case 1:13-cv-01114-ELR   Document 170-14   Filed 08/17/15   Page 10 of 17

WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.
Jerry Drobinski on 03/27/2015
Page 105

1      A.   It's not possible to tell.  If -- if you -- if
2  you take your view that it's a tube, unless there's some
3  sort of very difficult and exotic structure inside, I -- I
4  can't tell.  But if they're solid, as they likely are, that
5  may or may not be a groove.  It's hard to -- it's hard to
6  tell.  It might be an extended or a widened structure.  It's
7  not called out that way.  I don't believe the patent states
8  that either.
9      Q.   What patent are you referring to?
10     A.   This one.  This one.
11     Q.   Assume for a moment that the side panels in
12 Hammil are held in that -- that T-shaped recess by some type
13 of flange.
14          Would you consider that to meet the attachment
15 structural limitation of claim 20?
16     A.   No.
17     Q.   Why not?
18     A.   Because the panels aren't contiguous.
19     Q.   Is there any requirement in claim 20 that the
20 panels be contiguously connected?
21     A.   No.
22     Q.   So based on that, would you consider what's shown
23 in figure 4 to meet the attachment structure limitation of
24 claim 20?
25     A.   The attachment structure part of it, yes.

Case 1:13-cv-01114-ELR   Document 170-14   Filed 08/17/15   Page 11 of 17

WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.
Jerry Drobinski on 03/27/2015
Page 106

1    Q.    All right.  You can put Hammil aside for a few
2  minutes.
3          (Deposition Exhibit 32 marked for identification)
4  BY MR. AMY:
5    Q.    Mr. Drobinski, you've just been handed what we
6  have marked as Exhibit 32.  This is a copy of Australian
7  patent number 715883.
8          Have you seen this patent before today?
9    A.    Yes.
10   Q.    And is this one of the patents that Dr. Singhose
11 cites as prior art to the 919 patent?
12   A.    Yes.
13   Q.    Do you agree with me that the Bidwell patent
14 shows a playpen?
15   A.    It's called out as a cot.
16   Q.    Do you understand that in Australia, when they
17 refer to a cot, it means a playpen?
18   A.    Apparently.
19   Q.    All right.  Turn to figure 1, please.
20   A.    (Indicating).
21   Q.    Do you see the part labeled 14 in figure 1?
22   A.    Yes.
23   Q.    Do you consider that to be a fabric sidewall?
24   A.    Yes, in combination with what I believe is called
25 out as 12 and 10.

Case 1:13-cv-01114-ELR   Document 170-14   Filed 08/17/15   Page 12 of 17

**WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.**
Jerry Drobinski on 03/27/2015                                    Page 107

```
 1       Q.    And what's your understanding of what 12 and 10
 2  is?
 3       A.    Seem like to be the top rail covers and the part
 4  that extends down underneath to become the floor.  It seems
 5  that way.
 6       Q.    All right.  Fair enough.
 7             Looking at figure 2, do you understand what's
 8  shown in that figure?
 9             It's on the top of figure 1.
10       A.    Oh, I'm sorry.
11             Yes.
12       Q.    What's shown in that figure?
13       A.    What's shown is part number 20, which is a
14  vertical upright, and what seems to be the fabric -- a
15  fabric tunnel, 14 I believe it is, yes, that goes around the
16  structural upright, and then there's a snap-on accessory
17  that hides the fabric.
18       Q.    The fabric sidewalls, 14, would you consider them
19  to be contiguously connected?
20       A.    They seem to be.
21       Q.    All right.  Let's talk about the part that's
22  labeled 22.  I don't believe that one's actually labeled in
23  figure 2, so we'll have to turn back to figure 1.
24             What is the part labeled 22?
25       A.    It's a snap-on cover that has no structural
```

Case 1:13-cv-01114-ELR   Document 170-14   Filed 08/17/15   Page 13 of 17

**WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.**
Jerry Drobinski on 03/27/2015                                               Page 108

1  reason to be except to be a decorative piece.
2     Q.   Do you agree that that part is a tube?
3     A.   It could be called a tube, yes, flexible tube.
4     Q.   In your opinion, do you believe it's a tube?
5     A.   It could be, yes, a segment of a tube.
6     Q.   And I think you mentioned part 20 before.  You
7  said that was an upright?
8     A.   It's a vertical upright, I believe, yes.
9     Q.   Or a post?
10    A.   Post.
11    Q.   And in this product, is the fabric secured to the
12 post labeled 20?
13    A.   It seems to be.  Again, it's very difficult to
14 tell from that sketch, but it seems to be that 14, which is
15 the outside, is the boundary as well as -- as this mesh side
16 panel, if you want to call it that.  It seems to be that
17 that is sewn with a tunnel that completely surrounds the
18 upright tube or post.
19    Q.   And then the part that is labeled 22, which is a
20 tube, fits over that; correct?
21    A.   It's a snap-on tube-shaped accessory.
22    Q.   Do you know what the purpose of the part labeled
23 22 when it's snapped in place is in this product?
24    A.   Just to cover the fabric.
25    Q.   Turn to page three of Bidwell, please.

