# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| WONDERLAND | ) | |
| NURSERYGOODS CO., LTD. | ) | |
| | ) | Civil Action No. 1:13-CV-1114-ELR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KIDS II, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**WONDERLAND NURSERYGOODS CO., LTD.'S OPPOSITION TO KIDS II, INC.'S OBJECTION AND MOTION TO EXCLUDE WONDERLAND'S SUPPLEMENTAL INFRINGEMENT CONTENTIONS SERVED ON JULY 27, 2015**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     FACTUAL BACKGROUND.............................................................4

        A.      The Newly Released Models Are the Same as Other
                Accused "Washable Products" in All Relevant Aspects .....................4

        B.      Expert Reports On Infringement Show That the Parties'
                Positions on Accused "Washable Products" Are the Same .................7

        C.      Kids II Had Numerous Opportunities to Supplement Its
                Validity Contentions for the '919 Patent With Information
                From Related IPR Proceedings, But Chose Not To.............................8

III.    ARGUMENT........................................................................................9

        A.      This Court's Local Rules Materially Differ With the N.D. of
                Cal.'s Rules With Respect to Supplementing Contentions..................9

        B.      Wonderland Had to Discover Kids II's Newly-Released
                Models On Its Own, and Diligently Asserted Infringement..............11

        C.      Wonderland Timely Amended Its Contentions After
                Negotiations With Kids II Ceased to Be Productive..........................14

        D.      Kids II Overstates Alleged Prejudice—Any Actual Prejudice
                Is Kids II's Own Making...................................................................17

        E.      Kids II Is Liable for Infringement Based On Model No.
                60587 (Winslow)................................................................................20

        F.      Kids II Improperly Attempts to Add Prior Art It Failed to
                Identify Despite Its Public Availability for Years ............................22

IV.     CONCLUSION..................................................................................25

i

# TABLE OF AUTHORITIES

**CASES**

*Apple Inc. v. Samsung Elecs. Co.*,
  No. CV 12-00630 LHK, 2012 WL 5632618 (N.D. Cal. Nov. 15, 2012).... 13, 18

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche*
  *Molecular Sys., Inc.*, No. C 05-04158 MHP,
  2008 WL 624771 (N.D. Cal. Mar. 4, 2008) .............................................. passim

*C & C Jewelry Mfg., Inc. v. W.*,
  No. 5:09-CV-01303-JF, 2011 WL 835821 (N.D. Cal. Mar. 4, 2011)...............24

*Fitness Anywhere LLC v. WOSS Enterprises LLC*,
  No. 14-cv-01725-BLF (HRL), 2015 WL 3465827 (N.D. Cal. June 1,
  2015) ...............................................................................................................11

*Fitness Anywhere LLC v. Woss Enterprises LLC*,
  No. 14-cv-01725-BLF (HRL), 2015 WL 3640703 (N.D. Cal. June 11,
  2015) ...............................................................................................................11

*Hooker v. Fulton Cnty., Georgia*,
  No. CIVA105CV982GET, 2006 WL 2617142 (N.D. Ga. Sept. 12, 2006)........16

*MediaTek, Inc. v. Freescale Semiconductor, Inc.*,
  No. CV 11-5341 YGR (JSC), 2013 WL 5236709 (N.D. Cal. Sept. 17,
  2013) ....................................................................................................... 23, 25

*Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc.*,
  No. 1:12-CV-3222-AT, 2014 WL 1274003 (N.D. Ga. Mar. 17, 2014) ..............9

*My Medical Records, Inc. v. Walgreen Co.*,
  No. 2:13-cv-00631-ODW (SHx), 2013 U.S. Dist. LEXIS 179945 (N.D.
  Cal. Dec. 23, 2013) .........................................................................................13

*Nuance Commc'ns, Inc. v. ABBYY Software House*,
  No. C 08-02912 JSW (MEJ), 2012 WL 2427160 (N.D. Cal. June 26,
  2012) ...............................................................................................................18

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed. Cir. 2006) ..........................................................................13

*Oracle Am., Inc. v. Google Inc.*,
No. C 10-03561 WHA, 2011 WL 3443835 (N.D. Cal. Aug. 8, 2011) ..............25

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
No. 1:05-CV-02482, 2008 U.S. Dist. LEXIS 123217 (N.D. Ga. Aug. 26,
2008) ..................................................................................................................14

*Pozen Inc. v. Par Pharm., Inc.*,
696 F.3d 1151 (Fed. Cir. 2012) ..........................................................................21

*SAGE Electrochromics Inc. v. View Inc.*,
No. C-12-06441 JST (DMR), 2014 WL 1998049 (N.D. Cal. May 15,
2014) ..................................................................................................................24

*Seiko Epson Corp. v. Coretronic Corp.*,
No. C 06-06946 MHP, 2008 WL 2563383 (N.D. Cal. June 23, 2008)..............19

*Symantec Corp. v. Veeam Corp.*,
No. 12-05443, 2013 WL 3490392 (N.D. Cal. July 11, 2013) .................... 16, 21

*Tillotson Corp. v. Shijiazhaung Hongray Plastic Products, Ltd.*,
244 F.R.D. 683 (N.D. Ga. 2007) .......................................................... 10, 13, 14

*Trans Video Electronics, Ltd. v. Sony Electronics, Inc.*,
278 F.R.D. 505 (N.D. Cal. 2011)........................................................................13

## STATUTES

35 U.S.C. § 271 ........................................................................................................21

## RULES

Fed. R. Civ. P. 26(e)(1)(A) ......................................................................................10

N.D. Cal. Patent L.R. 3-6..........................................................................................10

N.D. Ga. Patent L.R. 4-5(b) ......................................................................................10

## I.     INTRODUCTION

Since this lawsuit began, Wonderland Nurserygoods Co., Ltd. (Wonderland) has accused Kids II, Inc. of infringing two patents based on Kids II's "Washable Products," also known as the EXO frame playards. Kids II periodically releases new "models" of its products to "update fashion" (e.g., fabric colors and patterns) without materially changing the underlying frame. *See* Dkt. No. 172-5 at 67:3-11. The models added to Wonderland's infringement contentions are two such models.

Despite its obligation to identify these models, Kids II never informed Wonderland that it released new models in January and March of this year with the accused EXO frame. In fact, Kids II represented just the opposite—that it was discontinuing the accused products. Already, over 7,000 of the new models have been imported into the United States.

As soon as Wonderland learned in late March that Kids II released new models of already accused products, Wonderland brought the issue to Kids II's attention, requesting updated discovery on these models. During the parties' discussions on the new models (Nos. 60343 and 60587), Wonderland never wavered in its assertion that both new models were within the scope of its allegations. In July of this year, Kids II ultimately agreed to provide updated sales data for one model, but maintained that neither were accused products because

1

Wonderland had not formally amended its infringement contentions. On July 27, 2015, Wonderland amended its contentions to specifically name these models.

Kids II exaggerates the impact on the case schedule of adding these models. The new models are updates of already accused products and use the same EXO frame, such that the parties' infringement arguments will not change. Expert reports do not need supplementation, and other than updated financials, no further discovery on how the products operate is needed. Wonderland bears the burden of proving infringement by the new models, and is prepared to meet that burden.

Kids II already agreed to update financials for one of the two new models and contingently agreed to update financials for the other, but only if it begins directly selling that model in the United States. Kids II declined to provide financials for the other model only because it wrongly believes it is not liable for importation or U.S. sales of this model. Kids II's prior positions on infringement belie its assertions of prejudice based on any alleged model differences, as Kids II treated all but two models identically. Prior to this motion, Kids II alleged only one relevant difference for two earlier models, but this difference is not present in the new models.

The only potential prejudice Kids II identifies is that it would have moved for summary judgment of noninfringement for Model No. 60587. *See* Br. at 23.

2

Although Kids II knew Wonderland accused this model of infringement well in advance of the deadline for summary judgment motions, and could have so moved by then, Wonderland would not oppose a request for leave to file such a motion, if Kids II truly wishes to pursue that option.

Kids II's alternative request to supplement invalidity contentions lacks any relation to adding these new models, and instead appears to be simply an improper attempt to redo its invalidity contentions. Unlike adding new models (with no material changes) wherein the arguments will remain unchanged, adding prior art Kids II simply chose to not earlier assert or find *would* result in new positions, responses, and *require* an extensive amount of work by both parties, which Kids II purports to seek to avoid. These references are not newly available as they bear publication dates from 1975 to 2006. *See* Dkt. No. 172-12 at 5; Dkt. No. 172-13 at 5. Kids II states that it learned of these references through *Inter Partes* Review (IPR) proceedings, but the petitions for those IPRs were publicly filed on March 4, 2015. Ex. 13-14.[1] There is no justification for upending this entire process by adding new references Kids II could have identified long ago, regardless of how the Court rules on Wonderland's supplemental infringement contentions.

---

[1] References to Exhibits (e.g., "Ex. __") are to exhibits attached to the supporting Declaration of Roger D. Taylor (Taylor Decl.).

## II.    FACTUAL BACKGROUND

### A.    The Newly Released Models Are the Same as Other Accused "Washable Products" in All Relevant Aspects

Wonderland accuses Kids II's "Washable Products" of infringing claims of U.S. Patent Nos. 6,954,949 and RE43,919 (the '919 patent). *See, e.g.*, Dkt. No. 1 ¶¶ 11, 20 (Complaint). During discovery, Kids II identified five "Washable Products" that use the EXO platform frame (Model Nos. 7066, 60020, 60072, 60282, and 60286). *See, e.g.*, Ex. 1. Wonderland sought documents relating to all "Washable Products," including documents relating to sales and financial forecasts for Washable Products and any similar Kids II playards. *See, e.g.*, Ex. 2 (Nos. 3, 4-10); Ex. 3 (Nos. 43-47). For newly-released Model No. 60587 (Winslow), Kids II provided only a single document referring once to this model, despite these requests. *See* Ex. 4.

In July 2014, Kids II corporate representative (Stephen Burns) testified that the Winslow model (No. 60587) was going to replace the already-accused Emerson model (No. 60286). Dkt. No. 172-5 at 66:12-21; Ex. 5 at 1. The Winslow model would have the same EXO frame but would have an "update[d] fashion" and may have different or additional add-ons not relevant to the claims (e.g., a "napper"). *See id.* at 66:22-67:18. The Winslow model was scheduled to be released in January 2015, *id.* at 67:19-21, but was not actually released until March

4

2015, Dkt. No. 172-2 at ¶ 3. Instead, Kids II explains that a different model was released "at least as early as January, 2015" (No. 60343 (Piper)), *id.* at ¶ 2, which uses the same accused EXO frame (but with a different fashion design).

Kids II never informed Wonderland that it released new models with the accused EXO frame in January and March of 2015. Instead, Kids II served a supplemental damages report in February 2015, stating that it was discontinuing the accused EXO frame products. Ex. 6 at 22. Kids II omitted the fact that, in the interim, new models using the same accused EXO frame would be introduced with "fashion" design-type updates. *See id.*; Dkt. No. 172-5 at 67:3-5 (explaining a model is being replaced because Kids II "update[s the] fashion"). After receiving these statements, Wonderland was surprised to learn in late March that Kids II released new models with the accused EXO frame. Wonderland immediately raised these new models with Kids II. Taylor Decl. ¶ 8; Dkt. No. 172-6.

Over the next several months, the parties discussed whether Kids II would provide discovery on these new models, during which Wonderland offered to limit additional discovery to sales data.[2] *See, e.g.*, Ex. 7; Ex. 8; Dkt. Nos. 172-6 – 172-

---

[2] To the extent Kids II attempts to fault Wonderland for any alleged delays in responding to correspondence (*see* Br. at 8-9 ("Three more weeks passed . . .")), Kids II typically waited the same length of time to respond to Wonderland's correspondence. *See, e.g.*, Dkt. Nos. 172-6 (March 30) and 172-7 (April 22).

10. As a result, Kids II agreed to provide updated sales data for one of the two newly-released models (No. 60343). *See* Dkt. No. 172-9 at 2; Dkt. No. 172-10 at 4 ("Kids II will agree to include sales data on Model No. 60343 when it updates the sales data that it previously provided in this case before any trial."). Kids II, however, stated that it would not provide sales data for the other newly-released model because it claimed Wonderland would not be entitled to damages based on this model. *Id.* at 5. It nonetheless agreed to provide such sales data if Kids II began selling this model (No. 60587) in the United States. *Id.* Publicly available information shows that over 7,000 newly-released models have been imported into the United States to date, representing a significant portion of all accused products (based on the same data).[3] Taylor Decl. ¶ 12; Ex. 9.

To address Kids II's complaint that these were not specifically named, Wonderland served amended infringement contentions on July 27, 2015, naming these models. *See* Dkt. No. 172-11. Wonderland's theory of infringement remains unchanged. *See id.* The amended contentions simply stated that "Models 60343 (Piper) and 60587 (Winslow)[] are substantially the same as the Model 60072, except for color and fabric, which have no bearing on infringement." *Id.* The

---

[3] These numbers are low estimates based on public information available to date.

amended contentions also added Exhibit G, showing the similarity of the EXO frame products, including the new models. Ex. 10.

### B. Expert Reports On Infringement Show That the Parties' Positions on Accused "Washable Products" Are the Same

The parties conducted two rounds of expert reports on infringement with each round consisting of an opening, response, and reply report. The second round of reports were limited "to information contained in the Supplemental Discovery," and thus could not include Kids II's newly-released models. *Compare* Dkt. No. 141 at ¶ 1 (limiting supplemental expert discovery), *with* Br. 15 (suggesting supplemental expert discovery could have covered Model No. 60343). For both rounds of reports, Kids II filed a responsive report on infringement, containing nearly identical arguments for all but two models with EXO frames. *See* Ex. 11 at 2 (explaining that Kids II corporate testimony treated the products the same and that the responsive expert report "has virtually identically and redundantly addressed the issues in contention for all of the" accused products as shown in Ex. B), Ex. 12 at 10, 16-17 (tabulating "identical or nearly so" arguments).

The only distinction among the products Kids II made, prior to this motion, concerns whether they "have an enlarged fitting (aka 'receiver') at the upper ends of two of the outer columns." Dkt. No. 172-11 at 3. But this difference concerns only two earlier models and is not present in the newly-released models. *See id.*

Otherwise, prior to this motion, both parties have not materially distinguished between Kids II Washable Products for purposes of infringement.

> **C.    Kids II Had Numerous Opportunities to Supplement Its Validity Contentions for the '919 Patent With Information From Related IPR Proceedings, But Chose Not To**

Kids II served initial validity contentions on August 23, 2013, identifying several prior art references it contended were relevant for the '919 patent. Taylor Decl. ¶ 16. On June 19, 2014, Kids II served supplemental validity contentions, identifying several more prior art references relating to the '919 patent. *Id.* at ¶ 17. On August 26, 2014, Kids II served an expert report concerning validity, spanning 383 pages, without attachments. *Id.* at ¶ 18. Kids II served a rebuttal expert report on October 16, 2014. *Id.* at ¶ 19. Kids II supplemented this expert report on February 6, 2015, providing further information concerning the '919 patent. *Id.* at ¶ 20. On March 6, 2015, Kids II provided a supplemental rebuttal report concerning validity of the '919 patent. *Id.* at ¶ 21. In over a year and a half, Kids II served six contentions/expert reports addressing the asserted patents validity, including the '919 patent, totaling about 1,212 pages. *Id.* at ¶ 22.

On March 4, 2015, an unrelated party publicly filed two petitions for *Inter Partes* Review of the '919 patent at the United States Patent Office (an administrative process permitting the Patent Office to reconsider a patent's

validity). Ex. 13; Ex. 14. By statute and in practice, IPR petitions are almost immediately publicly available. *See* 35 U.S.C. § 312; Taylor Decl. ¶ 25. The Patent Office decided to institute both petitions on August 4, 2015. Dkt. Nos. 172-12 and 172-13. The petitions identified four prior art references never cited in Kids II's six contentions/expert reports addressing validity of the '919 patent: U.S. Patent Nos. 3,924,280 (dated Dec. 9, 1975); 6,004,182 (dated Dec. 21, 1999); 6,076,448 (dated June 20, 2000); and 7,063,096 (dated June 20, 2006). One of these patents (No. 3,924,280), however, is cited by several prior art references produced in this case. Exs. 15-17.

## III.   ARGUMENT

### A.   This Court's Local Rules Materially Differ With the N.D. of Cal.'s Rules With Respect to Supplementing Contentions

The parties appear to agree that this Court's Patent Local Rules guide whether supplementing contentions is proper. This Court based its Patent Local Rules on those of the Northern District of California. *Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc.*, No. 1:12-CV-3222-AT, 2014 WL 1274003, at *14 n.8 (N.D. Ga. Mar. 17, 2014) (citations omitted). But there are significant differences between the jurisdictions when it comes to supplementing contentions:

| N.D. of Georgia | N.D. of California |
|---|---|
| Each party's Disclosures or Response **shall be supplemented or amended** pursuant to the rules for supplementation and amendment of discovery responses generally provided for **under the Federal Rules of Civil Procedure** (N.D. Ga. Patent L.R. 4-5(b)) | Amendment of the Infringement Contentions or the Invalidity Contentions **may** be made **only by order of the Court** upon a timely showing of **good cause** (N.D. Cal. Patent L.R. 3-6) |

This Court's Patent Local Rules do not require an "order of the Court" and, rather than referring to "good cause," the Rule specifically incorporates the Federal Rules of Civil Procedure. *See Tillotson Corp. v. Shijiazhuang Hongray Plastic Products, Ltd.*, 244 F.R.D. 683, 690 (N.D. Ga. 2007). Under the Federal Rules of Civil Procedure, a party need only supplement its disclosures "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Although the Northern District of California does not contain a similar rule for contentions, the Court nonetheless recognizes "notice can be sufficient for good cause." *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, No. C 05-04158 MHP, 2008 WL 624771, at *3 (N.D. Cal. Mar. 4, 2008).

Because the Federal Rules focus on when a party is notified in writing of the updated information, the diligence inquiry should focus on the period between when Kids II chose to release the new models and when Wonderland notified Kids II in writing. *See* Fed. R. Civ. P. 26(e)(1)(A); *see also Fitness Anywhere LLC*

*v. WOSS Enterprises LLC*, No. 14-cv-01725-BLF (HRL), 2015 WL 3465827, at *1 (N.D. Cal. June 1, 2015).

In assessing diligence, courts also consider a defendant's failure to notify plaintiff of redesigns or updates to the accused products. *See Fitness*, 2015 WL 3465827, at *1-3 (granting motion to amend contentions for redesigned product occurring nine months prior when defendant failed to inform plaintiff of redesign). Not only does a failure to notify the plaintiff of a redesign support diligence, it may lead to sanctions. *See Fitness Anywhere LLC v. Woss Enters. LLC*, No. 14-cv-01725-BLF (HRL), 2015 WL 3640703, at *4 (N.D. Cal. June 11, 2015).

### B.   Wonderland Had to Discover Kids II's Newly-Released Models On Its Own, and Diligently Asserted Infringement

Kids II represents that it released new Model No. 60343 (Piper) sometime in January 2015, and new Model No. 60587 (Winslow) sometime in March 2015. *See* Dkt. No. 172-2 ¶¶ 2-3. Based on an Internet Archive webpage that takes historical snapshots of websites, it appears the Winslow model (No. 60587) was released sometime after March 15, 2015. *Compare* Ex. 18 (showing a snapshot on March 15, 2015 without Winslow model), *with* Ex. 19 (showing an August 22, 2015 printout with Winslow model).[4] Within two weeks of Kids II releasing the

---

[4] The Internet Archive did not record any snapshots in January.

Winslow model (No. 60587), Wonderland discovered it and notified Kids II regarding the same. *See* Dkt. No. 172-6. This is the same model Kids II stated it would release in January. Dkt. No. 172-5 at 67:19-21. At the same time, Wonderland discovered release of the Piper model (No. 60343) in the U.S., which Kids II never told Wonderland it would be releasing in January 2015. *See* Dkt. No. 172-6. Rather than inform Wonderland that it was releasing new models of the accused EXO frame Washable Products, as it should have, Kids II actually informed Wonderland it was *discontinuing* these products. *See, e.g.*, Ex. 6.

Kids II's motion overlooks these statements, contending instead that Wonderland should have discovered a new version of a discontinued product shortly after it was apparently released in January. *See* Br. 15. Not only does this contention disregard Kids II's obligations to notify Wonderland about these new models in response to discovery requests, it makes no sense in light of Kids II's own statements that the product was to be discontinued. Wonderland nonetheless found these new models were available in March, and promptly notified Kids II that two newly-released models also use the "same basic structure" (EXO frame) accused of infringement (a fact Kids II certainly already knew). *See* Dkt. No. 172-6. Courts routinely find diligence when a party seeks to include newly released products shortly after their release, especially when contentions against the new

models "are identical to already-accused products," as here. *E.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. CV 12-00630 LHK, 2012 WL 5632618, at *3 (N.D. Cal. Nov. 15, 2012).

The cases Kids II cite do not hold otherwise because they involve new theories of infringement (or invalidity) and concern delays significantly greater than two weeks to two months. *See* Br. 14-17; *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1367 (Fed. Cir. 2006) (noting plaintiff "had reason to know" of its new infringement theory well over a year before and actually knew of underlying facts "almost three months" before serving amended contentions); *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 508 (N.D. Cal. 2011) (noting, *inter alia*, that plaintiff "could have included [the additional patent claim] at the outset of the litigation" (two years prior) and "still waited more than four months" after a claim construction order to attempt to add the new claim); *My Medical Records, Inc. v. Walgreen Co.*, No. 2:13-cv-00631-ODW (SHx), 2013 U.S. Dist. LEXIS 179945, at *11-12 (N.D. Cal. Dec. 23, 2013) (holding that amendment for "new invalidity arguments" that defendant was aware of since answering the Complaint five months prior precludes diligence).

Conversely, this case is analogous to the *Tillotson* decision Kids II attempts to distinguish. *See* Br. 17. In *Tillotson*, the plaintiff discovered additional products

13

that infringed the asserted patent, which defendant did not disclose. 244 F.R.D. at

690. The plaintiff supplemented its infringement contentions four days later. *Id.*

Similarly, Wonderland discovered the availability of Model No. 60343 (Piper) in

the U.S. in late March, and notified Kids II mere days later. Taylor Decl. ¶ 8.

Wonderland also found and notified Kids II about new Model No. 60587

(Winslow) at the same time, which was within two weeks of its release. *Id.* "That

short amount of time is surely not detrimental to this case," especially because the

infringement contentions remain the same. *See Tillotson*, 244 F.R.D. at 691.

Lastly, publicly available facts contradict Kids II's unsupported argument

that the number of newly-released models is *de minimus*. *See* Br. 21. Since their

release, over 7,000 newly-released models have been imported into the United

States. Taylor Decl. ¶ 12; Ex. 9. Based on the same data, this amounts to a

significant portion of all accused products imported. *See id.* This is in stark contrast

to the case Kids II relies on (Br. 21), wherein "less than 400" of the products at

issue were sold. *See Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, No.

1:05-CV-02482, 2008 U.S. Dist. LEXIS 123217, at *8-9 (N.D. Ga. Aug. 26, 2008).

### C.    Wonderland Timely Amended Its Contentions After Negotiations With Kids II Ceased to Be Productive

After Wonderland notified Kids II in writing that the newly-released models

use the same EXO frame accused of infringement, the parties discussed discovery

14

on these newly-released models. Kids II originally refused to provide any discovery, complaining that Wonderland did not formally amend its infringement contentions. *See* Dkt. No. 172-7. Wonderland explained that its infringement contentions concern the EXO frame products and are not limited to particular models (*i.e.*, with different fabric designs or unrelated features). *See* Ex. 7. Although the parties disagreed with whether the new models were properly accused, the correspondence makes clear that Kids II understood Wonderland to assert infringement over these newly-released models. *See, e.g.*, Dkt. No. 172-10.

During the parties' discussions, Kids II ultimately agreed to provide updated financial information for one of the newly-released models (No. 60343), and did so for settlement discussions. *See* Dkt. No. 172-9 at 3. After further correspondence, Kids II agreed to also provide sales data for the other model (No. 60587) but only if "Kids II, Inc. actually begins selling Model No. 60587 in the United States." Dkt. No. 172-10 at 4. Kids II, however, maintained its position that the newly-released models (*i.e.*, for fashion-type updates) were not properly accused products because Wonderland did not amend its infringement contentions. *See id.* at 3.

Amending the infringement contentions at this point was mere form over substance. *See Bd. of Trustees*, 2008 WL 624771, at *3 ("[T]he court places substance over form to hold that [plaintiff's] overall diligence was not

15

insufficient."). "[A] party is under no duty to formally supplement its [] disclosures with information that has otherwise been made known to the opposing party in discovery." *Hooker v. Fulton Cnty., Georgia*, No. CIVA105CV982GET, 2006 WL 2617142, at *4 (N.D. Ga. Sept. 12, 2006) (citation omitted). Nonetheless, Wonderland amended its infringement contentions to specifically name the newly-released models. *See* Dkt. No. 172-11. Because the new models merely consisted of design-type changes, the substance of Wonderland's infringement contentions remained unchanged—Wonderland maintained the same infringement theories.

Kids II complains that Wonderland waited too long to supplement its contentions (Br. 17), but Wonderland did not believe such supplement was necessary and repeatedly sought to amicably resolve this issue with Kids II. *See, e.g.*, Ex. 7; Ex. 8; Dkt. Nos. 172-6 – 172-10. Regardless, like the plaintiff in *Board of Trustees*, Wonderland "was diligent in notifying and seeking discovery from" Kids II. *See* 2008 WL 624771, at *3. Although this Court's local rules do not require "good cause," such "notice can be sufficient for good cause." *Id.* After all, had Kids II accurately notified Wonderland of the release of new models, Wonderland could have amended earlier. *See Symantec Corp. v. Veeam Corp.*, No. 12-05443, 2013 WL 3490392, at *3 (N.D. Cal. July 11, 2013) (finding diligence

because the delay in amending contentions was caused by the other party's delay in responding to a discovery request).

**D.    Kids II Overstates Alleged Prejudice—Any Actual Prejudice Is Kids II's Own Making**

It is clear now that Kids II strategically released new models of already accused products in the U.S. in January and March of this year, after the close of fact discovery. Because Kids II designs and distributes these products, it certainly knew well in advance that these models contained the same accused EXO frame. And Kids II's objections to Wonderland's definition of "Washable Products" in discovery requests shows that Kids II understood Wonderland to include these new models, which have the same EXO frame in already accused products. *See* Dkt. No. 172-10 (referring to objection); Dkt. No. 172-5 (referring to "fashion" and non-relevant "add-on[]" changes). At the latest, Kids II knew of Wonderland's position on March 30, 2015, when Wonderland notified Kids II of these models. *See* Dkt. No. 172-6. Any alleged prejudice occurring after these dates stems only from Kids II's self-inflicted blindness to the fact that these are accused models.

Kids II even overstates that alleged prejudice, contending additional fact discovery, expert reports and depositions, and dispositive motions would be needed. *See* Br. 19. Kids II also contends that adding these models "would clearly delay the ultimate resolution of this case." *Id.* But tellingly, Kids II "does not

17

specifically explain why the case [] schedule would have to be changed or why additional [expert reports/depositions] would be needed." *See Nuance Commc'ns, Inc. v. ABBYY Software House*, No. C 08-02912 JSW (MEJ), 2012 WL 2427160, at *2 (N.D. Cal. June 26, 2012). Kids II also fails to identify any material differences with these models—because there is none. The differences concern "fashion" updates and/or other irrelevant features "like [a] napper."[5] *See* Dkt. No. 172-5 at 67:3-14. "[Kids II] will not be prejudiced because these differences do not change infringement theories, nor will they require [Kids II] to prepare additional defenses." *See Apple*, 2012 WL 5632618, at *3. Even the Winslow model's packaging identifies it as an "update" for an already accused model. Ex. 5 at 1.

Wonderland already agreed to limit the discovery sought to "sales data," and Kids II agreed to provide this data for one of the two new models (No. 60343). *See* Ex. 8 at 1; Dkt. No. 172-10 at 3. Kids II also agreed to provide sales data for the other new model (No. 60587), if it began selling it in the United States. *See* Dkt.

---

[5] Kids II recently served a belated response to Wonderland's Supplemental Infringement Contentions, asserting several alleged differences in the accused products (not unique to the new models). Ex. 23. But Kids II's self-serving attempt to bolster its summary judgment motions and the present motion is contradicted by its own expert's identical treatment of the models. *See* Part II.B. Tellingly, Kids II still fails to identify *any* material differences specific to the newly-released models. Ex. 23. Instead, Kids II repeats sections of its brief, further illustrating its true motives. *Compare* Br., *with* Ex. 23.

No. 172-10 at 4. The only potential discovery (not already agreed to) concerns whether Kids II is liable for importation and/or U.S. sales of Model No. 60587. Such limited discovery does not weigh against amendment, even if it occurs after summary judgment briefing. *See Seiko Epson Corp. v. Coretronic Corp.*, No. C 06-06946 MHP, 2008 WL 2563383, at *4 (N.D. Cal. June 23, 2008) (permitting amendment for products potentially identical in configuration after summary judgment briefing despite needing limited "damages and infringement" discovery); *see also Bd. of Trustees*, 2008 WL 624771, at *7 ("[T]he need to re-open discovery is not fatal . . . where facts underlying the new claims come to light during discovery and the party seeking amendment plausibly accounts for the delay.").

Kids II's "prejudice, if any, is therefore self-inflicted," because it failed to inform Wonderland when it released these new models. *See Seiko*, 2008 WL 2563383, at *4 ("[Defendant] has not demonstrated how their case strategy would have been different had the [] models in question here been listed in the preliminary infringement contentions."). Kids II should not benefit from its own failure to provide this information to Wonderland. Besides, "it is more efficient to dispose of all the issues amongst a set of parties in one action," rather than require Wonderland to file a separate cause of action on the newly-released models. *See Bd. of Trustees*, 2008 WL 624771, at *4.

19

### E.   Kids II Is Liable for Infringement Based On Model No. 60587 (Winslow)

Kids II seeks to avoid liability for the Winslow model (No. 60587) by claiming Kids II Far East Ltd. makes and sells this model to Babies 'R Us in China. Br. 21-22. Kids II further claims Kids II Far East "is not a wholly-owned subsidiary of Kids II, Inc." Br. 22; Dkt. No. 172-2 ¶ 9. Not only is this statement inconclusive of whether Kids II is responsible for the actions of Kids II Far East,[6]

but █████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

█████ Ex. 20 at 30:12-22. These statements are also contradicted by all of the labeling on a Winslow model (No. 60587) playard sold at Babies 'R Us. There are at least four tags on the product that clearly state that the Winslow model (No. 60587) is "Distributed by Kids II, Inc.":

Distributed by Kids II, Inc.
3333 Piedmont Road
Suite 1800
Atlanta, GA 30305

---

[6] For example, stating that Kids II Far East is not a "wholly-owned subsidiary," does not preclude it from being majority-owned or controlled by Kids II.

Taylor Decl. ¶ 32; Ex. 5 (packaging); Ex. 21 (playard). This distributor

identification is identical with uncontested Model No. 60343. *See* Ex. 22. Despite

this clear evidence and ███████████████████████, Kids II incredibly

asserts it cannot be liable for importation or U.S. sales of this model. Based on the

record evidence and the product labelling, there is more than sufficient evidence to

add the Winslow model as an accused product in this case.

The Court, in deciding this motion, is "not require[d] . . . to analyze the

strength of plaintiff's infringement contentions" even if defendant prematurely

argues "futil[ity]." *See Bd. of Trustees*, 2008 WL 624771, at *4. Rather, "such

arguments regarding the sufficiency of the evidence are more properly made in a

summary judgment motion." *See Symantec*, 2013 WL 3490392, at *2. Wonderland

would not oppose a request by Kids II to file such a motion if it believes such a

motion is justified.[7] Nevertheless, even if the facts are as Kids II alleges, it does

not necessarily follow that Kids II is immune from liability. Kids II may be liable

for inducing such importation and/or U.S. sales of the Winslow model (No.

60587). *See* 35 U.S.C. § 271(a) and (b); *Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d

1151, 1172 (Fed. Cir. 2012) (affirming injunction enjoining party from "from

---

[7] Although, Wonderland should be entitled to limited discovery to at least clarify
the relationship between Kids II and Kids II Far East, in light of ███████████
████████████████████████.

making, using, importing, selling . . . their [accused] products, or *inducing others to do so*" (emphasis added)). In fact, numerous markings on the Winslow model indicate that Kids II specifically designed, tested, and certified this model for importation to and sales in the United States market. Ex. 5 at 2-3; Ex. 21 at 2-14. The Winslow model is even "compliant for formaldehyde Phase 2" specific to "California." *See* Ex. 21 at 13. The registration card included is "For US Residents Only" and lists the manufacturer as Kids II Inc. in Atlanta, GA. *See* Ex. 21 at 7-8. And there is no reference anywhere on the Winslow model to Kids II Far East. Taylor Decl. ¶ 34.

### F.    Kids II Improperly Attempts to Add Prior Art It Failed to Identify Despite Its Public Availability for Years

Kids II contends that "fairness dictates" permitting it to add three new, completely unrelated prior art references into an otherwise complete record on validity simply because Wonderland accuses updated models of already accused products that Kids II released after the close of fact discovery. *See* Br. 24-25. These prior art references have absolutely no relation to updating infringement contentions. Wonderland had no control over the release of these new models, but Kids II did have control over its efforts to identify prior art.

Kids II's delay in identifying these references has nothing to do with Wonderland's amended contentions, but rather is because it either chose not to

22

disclose this prior art or "chose not to do a more comprehensive prior art search earlier in the case." *See MediaTek, Inc. v. Freescale Semiconductor, Inc.*, No. CV 11-5341 YGR (JSC), 2013 WL 5236709, at *5 (N.D. Cal. Sept. 17, 2013). In *MediaTek*, for example, the Northern District of California rejected the defendant's attempt to tie its proposed amended invalidity contentions to plaintiff's amended infringement contentions because its proposed amendments were "unrelated" and defendant was not diligent. *See id.* (identifying prior art "nearly a year after [] initial Invalidity Contentions, and on the eve of the close of fact discovery" was not diligent). This is the same situation.

    Not only does Kids II fail to allege diligence—despite contending it is "quite clear" that the amending party bears the burden (*see* Br. 14)—Kids II also fails to state when it discovered the references. *See* Br. 24. Kids II only refers to discovering them through IPR "proceedings." *Id.* But these proceedings were publicly available over five months before this motion.[8] Exs. 13-14. And unlike the newly-released models of accused products, the new prior art references have been publicly available since at least 2006, and as early as 1975. *See* Dkt. No. 172-13 at 5. One reference was also cited in other patent references produced in this case. Exs. 15-17. Such public availability weighs heavily against any alleged diligence,

---

[8] According to Kids II, public availability means there is "no excuse." Br. 16.

particularly when Kids II fails to provide any explanation for not discovering these references earlier. *See, e.g.*, *SAGE Electrochromics Inc. v. View Inc.*, No. C-12-06441 JST (DMR), 2014 WL 1998049, at *3 (N.D. Cal. May 15, 2014) ("Courts have recognized that it is more difficult to establish diligence when attempting to add prior art references that are publicly available." (citation omitted)).

In the five months since the IPR proceedings were publicly available, Kids II never notified Wonderland that it wished to include these references (whereas Wonderland immediately notified Kids II about the newly-released models). Nor has Kids II notified Wonderland or the Court of which three of the four references it seeks to add, let alone provide proposed amendments. Taylor Decl. ¶ 35. Even if Kids II were to provide such information in its reply brief (improperly), it would not negate the significant prejudice Wonderland would incur.

Amending invalidity contentions at this stage would be highly prejudicial because (1) Kids II's invalidity positions and Wonderland's responses would be entirely new; (2) another round of expert reports and depositions would be needed to discuss the new references; (3) additional dispositive motions may need to be filed. *See, e.g.*, *C & C Jewelry Mfg., Inc. v. W.*, No. 5:09-CV-01303-JF, 2011 WL 835821, at *3 n.3 (N.D. Cal. Mar. 4, 2011) (finding prejudice "from the need to reopen discovery and potentially redepose fact and expert witnesses"). These are

24

the very things Kids II purports to seek to avoid. *See* Br. 19. Yet adding these new references would undoubtedly require these activities as the new references contain disclosures not previously addressed in this case. Conversely, adding newly-released models of already accused products would not require these activities because the parties' contentions would remain the same.

Kids II "falls well short of showing that the [new references] were discovered recently and that [it] exercised diligence in seeking to add them . . . ." *See Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 3443835, at *3 (N.D. Cal. Aug. 8, 2011) (finding no diligence while noting that defendant failed to even state when it discovered some of the references). Rather, Kids II's "amendments are precisely the type of last minute additions the Patent Local Rules were designed to avoid." *MediaTek*, 2013 WL 5236709, at *5 ("Given the passing of the fact discovery deadline, and the upcoming summary judgment deadline, the Court is unpersuaded that [plaintiff] will suffer no prejudice.").

## IV.   CONCLUSION

Wonderland requests the Court to deny Kids II's motion entirely. Wonderland further requests the Court to order Kids II to update sales data for all accused models, including those involving Kids II Far East.

Dated: September 3, 2015

Respectfully submitted,

/s/Shattuck Ely

Shattuck Ely
Georgia Bar No. 246944
tely@fellab.com
225 Peachtree Street, NE
Suite 2300, South Tower
Atlanta, Georgia 30303
Phone: (404) 586-9200
Fax: (404) 586-9201

Roger D. Taylor
roger.taylor@finnegan.com
Georgia Bar No. 342927
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
3500 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3263
Phone: (404) 653-6400
Fax:  (404) 653-6444

Gary C. Ma (admitted *pro hac vice*)
gary.ma@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA 94304-1203
Phone: (650) 849-6600
Fax: (650) 849-6666

David I. Roche (admitted *pro hac vice*)
david.roche@bakermckenzie.com
Shima S. Roy (admitted *pro hac vice*)
shima.roy@bakermckenzie.com
Daniel A. Tallitsch (admitted *pro hac vice*)
daniel.tallitsch@bakermckenzie.com
Baker & McKenzie LLP
300 E. Randolph Street, Suite 5000
Chicago, IL 60601
Phone: (312) 861-8000
Fax: (312) 861-2899

*Attorneys for Plaintiff Wonderland Nurserygoods Co., Ltd.*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1D

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

Signed: September 3, 2015

/s/Shattuck Ely

## CERTIFICATE OF SERVICE

This is to certify that on this day, September 3, 2015, I electronically filed the foregoing using the Court's CM/ECF system, which automatically will send email notification of such filing to the following attorneys of record:

N. Andrew Crain, Esq.
Scott P. Amy, Esq.
Thomas Horstemeyer LLP
400 Interstate North Parkway SE
Suite 1500
Atlanta, GA 30339

Joseph W. Staley, Esq.
Kids II, Inc.
3333 Piedmont Road, NE, #1800
Atlanta, GA 30305
email: joe.staley@kidsii.com

/s/ Shattuck Ely