IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO. LTD.<br><br>    Plaintiff,<br><br>v.<br><br>KIDS II, INC.<br><br>    Defendant. | CIVIL ACTION NO:<br><br>1:13-cv-01114-ELR |

**REPLY MEMORANDUM
OF WONDERLAND NURSERYGOODS CO. LTD.'S
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
OF NO INVALIDITY UNDER 35 U.S.C. § 102(g) BASED ON
<u>AN ALLEGED PRIOR INVENTION BY DAMON TROUTMAN</u>**

# TABLE OF CONTENTS

                                                                                                                                   **Page**

I. INTRODUCTION ...................................................................................... 1

II. ARGUMENT ............................................................................................. 3

    A. Kids II Has Not Met Its Burden of Proving Prior Conception by Clear and Convincing Evidence .......................................................... 3

        1. The September 11, 2003 sketch does not show the inventions of claims 15 and 20 of the '919 patent. ..................... 3

        2. Mr. Troutman admitted that as of September 11, 2003 he was not sure how the fabric of his sketch would be attached, but thought it would wrap around the legs. ................. 5

    B. Troutman's Prototype of December 8, 2003 Does Not Qualify as an Actual Reductions to Practice of the Inventions of Claims 15 and 20 of the '919 Patent ................................................................. 5

    C. Wonderland's November 17, 2003 Disclosure of Its Working Prototypes Pre-date Both of Troutman's 2003 Prototypes ................. 11

    D. Drafting Assistance From Mr. Hartenstine Does Not Make Him An Inventor ...................................................................................... 14

III. CONCLUSION ....................................................................................... 15

## **TABLE OF AUTHORITIES**

Page

**Cases**

*Carr v. Tatangelo*,
    338 F.3d 1259 (11th Cir. 2003) ..................................................................9

*Invitrogen Corp. v. Clontech Labs., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) ..............................................1, 2, 5, 9

*Maytag Corp. v. Electrolux Home Products, Inc.*,
    448 F. Supp. 2d 1034 (N.D. Iowa 2006) ..............................................9

*Price v. Symsek*,
    988 F.2d 1187 (Fed. Cir. 1993) ...............................................10, 11

*Scott v. Edinburg*,
    346 F.3d 752 (7th Cir. 2003) ....................................................................9

*Taurus IP LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013) ...............................................................3

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
    796 F. Supp. 2d 1025 (N.D. Cal. 2011) ..............................................9

**Statutes**

35 U.S.C. § 102(g) .........................................................................1, 11

**Other Authorities**

Federal Rule of Civil Procedure 56 ........................................................9

Local Rule 56.1.B(3)................................................................................1

Rule 26(a)(2) ............................................................................................9

Wonderland Nurserygoods Co., Ltd. ("Wonderland") submits this Reply in response to the Opposition Memorandum of Kids II regarding Wonderland's Motion for Summary Judgment of No Invalidity of the Asserted Claims of U.S. Patent RE43,919 (the "'919 patent") pursuant to 35 U.S.C. § 102(g) based on an alleged prior invention by Damon Troutman. Pursuant to Local Rule 56.1.B(3), Wonderland has submitted a response to Kids II's Statement of Additional Material Facts.

## I.    INTRODUCTION

Kids II does not back away from relying on the ▇▇▇▇▇▇▇▇▇ (Exhibit 2) as Mr. Troutman's date of conception.[1] The insufficiency of that sketch is fatal to Kids II's position. Like a house built on sand instead of rock, Mr. Troutman's September 2003 sketch provides an inadequate foundation for Kids II's entire argument, because that sketch utterly fails to meet the requirements for what a conception must show − the complete invention, *i.e.*, each and every limitation of each asserted claim.

"Conception defines the legally operative *moment* of invention under § 102(g)." *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1063 (Fed. Cir.

---

[1] ("…Mr. Troutman's conception of an exposed tube playard in September, 2003…" Kids II's Brief at p. 11, and "Mr. Troutman had completely conceived the invention of the Asserted Claims at the time of his [September 11, 2003] sketch.…". Def.'s Resp. at p. 22.

2005) (emphasis added). Kids II tries to compensate for the inadequacy of the ▮▮▮▮▮ sketch by arguing that: the "sketch, the playards in his photographs, his assembly instructions, his testimony, his patent application, and his '242 Patent are all evidence of his conception." Kids II's Resp. at p. 20. These events started on ▮▮▮▮▮ and ended on February 23, 2005 (the filing date of Troutman's '242 patent). This is a period of time that is a year-and-a-half in length. This saga does not constitute a "legally operative *moment* of invention" that is prior to Wonderland's date of invention. *Invitrogen*, 429 F.3d at 1063.

The events following the inadequate ▮▮▮▮▮ sketch occurred too late to cure the defective nature of that sketch, because Troutman's ▮▮▮▮▮ prototypes, the prototype of ▮▮▮▮▮ provided by the ▮▮▮▮▮ manufacturer ▮▮▮▮▮, and Troutman's February 23, 2005 patent application, are all dated *after* Wonderland had made a working model in early November of 2003. Kids II's effort to support the ▮▮▮▮▮ with later details is futile. The September sketch completely lacks the foundation needed to establish a conception of the invention of the '919 patent by Mr. Troutman.

Kids II only pays lip service to addressing the question of whether Troutman's December 8, 2003 prototype has all of the limitations of the claims. In particular, neither Kids II nor its expert explains how the ▮▮▮▮▮ prototype meets the following two limitations:

2

>Claim 15: [T]he side panels extending between the upright tubes
>
>Claim 20: [E]ach of the side panels extends generally between two of the support tubes

'919 Patent at Col. 5:19-20 (claim 15) and Col. 6:5-6 (claim 20) (Dkt 152-5). Kids II merely makes reference to a large number of paragraphs from an unsworn expert report, not one sentence of which explains how the above limitations are met. Kids II's Opp. Brf. p. 18-20.

## II. ARGUMENT

### A. Kids II Has Not Met Its Burden of Proving Prior Conception by Clear and Convincing Evidence

#### 1. The September 11, 2003 sketch does not show the inventions of claims 15 and 20 of the '919 patent.

To qualify as a conception of the inventions of claim 15 and 20 of the '919 patent, the conception must be of a device that has **all of the limitations** of the claims. *Taurus IP LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1323 (Fed. Cir. 2013) (a conception must encompass all limitations of the claimed invention).

Kids II continues to rely on the ▬▬▬▬▬▬▬▬▬▬ (Exhibit 2 to his deposition and Exhibit 2 to Wonderland's Mot. for Sum. Judgment (Dkt. No. 151-6 filed under seal) as evidence of Mr. Troutman's conception of the inventions of claim 15 and 20 of the '919 patent. Kids II's attempt to spin the admission by Mr. Troutman that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Exhibit 2 (*i.e.*, ▬▬▬▬

3

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

According to Kids II, the fact that Troutman's ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ means that the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ thus his sketch meets claims 15 and 20 of the '919 patent.

This argument however, does not account for the actual limitations of claim 15 and 20, which call for more than legs that are ▉▉▉▉▉▉▉▉▉▉▉▉. Specifically, the claims have limitations that call for the fabric forming the side panels to be "out of contact" with the outwardly facing surfaces of the corner tubes. The limitations in question are:

> Claim 15: …the side panels extending between the upright tubes substantially ***out of contact with the outside surfaces of outer walls of the upright tubes***,…
>
> Claim 20: …each of the side panels extends generally between two of the support tubes substantially ***out of contact with outwardly facing surfaces of the outer walls thereof***,…

'919 Patent at Col. 5:19-21 (claim 15) and Col. 6:5-7 (claim 20)(Dkt. 152-5) (emphasis added).[2] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Thus, there is simply no genuine dispute that the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ does not have what is required by claims 15 and 20.

---

[2] All exhibit references are to the exhibits attached to Wonderland's Motion for Partial Summary Judgment (Dkt. No. 151-1) unless otherwise indicated.

**2.   Mr. Troutman admitted that as of September 11, 2003 he was not sure how the fabric of his sketch would be attached, but thought it would wrap around the legs.**

"Conception …is the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Invitrogen*, 429 F.3d at 1063.

Mr. Troutman's explanation of his ▌▌▌▌▌▌▌▌▌▌▌ was clear:

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

Deposition of Damon Troutman ("Troutman Dep. Tr.") at 66:13-67:2 (Exhibit 4 - UNDER SEAL).

These admissions establish two important facts, and Kids II does not refute either of them. First, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ he did not have a "definite and permanent idea" sufficient to form a conception. Second, his statement ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ confirms that whatever conception he had, it was not "the complete and operative invention" as set forth in claims 15 and 20, both of which require the fabric to be "out of contact" with the tubes at the corner of the playard.

**B.   Troutman's Prototype of ▌▌▌▌▌▌▌▌ Does Not Qualify as an Actual Reductions to Practice of the Inventions of Claims 15 and 20 of the '919 Patent**

Troutman's ▌▌▌▌▌▌▌▌▌▌▌▌▌▌ was depicted in the photograph

5

marked as Troutman Deposition 7 (also Ex. 7 to Wonderland's Mot. for Sum. Judgment (Dkt. No.)). In its Opening Brief, Wonderland pointed to two particular limitations (one in each of claims 15 and 20) that are not met by the December 8, 2003 prototype. Dkt. No. 151-2 at pp. 12-15. The two limitations define how the edges of the side panels extend from the corner tubes. In particular, Wonderland identified the following two limitations as being absent from the Troutman December 8, 2003 prototype:

> Claim 15: … the side panels extending between the upright tubes…
>
> Claim 20: … each of the side panels extends generally between two of the support tubes…

'919 Patent at Col. 5:19-20 (claim 15) and Col. 6:5-6 (claim 20) (Dkt 152-5).

In response, Kids II directs the Court to "SAMF ¶ 45", which in turn refers to the initial and reply reports of its expert, Dr. Singhose (i.e., Kids II Exhibit 10, Par. 437-464, and Kids II Exhibit 11, Par. 278-296). According to Kids II, the cited paragraphs of Dr. Singhose's report compare the entirety of claims 15 and 20 to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. However, a close look at the reports of Dr. Singhose, shows that Dr. Singhose *ignored* the limitations identified above that require the panels to extend between the corner tubes. Dr. Singhose never addresses the question of whether the side panels actually extend between uprights. Dr. Singhose's discussion of claim 20 is excerpted below:

6

> **Claim 20 element 5:** *"whereby the side panels surround an enclosed space, and each of the side panels extends generally between two of the support tubes substantially out of contact with outwardly facing surfaces of the outer walls thereof, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member.*
>
> 457. Based on my review of the materials, it is my opinion that the fabric soft goods, identified as an "enclosure member" in Singhose Fig. 126, surround "an enclosure space," as recited in element 5.
>
> 458. Mr. Troutman also agreed during his testimony that, as illustrated in Singhose Fig. 126, the support tubes are exposed in the playard prototype. (Troutman Dep. 96:15-17). Therefore, because the support tubes are exposed on the outside, it is my opinion that the side panels extend between the support tubes "substantially out of contact with the outside surfaces of the outer walls thereof," as recited by element 5 of Claim 20.
>
> 459. Accordingly, it is my opinion that Mr. Troutman's exposed tube playard prototype discloses every element of Claim 20 of the '919 patent.

Ex. 10 to Kids II's Resp. at ¶¶ 457-59 (yellow highlighting added). Dr. Singhose does not say anything about the highlighted limitation. He did a similar "dodge" of the issue in his discussion of the nearly identical limitation in claim 15. *Id.* at ¶¶ 442-49.

Exhibit 11 to Kids II's Response, (Dr. Singhose's Rebuttal Report), Dr. Singhose also avoids discussion of the limitation about the panels extending from the corner tubes:

7

**Claim 15 element 4:** *"a plurality of positioning posts provided on the enclosure member at locations corresponding to the edge portions of the enclosure member, wherein the positioning posts are lodged inside the upright tubes,* ==the side panels extending between the upright tubes== *substantially out of contact with the outside surfaces of outer walls of the upright tubes, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member."*



*Id.* at ¶ 290 (yellow highlighting added).

With regard to claim 20, Dr. Singhose's Rebuttal Report contains no discussion of the limitation that Wonderland flagged in its Opening Brief as a basis for the December 8, 2003 prototype not meeting the claims:

**Claim 20 element 5:** *"whereby the side panels surround an enclosed space, and* ==each of the side panels extends generally between two of the support tubes== *substantially out of contact with outwardly facing surfaces of the outer walls thereof, such that the outwardly facing surface of each of the upright tubes is exposed on an outside of the enclosure member.*



*Id.* at ¶ 294 (yellow highlighting added).

Thus, Kids II apparently was hoping that the Court would not actually sift through the 27 paragraphs of Exhibit 10 and 18 paragraphs of Exhibit 11 it cites as refuting Wonderland's assertion about the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ not meeting the claims. However, a review of those portion of Dr. Singhose's reports shows that there is no refutation, at all, with respect to the particular limitations of claim 15 and 20 that Wonderland alleges are absent from the December 8, 2003 prototype.[3]

The Federal Circuit has long held "wholly conclusory assertions on a legal issue cannot carry [a party's] burden on summary judgment." *Invitrogen*, 429 F.3d at 1068 (Fed. Cir. 2005), *citing Biotec Biologische Naturverpackungen GmbH &*

---

[3] It is worth noting that Dr. Singhose's reports are unsworn. Under Eleventh Circuit law, is it improper for a Court to consider them in ruling on summary judgment. *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003) (unsworn expert's report was properly not considered by district judge in ruling on summary judgment motions). The same is true in several other Circuits. See *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025, 1038-39 (N.D. Cal. 2011) (unsworn expert reports prepared in compliance with Rule 26(a)(2) are not affidavits or depositions, or otherwise admissible evidence, for the purpose of ruling on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.); *Maytag Corp. v. Electrolux Home Products, Inc.*, 448 F. Supp. 2d 1034, 1064 (N.D. Iowa 2006) (in this patent infringement case, court held that an unsworn expert report may only be considered by the court on summary judgment with authentication or verification of the report by affidavit or deposition testimony); and *Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003) ("[The expert's] report was introduced into the record without any supporting affidavit verifying its authenticity and is therefore inadmissible and cannot be considered for purposes of summary judgment.")

*Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001). Kids II's assertions (directing the Court to its Exhibits 10 and 11) regarding the requirement that the panels extend between the corner tubes are not merely conclusory, they do not even address those limitations. Thus, because the December 8, 2003 prototype does not have all of the limitations of claims 15 and 20, that prototype is not a reduction to practice or a conception of the invention of those claims.

Thus, Kids II cannot rely on either the ▮▮▮▮▮▮▮▮▮▮ or the ▮▮▮▮▮▮▮▮▮▮ as either a conception or a reduction to practice, because both of these are deficient when it comes to a fundamental requirement, *i.e.*, having ***all*** of the limitations of claims 15 and 20.

This leaves Kids II in the hopeless predicament of having to rely on the January 14 and January 26, 2004 photographs of the ▮▮▮▮▮▮ received from ▮▮▮. However, in order to rely on the ▮▮▮▮▮▮, Kids II must show a conception that is earlier than Wonderland's invention date and that meets all the limitations of the claims. Kids II has not done that. Kids II cannot legally rely on a reduction to practice that comes after Wonderland's invention date (either its November 17, 2003 of making a working sample or its effective filing date of January 4, 2004), unless it can show a conception by Mr. Troutman that pre-dates Wonderland's invention. *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993).

As Kids II acknowledged: "Priority goes to . . . the first to conceive the invention and that it exercised reasonable diligence in later reducing that invention to practice" *Id.* Establishing a prior conception (by clear and convincing evidence) is the an essential first step in proving a defense based on prior invention under Section 102(g). Kids II fails to make that first step.

### C. Wonderland's November 17, 2003 Disclosure of Its Working Prototypes Pre-date Both of Troutman's 2003 Prototypes

As noted above, Troutman's ▮▮▮▮▮ does not show all the limitations of claims 15 and 20 of the '919 patent, and the ▮▮▮▮▮ did not have all the limitations claims 15 and 20 of the '919 patent. Thus, Kids II has failed to show any evidence of a *complete* conception (all limitations) or a *complete* reduction to practice (all limitations) by Troutman (or anyone working with Troutman) in 2003. This means that Wonderland does not need to show a date of invention any earlier than its priority filing date of January 4, 2004.

However, if the Court deems that there is any doubt about Kids II's failure, and finds a genuine dispute of fact about whether the ▮▮▮▮▮ meets the limitations of clams 15 and 20, Wonderland believes that the Court should still rule in Wonderland's favor on the its Motion for Partial Summary Judgment. This is because there is simply no genuine dispute that the November 17, 2003 email (with photos attached) shows a complete working sample of a playard that

11

embodies the claims of the '919 patent. Wonderland's Ms. Renee Wang testified, under oath, at her deposition that Wonderland had completed a working prototype of the '919 as of November 17, 2003. Kids II's only basis for contending that Wonderland cannot rely on the November 17, 2003 samples is the photos don't show a "positioning post".

Obviously, positioning posts are hidden from view in the photos, but there can be no genuine dispute that the fabric is held in place by such posts, just as is shown in Figure 5 of the '919 patent. Ms. Wang explained the fabric attachment technique in her deposition:



Deposition of Renee Wang ("Wang Dep. Tr.") at 20:7-19 (Wonderland's Exh. 5 -

12

filed under seal). Referring to specifically to Deposition Exhibit 17,[4] Ms. Wang explained:



Wang Dep. Tr. at 219:3-12 (Wonderland's Exh. 5 - filed under seal).



Exhibit 12 (p. 11)  Exhibit 12 (p. 10)

---

[4] That Exhibit 17 is attached as Exhibit 12 to Wonderland's Mot. for Summary Judgment (filed under seal).

13



| Exhibit 12 (p. 19) | Figure 5 of the '919 patent (Exhibit 3) |

The photos of Exhibit 12 (the November 17, 2003 email and attachments), along with Ms. Wang's sworn testimony explaining what the photos show, leave no room for genuine doubt about the date of invention by Wonderland; the invention was completed as of November 17, 2003. Thus, even if the Court finds that Mr. Troutman's ███████████████ is has all the features of claims 15 and 20 (which Wonderland vigorously disputes), Wonderland's earlier date of invention means that there is no basis for denying Wonderland's motion.

### D. Drafting Assistance From Mr. Hartenstine Does Not Make Him An Inventor

At the end of Kids II's Response, it raises a red herring, arguing that Mr. Hartenstine's creation of a CAD (computer aided design) drawing of a tube of the kind used in the invention shows that he might be a co-inventor. However, Kids II left out a key exchange from the deposition of Mr. Hartenstine in which he testified unequivocally, that the design in question came from Wonderland. Referring to the invention of the '919 patent, Mr. Hartenstine said that the idea of making an

exposed tube playard came from Wonderland. Deposition of Curt Hartenstine at p. 56:9-11 (Ex. 16 - newly added with this Reply).

Thus, the very unlikely possibility (flatly denied by Mr. Hartenstine) that someone other than the named inventor, Mr. Chen, contributed to the invention provides no basis for denying the instant motion. The unassailable facts are: 1) that the subject matter of claims 15 and 20 of the '919 patent was invented by someone at Wonderland (and there is a presumption that Mr. Chen as the named inventor did so), and 2) the invention was completed at least as early as November 17, 2003, and 3) Wonderland filed application for patent establishing a date of invention on January 4, 2004. These dates are both early enough to provide a basis for granting Wonderland's motion, because Kids II and Mr. Troutman cannot beat either of them.

## III.  CONCLUSION

For the foregoing reasons, Wonderland Nurserygoods Co. Ltd. respectfully requests that this Court grant summary judgment of no invalidity based on the work of Damon Troutman and award any other relief that it deems just and equitable.

September 3, 2015

/s/ David I. Roche
David I. Roche (admitted *pro hac vice*)

Shattuck Ely
GA Bar No. 246944
tely@fellab.com
225 Peachtree Street, NE
Suite 2300, South Tower
Atlanta, Georgia 30303
Phone: (404) 586-9200
Fax: (404) 586-9201

David.Roche@bakermckenzie.com
Baker & McKenzie LLP
300 E. Randolph Street, Suite 5000
Chicago, IL 60601
Phone: (312) 861-8608
Fax: (312) 698-2363

*Attorneys for Plaintiff Wonderland Nurserygoods Co., Ltd.*

| **Exhibit List** | |
|---|---|
| Exhibit 16: | Excerpts from Deposition of C. Hartenstine |

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1D

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

Signed: September 3, 2015

/s/ David I. Roche
David I. Roche (admitted *pro hac vice*)
David.Roche@bakermckenzie.com
Baker & McKenzie LLP
*Attorneys for Plaintiff Wonderland Nurserygoods Co., Ltd.*

## CERTIFICATE OF SERVICE

This is to certify that on this day, September 3, 2015, I electronically filed the foregoing using the Court's CM/ECF system, which automatically will send email notification of such filing to the following attorneys of record:

> N. Andrew Crain, Esq.
> Scott P. Amy, Esq.
> Thomas Horstemeyer LLP
> 400 Interstate North Parkway SE
> Suite 1500
> Atlanta, GA 30339

I further certify that I have this day served a true and correct copy of the foregoing by email to:

> Joseph W. Staley, Esq.
> Kids II, Inc.
> 3333 Piedmont Road, NE, #1800
> Atlanta, GA 30305
> email: joe.staley@kidsii.com

>> /s/ David I. Roche
>> David I. Roche (admitted *pro hac vice*)
>> David.Roche@bakermckenzie.com
>> Baker & McKenzie LLP
>> *Attorneys for Plaintiff Wonderland Nurserygoods Co., Ltd.*