IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO. LTD. <br><br> Plaintiff, <br><br> v. <br><br> KIDS II, INC. <br><br> Defendant. | CIVIL ACTION NO: <br><br><br> 1:13-cv-01114-ELR |

**WONDERLAND'S RESPONSES AND OBJECTIONS
TO KIDS II'S STATEMENT OF ADDITIONAL MATERIAL
FACTS IN OPPOSITION TO
WONDERLAND'S MOTION FOR SUMMARY
JUDGMENT OF NO INVALIDITY UNDER 35 U.S.C § 102(g) BASED ON
PRIOR INVENTION BY DAMON TROUTMAN**

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule

56.1(B)(3), Plaintiff, Wonderland Nurserygoods Co. Ltd. ("Wonderland") files

these Responses and Objections to Kids II's Statement of Additional Material

Facts in Opposition to Wonderland's Motion for Summary Judgment of No

Invalidity Under 35 U.S.C. § 102(g) Based on Prior Invention by Damon

Troutman (Dkt. No. 151):

1.     U.S. Patent No. RE43,919 ("the '919 Patent") was filed on October 26, 2006 as a reissue of U.S. Patent No. 6,859,957, is titled "Baby Crib," lists Mr.Chen as its sole inventor, and was issued on January 15, 2013. (Ex. 1, p. 1, Bibliographic Data (10, 22, 64, 54, 45, 12)).

**RESPONSE:**  Admitted.

2.     Among Claims 15, 19-21, and 27-29 ("the Asserted Claims") of the '919 Patent, Claims 15 and 20 are the two independent claims. (Ex. 1, 5:6-6:41).

**RESPONSE:**  Admitted.

3.     Claim 15 of the '919 patent states:

> 15. A baby crib comprising:
> a plurality of upright tubes defining corners of the baby
>     crib, wherein each of the upright tubes has an outer wall
>     that defines an outer contour shape of the upright tube;
>     and
> an enclosure member including a plurality of side panels
>     contiguously connected to one another along edge por-
>     tions and surrounding an enclosed space adapted for
>     receiving a baby therein; and
> a plurality of positioning posts provided on the enclosure
>     member at locations corresponding to the edge portions
>     of the enclosure member, wherein the positioning posts
>     are lodged inside the upright tubes, the side panels
>     extending between the upright tubes substantially out of
>     contact with the outside surfaces of outer walls of the
>     upright tubes, such that the outwardly facing surface of
>     each of the upright tubes is exposed on an outside of the
>     enclosure member.

(Ex. 1, 5:6-24).

**RESPONSE:**  Admitted.


4.      Claim 20 of the '919 patent states:

> 20. A baby crib comprising:
> a frame structure including a plurality of support tubes,
>     wherein each of the support tubes has an outer wall that
>     defines an outer contour shape of the upright tube;
> an enclosure member including a plurality of side panels
>     having edge portions; and
> an attachment structure configured to mount and secure
>     the edge portions of the enclosure member along the
>     support tubes,
> whereby the side panels surround an enclosed space, and
>     each of the side panels extends generally between two of
>     the support tubes substantially out of contact with out-
>     wardly facing surfaces of the outer walls thereof, such
>     that the outwardly facing surface of each of the upright
>     tubes is exposed on an outside of the enclosure member.

(Ex. 1, 5:37-6:8).


**RESPONSE:**  Admitted.


5.      Mr. Damon Troutman was employed by Kolkraft Enterprises, Inc.,

("Kolcraft") ████████████████████████████████████████

████████████████████. (Ex. 2, 9:23-13:14).


**RESPONSE:**  Admitted, but the Fact is Not Material.


6.      Mr. Troutman is listed as the sole inventor of U.S. Patent No.

7,568,242 ("the '242 Patent"), titled "Play Yards and Methods of Operating the

Same" and originally assigned to Kolcraft. (Ex. 3, p. 1, Bibliographic Data (12, 10

54, 73)).

      **RESPONSE:**  Admitted, but the Fact is Not Material.

    7.    Referring to the '242 Patent, Mr. Troutman testified as follows:



(Ex. 2, 22:23-23:21).

**RESPONSE:**  Admitted that the testimony was accurately transcribed, but the Fact is Not Material, and the truth of the statement is denied.

      8.      Referring to the '242 Patent, Mr. Troutman testified as follows:



(Ex. 2, 33:4-11).

**RESPONSE:**  Admitted that the testimony was accurately transcribed, but the Fact is Not Material, and the truth of the statement is denied.

      9.    Figure 14 of the '242 Patent is reproduced below:



(Ex. 3, Figure 14).

**RESPONSE:**  Admitted, but the Fact is Not Material, because the '242 patent is not prior art, having not been applied for until February 23, 2005, which is over a year after Wonderland's priority filing date, and is therefore not relevant.

10.   Figure 5 of the '919 Patent is reproduced below:



FIG. 5 (Amended)

- 6 -

(Ex. 1, Figure 5).

      **RESPONSE:**  Admitted.

      11. Mr. Troutman testified as follows:



(Ex. 2, 43:6-11).

      **RESPONSE:**   Admitted that the testimony was given, but denied that the

Fact is Material, because when ███████████████████████████████████

████████████████ does not mean that the fabric enclosure is out of contact with

the outwardly facing surfaces of the legs of a playard. Troutman Dep. Tr. (Ex. 4) at

66:13-19.

      12.   Mr. Troutman testified that ███████████████████████████████

████████████████████████████████████████████████████████. (Ex. 2,

47:3-9).

**RESPONSE:**  Admitted, but the Fact is Not Material, because only one such sketch is relied upon by Kids II.

13.    Mr. Troutman testified as follows:



(Ex. 2, 55:4-17).

**RESPONSE:** Admitted that the testimony was given, but denied that the Fact is Material, because the drawing does not show the invention of any claim of the '919 patent.  See Troutman Dep. Tr. (Ex. 4) at 66:13-19.

14.    As verified by Mr. Troutman, during his August 17, 2014, deposition, the sketch marked Exhibit 2 during his deposition was prepared ▮▮▮▮▮▮ ▮▮▮. (Ex. 2, 64:16-19).

**RESPONSE:** Admitted that the testimony was given, but denied that the Fact is Material, because the drawing of Exhibit 2 does not show the invention of any claim of the '919 patent for at least the reason that the outwardly facing surfaces of the legs are not out of contact with the enclosure. See Troutman Dep. Tr. (Ex. 4) at 66:13-19.

15. Mr. Troutman testified as follows:



(Ex. 2, 71:10-19).

**RESPONSE:** Admitted that the testimony was given, but denied that the Fact is Material, because the sketch does not show the invention of any claim of the '919 patent for at least the reason that the ███████████████ ████████████████████████. See Troutman Dep. Tr. (Ex. 4) at 66:13-19.

16. Mr. Troutman's ███████████████ (Ex. 4), presented as Exhibit

2 during Mr. Troutman's deposition, is reproduced below:



(Ex. 2, 55:4-17; Ex. 4).

**RESPONSE:**  Admitted, but the Fact is Not Material, because the sketch

does not show the invention of any claim of the '919 patent for at least the reason

that ████████████████████████████████████

███████. See Troutman Dep. Tr. (Ex. 4) at 66:13-19.

17.    Mr. Troutman's development included the creation of a playard

shown in a photograph dated ███████████ (Ex. 5), presented as Exhibit 6

during Mr. Troutman's deposition. (Ex. 2, 75:14-76:8, Ex. 5).

**RESPONSE:**  Denied, because the device in the photo is not a playard, due

to the fact that it has no enclosure member.

18.    The photograph of Mr. Troutman's playard dated ██████████

(Ex. 5), is reproduced below:



(Ex. 2, 75:14-76:8; Ex. 5).

**RESPONSE:**  Denied, because the device in the photo is not a playard, due

to the fact that ███████████.

19.    Mr. Troutman's development included the creation of a playard

shown in a photograph dated ████████ (Ex. 6), presented as Exhibit 7

during Mr. Troutman's deposition. (Ex. 2, 93:13-17, Ex. 6).

**RESPONSE:**  Denied, because the device in the photo is not a playard, due to the fact that ███████████████████, and denied because it is not clear what the term " Mr. Troutman's development" means, and in particular whether that development includes design work done by one or more suppliers to Kolcraft.

20.     The photograph of Mr. Troutman's playard dated ████████████ (Ex. 6), is reproduced below:



(Ex. 2, 93:13-17; Ex. 6).

**RESPONSE:**  Denied, because the device in the photo is ██████████████ called a playard, which Troutman admitted when he described the prototype shown in Exhibit 7 as ████████████████████████████ Ex. 8 at

KOL000063.  Also, Deined because the device was too fragile to qualify as a

playard because Troutman included a note with the prototype shown in Exhibit 7

███████████████████████████████████████████████████

███████████████████████████  Ex. 8 at 000067.

21.    Mr. Troutman's development included the creation of a playard

shown in at least one photograph dated ███████████ (Ex. 7), presented as

Exhibit 10 during Mr. Troutman's deposition. (Ex. 2, 115: 25-116:7, Ex. 7).

**RESPONSE:**  Denied, because the device in the photo is not a playard, due

to the fact that ██████████████████, and denied because it is not clear what

the term "Mr. Troutman's development" means, and in particular whether that

development includes design work done by one or more suppliers to Kolcraft.

22.    A photograph of Mr. Troutman's playard dated ████████████ (Ex.

7), is reproduced below:



(Ex. 2, 115: 25-116:7; Ex. 7).

**RESPONSE:** Denied, because the device in the photo is not a playard, due to the fact that ███████████████████. Also denied because the device was not "Mr. Troutman's", since it was sent to him by ███████████ Troutman Dep. Tr. (Ex. 4) at 116:1-18; Ex. 10.

23.    Mr. Troutman's development included the creation of a playard shown in at least one photograph dated January 26, 2004 (Ex. 8), presented as Exhibit 11 during Mr. Troutman's deposition. (Ex. 2, 118:6-11, 124: 23-35, Ex. 8).

**RESPONSE:**   Denied, because it is not clear what the term " Mr. Troutman's development" means, and in particular whether that development includes design work done by one or more suppliers to Kolcraft.

Also denied because when asked if he prepared the drawings in the document that was attached as Exhibit 9 to his deposition:

> I don't believe -- I don't believe I did, at least not the entirety of the document. I may have had something to do with the drawings in figures two and three, but I can't say for sure the author of these drawings. They're kind of generic.

Troutman Dep. Tr. (Ex. 4) at 109:20-25.

Also, denied because when asked if "photo 2" in Exhibit 9 at KOL000304 was "an accurate representation of a design he created at Kolkraft," Troutman responded: "I don't know." Troutman Dep. Tr. (Ex. 4) at 111:16-23.

Also, denied because asked if the design in Figure 14 of the '242 patent, Troutman testified that "I can't say that that is my design". Troutman Dep. Tr. (Ex. 4) at 112:22-113:16.

24.   The photograph of Mr. Troutman's playard dated January 26, 2004 (Ex. 8), is reproduced below:



(Ex. 2, 118:6-11, 124: 23-35; Ex. 8).

**RESPONSE:**  Denied, because the playard was not Mr. Troutman's, but was sent to Kolcraft by a supplier. Troutman Dep. Tr. (Ex. 4) at 116:1-18; Ex. 10.

Also denied because when asked if he prepared the drawings in the document that was attached as Exhibit 9 to his deposition:

> I don't believe -- I don't believe I did, at least not the entirety of the document.  I may have had something to do with the drawings in figures two and three, but I can't say for sure the author of these drawings. They're kind of generic.

Troutman Dep. Tr. (Ex. 4) at 109:20-25.

Also, denied because when asked if "photo 2" in Exhibit 9 at KOL000304 was "an accurate representation of a design he created at Kolkraft," Troutman responded: ▇▇▇▇▇▇▇▇ Troutman Dep. Tr. (Ex. 4) at 111:16-23.

Also, denied because asked if the design in Figure 14 of the '242 patent, Troutman testified that ▇▇▇▇▇▇▇▇▇▇▇▇ Troutman Dep. Tr. (Ex. 4) at 112:22-113:16.

25.    Mr. Troutman testified as follows:



(Ex. 2, 74:14-24).

**RESPONSE:**   Admitted that the statement was made, but denied that it is material or true, because Exhibit 6 bears little resemblance to Exhibit 2.

26.   Mr. Troutman testified as follows:



(Ex. 2, 91:16-24).

**RESPONSE:** Admitted that the statement was made, but denied that it is material or true, because the meaning of the term "an evolution of" is not clear.

27.   Mr. Troutman testified as follows:



(Ex. 2, 118:9-18).

**RESPONSE:** Admitted that the testimony was given, but denied that the fact is material, because when asked if he prepared the drawings in the document that was attached as Exhibit 9 to his deposition:



Troutman Dep. Tr. (Ex. 4) at 109:20-25.

Also, denied because when asked if "photo 2" in Exhibit 9 at KOL000304

was ███████████████████████████████████████████

███████████████████   Troutman Dep. Tr. (Ex. 4) at 111:16-23.

Also, denied because asked if the design in Figure 14 of the '242 patent,

Troutman testified that ████████████████████. Troutman Dep. Tr. (Ex.

4) at 112:22-113:16.

28.   Mr. Troutman testified as follows:



(Ex. 2, 119:15-21).

**RESPONSE:**  Admitted that the testimony was given, but Wonderland

objects (and did object at the time) to the question as suggesting the answer, and

therefore being leading.   Denied that the statement is material, because it

inadmissible as an answer to a leading question, and because it is unknown what is

meant by "sort of the culmination of what started with what was shown in Exhibit

2."

29.   Mr. Troutman testified as follows:



(Ex. 2, 133:21-25).

**RESPONSE:**   Admitted that the testimony was given, but Wonderland objects to the question as suggesting the answer, and therefore being leading. Denied that the statement is material, because it inadmissible as an answer to a leading question, and because when asked if he prepared the drawings in the document that was attached as Exhibit 9 to his deposition:



Troutman Dep. Tr. (Ex. 4) at 109:20-25.

Also, denied because when asked if "photo 2" in Exhibit 9 at KOL000304 was ████████████████████████████████████████ ████████████████████ Troutman Dep. Tr. (Ex. 4) at 111:16-23.

Also, denied because asked if the design in Figure 14 of the '242 patent, Troutman testified that ███████████████████████ Troutman Dep. Tr. (Ex. 4) at 112:22-113:16.

- 20 -

30.   Mr. Troutman testified as follows:



(Ex. 2, 69:15-25).

**RESPONSE:**  Admitted that the testimony was given, but denied that the

statement is true, because no CAD drawings were presented to Mr. Troutman at his

deposition,  and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ bear little resemblance to either Exhibit 2, or to the prototype

▮▮▮▮▮▮▮▮ (Exhibits 10 and 11).

31. Mr. Troutman testified as follows:



(Ex. 2, 20:1-14).

**RESPONSE:** Admitted that the testimony was given, but denied that the statement is true, because no CAD drawings were presented to Mr. Troutman at his deposition, and the ███████████████████ (Exhibit 7) that were ████████████████████████████████████████ ███████████ (Exhibits 10 and 11).

32.    On December 12, 2003, Mr. Troutman prepared instructions (Ex. 9), presented as Exhibit 8 during his deposition, ████████████████████ ███████████, photograph. (Ex. 2, 97:5-14, 98:13-24; Ex. 9).

**RESPONSE:** Denied because the device in the photo (Dep. Exh. 8) is too fragile to be called a playard, which Troutman admitted when he described the

prototype shown in Dep. Exhibit 7 as ███████████████████████████

███████████   Ex. 8 at KOL000063.  Also, the fact is not material because the

device was too fragile to qualify as a playard because Troutman included a note

with the prototype shown in Exhibit 7 ████████████████████████████:

████████████████████████████████████████

Ex. 8 at 000067.

  33.   Mr. Troutman testified as follows:



(Ex. 2, 105:5-25).

  **RESPONSE:**  Admitted that the testimony was given, but denied that the

statement is material because the device in the photo (Dep. Exh. 8) is too fragile to

be called a playard, which Troutman admitted when he described the prototype

shown in Dep. Exhibit 7 as ███████████████████████████████████

███  Ex. 8 at KOL000063.  Also, the fact is not material because the device was

too fragile to qualify as a playard because Troutman included a note with the

prototype shown in Exhibit 7 ████████████████████████████████

████████████████████████████████████████████ Ex. 8 at

000067.

        34. Mr. Troutman testified as follows:



(Ex. 2, 106:10-23).

        **RESPONSE:**  Admitted that the testimony was given, but denied that the

statement is material

35.   Mr. Troutman testified as follows:



(Ex. 2, 112:22-113:19).

**RESPONSE:**  Admitted that the testimony was given, as shown.

36. Mr. Troutman testified as follows:



(Ex. 2, 40:9-14).

**RESPONSE:**  Admitted that the testimony was given, as shown, but denied

that the statement is true, because there is no evidence of ██████████████

mentioned.

37.   Kids II's expert, Dr. Singhose, provided his full analysis and

conclusion that the playard shown in the ████████████████ photographs

anticipates every limitation of the Asserted Claims. (Ex. 10, ¶¶ 465-497; Ex. 11, ¶¶

300-301).

**RESPONSE:**  Denied, and objected to because the fact fails to comply with

the provisions of Local Rule 56.1 B.(1) for the reasons that: (i) it is argument, not

fact; (ii) it is a series of argumentative facts; (iii) it relies on, and cites, the opinion

and/or argument of Defendant's expert, William Singhose, as undisputed fact; and

(iv) it is stated as a legal conclusion.  The conclusions stated in Dr. Singhose's

report are opinion, not fact. It s denied that the photos "anticipate" the claims,

because the photos are dated **after** Wonderland's priority date and therefore cannot

anticipate.  The proposed fact fails to comply with the provisions of L.R. 56.1

B.(1) because it is stated as a legal conclusion.

   38.   Mr. Troutman testified as follows:



(Ex. 2, 119:3-14).

   **RESPONSE:**  Admitted that the testimony was given, as shown, but denied

that the statement is true or material, because Mr. Troutman ███████████████

███████████████████████████████████.  Troutman Dep. Tr. (Ex. 4)

at 112:22-113:16.  Also, the truth of this statement is denied, because when asked

about development of the extruded tube with internal track, he answered:  █████

████████████████████████████████████████████████████

Troutman Dep. Tr. (Ex. 4) at 128:16-129:1.

39.     Mr. Troutman ████████████████████████████

███████████████████████████████████████████.” (Ex. 2,

78:24-79:2).

**RESPONSE:**  Admitted that the testimony was given, but denied that the

fact is material, because when Mr. Troutman █████████████████

████████████████████████████████████████████████

█████████████████████████████. Troutman Dep. Tr. (Ex. 4) at

66:13-19.

40.     Mr. Troutman ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████. (Ex. 2,

80:6-24, 81:17-22).

**RESPONSE:**  Denied because the fact fails to comply with the provisions

of L.R. 56.1 b.(1), since the evidence does not fully support the fact, and in fact

evidence directly refutes the fact.  Mr. Troutman ████████████████.

Kids II's Ex. 2, 80:23.

41.    Mr. Troutman ███████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████. (Ex. 2,

81:23-82:4).

**RESPONSE:**  Denied because the fact fails to comply with the provisions

of L.R. 56.1 b.(1), since the evidence does not fully support the fact, and in fact

evidence directly refutes the fact.  Mr. Troutman ████████████████████.

Kids II's Ex. 2, 80:23.

42.    Wonderland states that two emails (and their attachments) dated

November 17, 2003 (*i.e.*, WL-K2_001699-1701 and WL-K2_001702-1716) show

that Mr. Chen's conception and reduction to practice of the inventions of the

Asserted Claims had occurred at least as early as November 17, 2003. (Ex. 12,

Wonderland's Answer to Interrogatory No. 16, pp. 16-17).

**RESPONSE:**  Admitted.

43.    Wonderland states that the conception of the inventions of the

Asserted Claims "are believed to have occurred at least as early as or during a video

conference on October 6, 2003." (Ex. 12, Wonderland's Answer to Interrogatory No. 16, pp. 16-17).

    **RESPONSE:**  Admitted.

    44.    Mr. Troutman's ████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████. (Ex. 8; KOL000066-67, "Step 7" and "Step 8").

    **RESPONSE:**  Denied, because the device in the photo is too fragile to be called a playard, which ██████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████ Ex. 8 at 000067.

    45.    Dr. Singhose provided his full analysis and conclusion that the playard shown in the █████████████████████████████████████ anticipates every limitation of the Asserted Claims. (Ex. 10, ¶¶ 437-464; Ex. 11, ¶¶ 278-296).

    **RESPONSE:**   Denied, and objected to because the fact fails to comply with the provisions of Local Rule 56.1 B.(1) for the reasons that: (i) it is argument,

not fact; (ii) it is a series of argumentative facts; (iii) it relies on, and cites, the

opinion and/or argument of Defendant's expert, William Singhose, as undisputed

fact; and (iv) it is stated as a legal conclusion.  The "analysis" in Dr. Singhose's

report is opinion, not fact.  This "fact" is also not material.  Denied that the ████

████████████████████████████████████████████████████████████████████████

████████████████████████████████    The proposed fact fails to comply with the

provisions of L.R. 56.1 B.(1) because it is stated as a legal conclusion.

46.    When asked whethe████████████████████████████████████

████   Mr. Troutman replied ████   (Ex. 2, 140:22-25).

**RESPONSE:**  Admitted.

47.    The word "structural" does not appear in the Asserted Claims. (Ex. 1,

5:6-6:41).

**RESPONSE:**  Admitted, but Wonderland contends that the claim would be

understood by a person of ordinary skill in the art to require that the "upright

tubes" of claim 15 and the "support tubes" of claim 20 be structural in nature.

48.    Dr. Singhose does not find any requirement that either of the terms

"upright tubes" in Claim 15 or "support tubes" in Claim 20 require any particular

limitation of structure or being structural. (Ex. 11, ¶ 261, 286).

**RESPONSE:**  Denied, and objected to because the fact fails to comply with the provisions of Local Rule 56.1 B.(1) for the reasons that: (i) it is argument, not fact; (ii) it is a series of argumentative facts; (iii) it relies on, and cites, the opinion and/or argument of Defendant's expert, William Singhose, as undisputed fact; and (iv) it is stated as a legal conclusion.  The analysis and "findings" in Dr. Singhose's report are opinion, not fact.  This "fact" is also not material.  Claim construction is a legal issue for the Court.

49.    When asked during his deposition "what's your definition of a tube," Wonderland's expert, Mr. Drobinski, replied "[m]y definition of a tube is a potentially cylindrical, but it could be any cross-sectional shape, generally hollow inside, open inside." (Ex. 13, 124:9-12).

**RESPONSE:**   Admitted.

50.   Dr. Singhose, concluded that "such caps comprise upright tubes or support tubes in the playard, at least because Mr. Troutman also testified that ███ ████████████████████████████████████████████ ████████████████████████████████████ (Ex. 11, ¶ 286; Ex. 2, 92:2-7).

**RESPONSE:**   Admitted that the quote is accurate, but otherwise denied,

and objected to because the fact fails to comply with the provisions of Local Rule

56.1 B.(1) for the reasons that: (i) it is argument, not fact; (ii) it is a series of

argumentative facts; (iii) it relies on, and cites, the opinion and/or argument of

Defendant's expert, William Singhose, as undisputed fact; and (iv) it is stated as a

legal conclusion.  The conclusions stated in Dr. Singhose's report are opinion, not

fact.  Denied, because the quote is clipped, and is therefore incomplete and

misleading.  See Kids II's Ex. 11, ¶ 286 (entire paragraph).

      51.    Step 7 in Mr. Troutman's ████████████ is reproduced below:



(Ex. 9, KOL000066, Step 7).

      **RESPONSE:**  Admitted.

52.   Referring to his ████████████████, Mr. Troutman testified that ████████████████████████████ (Ex. 2, 66:13-19).

**RESPONSE:** Admitted.

53.   Wonderland has offered no physical evidence to support its statement that the invention of the Asserted Claims is "believed to have occurred at least as early as or during a video conference on October 6, 2003." (Ex. 12, Wonderland's Answer to Interrogatory No. 16, pp. 16-17).

**RESPONSE:** Admitted.

54.   Ms. Renee Wang provided testimony on behalf of Wonderland, pursuant to Rule 30(b)(6), on the topic of Mr. Chen's conception and reduction to practice of the inventions in the '919 Patent. (Ex. 17, p. 7; Ex. 18, 42:13-43-12).

**RESPONSE:** Admitted.

55.   When asked where in Exhibit 17 "is there shown a positioning post," Ms. Wang replied ████████████████████████████ (Ex. 18, 230:14-22).

**RESPONSE:** Admitted.

56.    When asked where in Exhibit 17 

" (Ex. 18, 231:11-18).

**RESPONSE:**  Admitted, but the positioning posts are simply hidden from view in the photos, and there can be no genuine dispute that the fabric is held in place by such posts, because  Ms. Wang explained the fabric attachment technique in her deposition:



Deposition of Renee Wang, p. 20

Referring to specifically to Deposition Exhibit 17 (Wonderland's Exhibit 12), Ms. Wang explained:





Deposition of Renee Wang, p. 219

57.    An English translation of the November 17, 2003, e-mail in Exhibit

17 to the deposition of Renee Wang states:

(Ex. 14, pg. 1).

**RESPONSE:**  Admitted.

58.    Mr. Curtis Hartenstein was an employee of Iron Mountains in 2003 and performed product design work for Wonderland. (Ex. 15, 29:4-17).

**RESPONSE:**

59.    During his deposition on July 25, 2014, Mr. Curtis Hartenstein was presented with Exhibit 8, including an e-mail (*i.e.*, WL-K2_006595) dated October 22, 2003, including an attached SOLIDWORKS drawing file (*i.e.*, WL-K2_006598). (Ex. 15, 84:2-8).

**RESPONSE:**  Admitted, but the fact is not material, because the fact that Mr. Hartenstine made a drawing of a component of a prototype of the invention of the '919 patent does not make him a co-inventor, and in fact, Mr. Hartenstine stated:

```
 9    Q    Whose idea was it to have tubes that
10          were exposed?
11    A    Wonderlands.
```

Hartenstine Dep. of July 24, 2014, at p. 56 (Wonderland's Exhibit 16)

60.    With reference to a screenshot from the SOLIDWORKS drawing file (*i.e.*, WL-K2_006598A) attached to the Exhibit 8 e-mail (*i.e.*, WL-K2_006595), Mr. Hartenstein testified that "[t]his is the CAD file that I created, yes." (Ex. 15,

89:16-17).

**RESPONSE:**  Admitted, but the fact is not material, because the fact that Mr. Hartenstine made a drawing of a component of a prototype of the invention of the '919 patent does not make him a co-inventor, and in fact, Mr. Hartenstine stated:

```
 9    Q     Whose idea was it to have tubes that
10          were exposed?
11    A      Wonderlands.
```

Hartenstine Dep. of July 24, 2014, at p. 56 (Wonderland's Exhibit 16)

61.    A screenshot taken from the SOLIDWORKS drawing file (*i.e.*, WL-K2_006598D) attached to the Exhibit 8 e-mail (*i.e.*, WL-K2_006595) in Mr. Hartenstein's deposition is reproduced below:



(Ex. 16, WL-K2_006598D).

**RESPONSE:**  Admitted, but the fact is not material, because the fact that

Mr. Hartenstine made a drawing of a component of a prototype of the invention of

the '919 patent does not make him a co-inventor, and in fact, Mr. Hartenstine

stated:

```
 9    Q    Whose idea was it to have tubes that
10         were exposed?
11    A    Wonderlands.
```

Hartenstine Dep. of July 24, 2014, at p. 56 (Wonderland's Exhibit 16)

62.   Referring to a screenshot from the SOLIDWORKS drawing file (*i.e.*,

WL-K2_006598D), when Mr. Hartenstein was asked "[d]id you draw this

depiction shown on 6598D" and ████████████████████████

██████████████████████████████████████████████████

(Ex. 15, 91:25-92:9).

**RESPONSE:**  Admitted, but the fact is not material, because the fact that

Mr. Hartenstine made a drawing of a component of a prototype of the invention of

the '919 patent does not make him a co-inventor, and in fact, Mr. Hartenstine

stated:

```
 9     Q     Whose idea was it to have tubes that
10           were exposed?
11     A     Wonderlands.
```

Hartenstine Dep. of July 24, 2014, at p. 56 (Wonderland's Exhibit 16)

63.   Referring to a screenshot from the SOLIDWORKS drawing file (*i.e.*,

WL-K2_006598D), Mr. Troutman testified as follows:



(Ex. 15, 95:1-96:14).

**RESPONSE:**  Admitted, but the fact is not material, because the fact that

Mr. Hartenstine made a drawing of a component of a prototype of the invention of

the '919 patent does not make him a co-inventor, and in fact, Mr. Hartenstine

stated:

```
 9     Q     Whose idea was it to have tubes that
10           were exposed?
11     A      Wonderlands.
```

Hartenstine Dep. of July 24, 2014, at p. 56 (Wonderland's Exhibit 16)

64.   The Abstract of the '919 Patent states:

A baby crib includes a bed frame structure, a fabric member mounted on
the bed frame structure to define a surrounding wall around the bed
frame structure, and a plurality of positioning posts mounted on the
fabric member. The bed frame structure includes a plurality of upright
tubes, each of which has a tube wall defining a receiving hole and
having a slit that extends along the length of the tube wall and that is in
spatial communication with the receiving hole. The positioning posts are
inserted respectively into the receiving holes in the upright tubes. The
fabric member is clamped between each upright tube and a
corresponding positioning post, and extends through the slit in each
upright tube.

(Ex. 1, p. 1, Bibliographic Data (57)).

**RESPONSE:** Admitted, but the fact is not material, because the invention

of the '919 patent is set forth in the claims, not the abstract.

65.   Mr. Troutman testified as follows:



(Ex. 2, 95:24-96:17).

**RESPONSE:** Admitted, but the fact is not material, because the leg covers

(foam caps) are clearly not upright tubes as set forth in claim 15, and are not

support tubes as set forth in claim 20. Wonderland also notes that when Mr.

Troutman ███████████████████████████████ does not

mean that the fabric enclosure is out of contact with the outwardly facing surfaces

of the legs of a playard. Troutman Dep. Tr. (Ex. 4) at 66:13-19.

Date:  August 17, 2015                 Respectfully submitted,

                                       /s/ David I. Roche
Local Counsel:                         David I. Roche (admitted *pro hac vice*)
                                       David.Roche@bakermckenzie.com
Shattuck Ely, Esq.                     Baker & McKenzie LLP
Fellows LaBriola LLP                   300 E. Randolph Street, Suite 5000
225 Peachtree Street N.E.              Chicago, IL 60601
Suite 2300, South Tower                Telephone:  312-861-8608
Atlanta, Georgia 30303                 Facsimile:   312-698-2363

                                       ATTORNEYS FOR PLAINTIFF,
                                       WONDERLAND NURSERYGOODS CO., LTD.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document (including exhibit(s), if any) was served via the Court's ECF System upon the following:

Norman Andrew Crain    Andrew.Crain@thomashorstemeyer.com
Scott P. Amy    scott.amy@thomashorstemeyer.com

_____/s/ David I. Roche_____
David I. Roche

## LOCAL RULE 7.1D CERTIFICATION

The undersigned hereby certifies that the above document was prepared in

Times New Roman 14 point, which is one of the font and point selections

approved by the Court under Local Rule 5.1B.

Date:  August 17, 2015          /s/ David I. Roche
                                David I. Roche (admitted *pro hac vice*)
                                David.Roche@bakermckenzie.com
                                Baker & McKenzie LLP
                                300 E. Randolph Street, Suite 5000
                                Chicago, IL 60601
                                Telephone:  312-861-8608
                                Facsimile:   312-698-2363

                                ATTORNEYS FOR PLAINTIFF,
                                WONDERLAND NURSERYGOODS CO., LTD.