**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO., LTD.<br><br>Plaintiff,<br><br>v.<br><br>KIDS II, INC.<br><br>Defendant. | CIVIL ACTION NO:<br><br>1:13-CV-1114-ELR |

**DEFENDANT KIDS II, INC.'S OBJECTIONS TO
<u>REFERRAL TO SPECIAL MASTER</u>**

Defendant Kids II, Inc. ("Kids II") does not object, *per se*, to the Court's appointment of a special master to consider the nine separate motions for summary judgment currently pending before the Court.  However, Kids II submits that it would be a more efficient use of time and resources for both the parties and the Court if certain steps are taken to streamline the case prior to the appointment of a special master.  Specifically, prior to referring the case to a special master, Kids II respectfully requests that the Court:

(1) refer the case to a magistrate judge (or other neutral) for mediation to facilitate meaningful settlement discussions;

(2) stay the case for the duration of the two currently pending *inter partes* review proceedings before the U.S. Patent and Trademark Office that could potentially resolve or, at a very minimum, simplify a large number of issues in the summary judgment motions if some or all of the patent claims are canceled; and,

(3) address the two purely legal issues in the summary judgment motions in which the parties are largely in agreement on the underlying facts.

These three steps have the potential to resolve many, if not all, of the issues in the case or, at a bare minimum, will aid in the consideration of the summary judgment motions by the special master.  Accordingly, while Kids II does not object to the eventual appointment of a special master, Kids II respectfully requests that the Court take these three steps prior to referring the case to a special master.

## I. This Case Should Be Referred to Mediation.

One might expect a patent case with two asserted patents, over a half-dozen asserted claims, and nine pending summary judgment motions to involve damages amounting to at least seven, if not eight, figures. However, that is not this case.

Rather, according to Wonderland's damages expert, Wonderland, even if fully victorious in this matter, would be entitled to less than $500,000 (specifically, $427,032 as of May 2014). Kids II's damages expert places the maximum potential damages as of May 2014 at $114,000. Thus, at this stage in the case, the combination of the parties' expenditures on the case is exponentially greater than the alleged damages in dispute.

Moreover, while the alleged damages have likely increased slightly since May 2014, any additional potential damages will soon stop accumulating since Kids II is phasing out the accused products as part of its normal product life cycle in early 2016. In addition to capping any alleged damages, the phasing out of Kids II's accused products also likely precludes Wonderland from obtaining equitable relief, as it is unlikely that a final judgment will be entered in this case prior to removal of the accused products from the market.

In light of the limited monetary value of the case and the unavailability of equitable relief in the event of a final judgment in Wonderland's favor, a referral to

a magistrate (or other neutral) for mediation would be a more efficient use of the Court's and the parties' time and resources prior to any referral to a special master.[1] Accordingly, Kids II requests that, prior to any referral to a special master, the Court refer the parties to mediation and require that each party have at least one individual with full settlement authority present at such mediation.

II. **The Court Should Stay this Case Pending Resolution of the Two Instituted *Inter Partes Review* Proceedings Challenging United States Patent No. RE43,919.**

To the extent mediation fails (or the Court is not inclined to refer the case to mediation), Kids II requests that the Court stay the case pending final written decisions from the U.S. Patent and Trademark Office's Patent Trial and Appeals Board ("PTAB") on the recently instituted *inter partes* review ("IPR") proceedings. As discussed in Kids II's summary judgment briefing, the PTAB instituted two IPR proceedings involving all of the asserted claims of the '919 Patent – IPR2015-00841 and IPR2015-00842 – on August 4, 2015. Taking a realistic view of the time-frame involved in resolving the nine summary judgment motions with assistance from a special master, the delay (if any) associated with

---

[1] While the parties previously discussed settlement at the Local Rule 16.3 Conference after Discovery, a mediator or neutral was not present at that conference to facilitate settlement discussions. Kids II requested a mediator be present to facilitate the discussions, but Wonderland refused. The settlement discussions were unsuccessful.

waiting on rulings from the PTAB in the IPRs is negligible. Moreover, any delay is significantly outweighed by the fact that a stay pending rulings from the PTAB will simplify the issues in question. If the asserted claims of the '919 Patent are found invalid, the work and expense of the special master and the Court would be wasted effort.

The IPR process was specifically created to "provide a 'quality check' on patents and . . . allow the government to remove erroneously granted patents" in an expedited manner as a cost-effective alternative to expensive and lengthy district court litigation. *See Evolve Composites, Inc. v. Diversitech Corp.*, No. 1:12-CV-02028-JEC, 2013 U.S. Dist. LEXIS 33505, *3-4 (N.D. Ga. Mar. 12, 2013) (J. Carnes). A final decision on patentability must be entered within one year of institution of an IPR by the PTAB. *See generally PersonalWeb Techs., LLC v. Google, Inc.*, No. 5:13-CV-01317, 2014 U.S. Dist. LEXIS 116172, *2-3 (N.D. Cal. Aug. 20, 2014) (summarizing IPR procedure). Thus, final decisions on the patentability of all of the asserted claims of the '919 Patent must be entered by August 3, 2016,[2] less than ten months away.

---

[2] There is a provision where the PTAB can grant itself a six-month extension to enter a final decision. To date, the PTAB has made use of that provision sparingly.

In view of the two pending IPR proceedings , this Court has the authority to enter a stay. *See Intellectual Ventures II LLC v. SunTrust Banks, Inc.*, No. 1:13-CV-02454-WSD, 2014 U.S. Dist. LEXIS 142295, at *5 (N.D. Ga. Oct. 7, 2014) (J. Duffey).  In deciding whether to enter a stay, district courts consider three factors: (1) whether a stay will simplify the issues in the case; (2) whether discovery is complete and a trial date has been set; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *See id.*

*First*, regardless of how the PTAB rules, the final decisions in the IPR proceedings will simplify the issues in this case.  If the PTAB confirms the patentability of the asserted claims, its expertise and written decision will assist the special master and the Court in resolving a number of the pending summary judgment motions – thus reducing the complexity and time-intensive nature of the summary judgment proceedings.  More importantly, if the PTAB rules that the asserted claims are not patentable (*i.e.*, invalid), such a ruling would moot any rulings by the Court on the validity and infringement of the '919 Patent. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013) (holding that if the PTAB cancels or amends "the original claim … to cure invalidity, the patentee's cause of action is extinguished and the suit fails").  In other words, such

5

a ruling would render moot the issues in five of the nine summary judgment motions pending before the Court.

Notably, the likelihood that the asserted claims of the '919 Patent will be found invalid is quite high, as recent statistics from the PTAB indicate that all challenged claims are found invalid in 68 percent of final written decisions. In another 17 percent of final written decisions, one or more claims are found to be invalid. In contrast, all claims survive in only 15 percent of final written decisions.[3] Because only ten months remain before the PTAB must enter final written decisions on the two IPRs and a referral to a special master would likely involve a similar delay and substantially more resources, it would be more efficient to await rulings from the PTAB before making such a referral. This factor weighs in favor of a stay.

*Second*, while discovery is closed and the parties have submitted summary judgment briefing, the process of: (1) referring this case to a special master; (2) having the special master prepare for and hold a hearing on the nine pending summary judgment motions; (3) waiting for a report and recommendation from the special master on the motions; (4) allowing the parties time to file objections to the special master's report and recommendation and responses to the objections; and

---

[3] http://www.uspto.gov/sites/default/files/documents/2015-08-31%20PTAB.pdf

(5) preparing a ruling on the objections to the special master's report and recommendation will take many months, if not a full year. Thus, final decisions on the IPRs may come around the same time (if not before) the proceedings to resolve the nine summary judgment motions would be complete.

Moreover, there are significant efficiency concerns with referring this case to a special master prior to receiving final decisions on the IPRs. If the PTAB rules that the asserted claims of the '919 Patent are invalid, all of the time and effort of the special master and the Court spent addressing the validity and infringement of the '919 Patent will have been wasted. Thus, the stage of the litigation factor does not weigh against a stay. *See Gioello Enters. Ltd. v. Mattel, Inc.*, C.A. No. 99-375-GMS, 2001 U.S. Dist. LEXIS 26158 (D. Del. Jan 29, 2001) (entering a stay after summary judgment was briefed when the Patent and Trademark Office granted a request for reexamination); *Virginia Innovation Scis., Inc. v. Samsung Elecs. Co., Ltd.*, 983 F. Supp. 2d 713 (E.D. Va. 2014) (discussing the IPR process and the potential implications on pending litigation).

*Third*, a stay will not prejudice either party or present a tactical advantage to Kids II. Again, because the referral to the special master and the resolution of the nine summary judgment motions will involve a substantial amount of time and expense, the ten-month delay cause by the stay will have very little impact on the

case schedule. This minimal impact is a small price to pay when considering the potential benefits (as discussed above) of waiting for the PTAB's rulings.

Moreover, because Kids II is phasing out the accused products in the near future as part of its normal product life cycle, Wonderland will not suffer any undue prejudice or continue to incur potential damages for the majority of the period of the stay. Further, by not seeking a preliminary injunction, Wonderland has largely conceded that any potential monetary damages are sufficient to reimburse it for the period of the stay. *See Pacific Bioscience Labs., Inc. v. Pretika Corp.*, 760 F. Supp. 2d 1061, 1067 (W.D. Wash. 2011) (concluding that a stay would not be unduly prejudicial, in part because plaintiff had not sought any form of preliminary injunctive relief).

Accordingly, to the extent that meditation fails or the Court is not inclined to refer the case to mediation, it would be more efficient to stay the case until a ruling from the PTAB prior to referring this case to a special master.

### III. This Court should Rule on Certain Motions before Referring the Factual Motions to a Special Master.

As noted in the Court's Order, there are currently nine motions for summary judgment pending before the Court. They are summarized as follows:

| Filing Party/ Issue in Dispute | Docket No. | Legal or Factual Findings Required? | Material Facts | Additional Material Facts |
|---|---|---|---|---|
| **Wonderland:** | | | | |
| '919 Patent Not Anticipated | 150 | Factual | 26 Paragraphs | 55 Paragraphs |
| '919 Patent Not Anticipated by Prior Invention | 151 | Factual | 54 Paragraphs | 65 Paragraphs |
| '919 Patent Infringed | 152 | Factual | 33 Paragraphs | 90 Paragraphs |
| '949 Patent Not Indefinite | 153 | Legal | 14 Paragraphs | 19 Paragraphs |
| '949 Patent Not Anticipated | 154 | Factual | 23 Paragraphs | 67 Paragraphs |
| '949 Patent Infringed | 155 | Factual | 37 Paragraphs | 68 Paragraphs |
| **Kids II:** | | | | |
| '949 Patent Indefinite | 156 | Legal | 55 Paragraphs | 2 Paragraphs |
| '919 Patent Invalid under 35 U.S.C. § 251 | 157 | Legal | 34 Paragraphs | 30 Paragraphs |
| '919 Patent Invalid as Anticipated | 158 | Factual | 69 Paragraphs | 10 Paragraphs |

As shown above, six of the nine motions for summary judgment involve making determinations as to the underlying facts. These motions involve whether the asserted claims are anticipated or infringed. For these motions, Kids II acknowledges that a special master may provide a substantial benefit to the Court,

as the special master can digest the relevant evidence and make a recommendation on the underlying facts.

However, the parties are largely in agreement on the facts underlying Kids II's motion that the '919 Patent is invalid for failing to meet the "original patent" requirement for reissued patents under 35 U.S.C. § 251. (Dkt. No. 157).  The only outstanding issue to be resolved is purely a legal issue: whether the Court should apply the standard articulated in the Federal Circuit's recent decision in *Antares Pharma, Inc. v. Medac Pharma, Inc.*, 771 F.3d 1354, 1358 (Fed. Cir. 2014), or the older dicta from *In re Amos*, 953 F.2d 613 (Fed. Cir. 1991).  In fact, Wonderland has not asserted that the '919 Patent meets the "clear and unequivocal support" standard in *Antares*.  Further streamlining this issue is the fact that the Federal Circuit recently rejected a petition for rehearing *en banc* in which Antares made almost exactly the same argument as Wonderland now makes in its opposition to Kids II's Motion.  Thus, resolution of this motion is a straightforward exercise and turns on the purely legal issue of what standard should apply.

Similarly, Kids II's and Wonderland's cross-motions directed to the issue of indefiniteness (Dkt. Nos. 153 & 156) both primarily involve a singular question of law for the Court to decide.  Specifically, the motions require resolution of the legal issue of whether the Court's claim constructions, when applied by person of

10

ordinary skill in the art in the context of Claim 1 of the '949 Patent, render that claim (rather than the terms themselves) indefinite. Because Wonderland did not proffer any substantive expert testimony in rebuttal to Kids II's expert testimony on this issue, the testimony of Kids II's expert is uncontroverted and there are no disputed issues of fact that would be simplified by referral to a special master.

Accordingly, while a special master may be able to provide expertise and guidance regarding technical and factual issues, there is no benefit to getting an advisory opinion from a special master on issues of law, which would have to be re-evaluated *de novo* by the Court in any event. Thus, Kids II respectfully submits that referring the above three motions (Dkt. Nos. 153, 156 & 157) to a special master would provide little benefit to the Court – especially given that resolution of one or more of these three motions could be dispositive of most or all of the issues in this case. Indeed, if the Court grants Kids II's Motion pursuant to 35 U.S.C. § 251 (Dkt. No. 157), four of the other pending motions for summary judgment will be rendered moot. If the Court grants Kids II's Motion regarding indefiniteness (Dkt. No. 156), two other pending motions for summary judgment will be render moot. If the Court grants both, all other pending motions will be moot.

## IV. Conclusion.

For the reasons set forth above, Kids II does not object to this case being referred to a special master. However, Kids II respectfully requests that the Court take the three steps outlined above to streamline the case prior to making such a referral.

Respectfully submitted this 13th day of October, 2015.

/s/ Scott P. Amy
N. Andrew Crain
Georgia Bar No. 193081
Dan R. Gresham
Georgia Bar No. 310280
Eric Maurer
Georgia Bar No. 478199
Scott P. Amy
Georgia Bar No. 141416
Jason Perilla
Georgia Bar No. 676557
THOMAS | HORSTEMEYER LLP
400 Interstate North Parkway SE
Suite 1500
Atlanta, Georgia 30339
Phone: (770) 933-9500
Fax: (770) 951-0933
andrew.crain@thomashorstemeyer.com
dan.gresham@thomashorstemeyer.com
eric.maurer@thomashorstemeyer.com
scott.amy@thomashorstemeyer.com
jason.perilla@thomashorstemeyer.com

Joseph W. Staley
Georgia Bar No. 142571
KIDS II, INC.
3333 Piedmont Road NE #1800
Atlanta, GA 30305
Phone: (770) 751-0442
Fax: (770) 751-0543
joe.staley@kidsii.com

*Attorneys for Defendant Kids II, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO., LTD.<br><br>    Plaintiff,<br><br>v.<br><br>KIDS II, INC.<br><br>    Defendant. | CIVIL ACTION NO:<br><br>1:13-CV-1114-ELR |

## LOCAL RULE 7.1D CERTIFICATION

The undersigned hereby certifies that the foregoing DEFENDANT KIDS II'S OBJECTIONS TO REFERRAL TO SPECIAL MASTER was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

Dated this 13th day of October, 2015.

/s/ Scott P. Amy<br>
Scott P. Amy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO., LTD._____Plaintiff,_____v._____KIDS II, INC._____Defendant. | CIVIL ACTION NO:_____1:13-CV-1114-ELR |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing DEFENDANT KIDS II'S OBJECTIONS TO REFERRAL TO SPECIAL MASTER with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Dated this 13th day of October, 2015.

/s/ Scott P. Amy
Scott P. Amy