Case 1:13-cv-01114-ELR   Document 170-14   Filed 08/17/15   Page 14 of 17

WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.
Jerry Drobinski on 03/27/2015
Page 109

1    A.    (Indicating).

2    Q.    I want to focus on the paragraph at the very

3  bottom of the page that reads, as such, the retaining

4  member, 22, forces the fabric sidewall, 14, around the

5  corner post, 20, and thus holds it tightly in relation to

6  the corner post, 20.

7          Do you see that?

8    A.    Yes.

9    Q.    Do you agree that the retaining number 22 is

10 providing support for the fabric sidewall by holding it

11 tightly?

12   A.    I don't think it has to be there to hold it

13 tightly if the product is made properly.  Tightly is -- you

14 know, cosmetically there may be some wrinkles, but that

15 doesn't mean it's not tight.

16   Q.    Do you remember the -- the background to the

17 Bidwell patent?

18   A.    Do I remember the background?

19   Q.    Yeah.  And it's -- it's described in this patent.

20   A.    I'd probably want to reread it.

21   Q.    Before we turn to that, just given the time

22 that's left, do you believe that holding something tightly

23 is the same as providing support?

24   A.    I believe you can provide support by holding

25 something tightly.

Case 1:13-cv-01114-ELR   Document 170-14   Filed 08/17/15   Page 15 of 17

WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.
Jerry Drobinski on 03/27/2015                                      Page 110

1    Q.   If you maintain something under tension, are you
2  providing support?
3    A.   Could be, yes.
4    Q.   Do you agree?
5    A.   Yes.
6    Q.   In looking back at figure 1, when this product's
7  fully assembled, is there any contact between the fabric
8  sidewall, 14, and the outwardly facing surface of that
9  retaining member, 22?
10   A.   Is the retaining member called that in the patent
11 or is it just a cover?
12   Q.   It's called a retaining member.  I'll represent
13 that to you.
14   A.   Is there any?  No.
15   Q.   There's no contact?
16   A.   No.
17   Q.   Okay.  Thank you for your time.
18        MR. ROCHE:  I just have two questions for
19 Mr. Drobinski.
20
21             E X A M I N A T I O N
22
23 BY MR. ROCHE:
24   Q.   Earlier today I think you testified in discussing
25 the Huang patent that because they were -- the two corner

Case 1:13-cv-01114-ELR   Document 170-14   Filed 08/17/15   Page 16 of 17

**WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.**
**Jerry Drobinski on 03/27/2015**                                Page 116

```
 1   STATE OF ARIZONA    )
                         ) ss.
 2   COUNTY OF PIMA      )

 3              BE IT KNOWN that the foregoing transcript was

 4   taken before me, THOMAS A. WOPPERT, RPR; that I was then and

 5   there a Certified Reporter, Certificate No. 50476, in the

 6   State of Arizona; that the witness before testifying was

 7   duly sworn by me to testify to the whole truth; that the

 8   foregoing pages are a true and correct transcript of all

 9   proceedings; and that preparation, production and

10   distribution of the transcript and copies comply with law

11   and code as required by ACJA 7-206(F)(3).

12              I FURTHER CERTIFY that I have acted in compliance

13   with ACJA 7-206(J)(1)(g)(1).

14              (X) Pursuant to request, notification was provided

15   that the deposition transcript is available for review and

16   signature.

17              ( ) Deposition transcript review and signature was

18   not requested.

19              WITNESS MY HAND this 6th day of April 2015.

20
                                   _____
21
                                   Thomas A. Woppert, RPR
22                                 AZ CCR No. 50476

23

24

25
```

Case 1:13-cv-01114-ELR   Document 170-14   Filed 08/17/15   Page 17 of 17

**WONDERLAND NURSERYGOODS CO., LTD. vs. KIDS II, INC.**
Jerry Drobinski on 03/27/2015                    Page 117

CHANGES AND SIGNATURE

WITNESS NAME:        Jerry Drobinski,         03/27/2015

PAGE    LINE    CHANGE              REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

I, Jerry Drobinski, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

_____
              Jerry Drobinski

Sworn to and Subscribed before me

_____, Notary Public.

This _____ day of _____, 20____.

My Commission Expires: